EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP, AND MOBILESTAR TECHNOLOGIES LLC | § § § § | |
| **PLAINTIFFS** | § | |
| v. | § | **Civil Action No. 2:13-cv-894** |
| | § | |
| ASUSTEK COMPUTER, INC. AND ASUS COMPUTER INTERNATIONAL, INC. | § § § | **JURY TRIAL REQUESTED** |
| | § | |
| **DEFENDANTS.** | § | |

## PLAINTIFFS ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES LLC'S ORIGINAL COMPLAINT

Plaintiffs Rockstar Consortium US LP ("Rockstar") and MobileStar Technologies LLC ("MobileStar") file this Original Complaint for patent infringement under 35 U.S.C. § 271 and in support thereof would respectfully show the Court the following:

## PARTIES

1.      Plaintiff Rockstar Consortium US LP ("Rockstar") is a limited partnership organized and existing under the laws of the State of Delaware, and maintains its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway Suite No. 250, Plano, TX 75024.

2.      Plaintiff MobileStar Technologies LLC ("MobileStar") is a subsidiary of Rockstar and is a limited liability corporation organized and existing under the laws of the State of Delaware, and maintains its principal place of business at Legacy Town Center 1, 7160 North Dallas Parkway Suite No. 250, Plano, TX 75024.

3.     Upon information and belief, Defendant ASUSTeK Computer, Inc. is a corporation organized and existing under the laws of Taiwan with its principal place of business at 15 Li-Te Rd., Peitou District, Taipei 112, Taiwan.

4.     Upon information and belief, Defendant ASUS Computer International, Inc. is a subsidiary of ASUSTeK and is a corporation organized and existing under the laws of California with its principal place of business at 800 Corporate Way, Fremont, California 94536.

## JURISDICTION AND VENUE

5.     This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 271.  This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. § 1338.

6.     Venue is proper in this Court pursuant to 28 U S.C. §§ 1391 and 1400(b).

7.     This Court has personal jurisdiction over Defendants ASUSTeK Computer, Inc. and ASUS Computer International, Inc. (collectively, "ASUS").  ASUS has conducted and does conduct business within the State of Texas.  ASUS, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises (including the provision of an interactive web page) its products (including its infringing products) and/or services in the United States, the State of Texas, and the Eastern District of Texas.  ASUS, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Eastern District of Texas.  These

2

infringing products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas. ASUS has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

## **ASSERTED PATENTS**

8.      On November 17, 1998, U.S. Patent No. 5,838,551 ("the '551 Patent") entitled "Electronic Package Carrying an Electronic Component and Assembly of Mother Board and Electronic Package" was duly and legally issued with Yee-Ning Chan as the named inventor after full and fair examination. Rockstar owns all rights, title, and interest in and to the '551 Patent and possesses all rights of recovery under the '551 Patent. MobileStar is the exclusive licensee of the '551 patent.

9.      On March 14, 2000, U.S. Patent No. 6,037,937 ("the '937 Patent") entitled "Navigation Tool for Graphical User Interface" was duly and legally issued with Brian Finlay Beaton, Colin Donald Smith, and Bruce Dale Stalkie as the named inventors after full and fair examination. MobileStar owns all rights, title, and interest in and to the '937 Patent and possesses all rights of recovery under the '937 Patent.

10.      On October 3, 2000, U.S. Patent No. 6,128,298 ("the '298 Patent") entitled "Internet Protocol Filter" was duly and legally issued with Bruce Anthony Wootton and William G. Colvin as the named inventors after full and fair examination. Rockstar owns all rights, title, and interest in and to the '298 Patent and possesses all rights of recovery under the '298 Patent. MobileStar is the exclusive licensee of the '298 patent.

3

11.     On October 8, 2002, U.S. Patent No. 6,463,131 ("the '131 Patent") entitled "System and Method for Notifying a User of an Incoming Communication Event" was duly and legally issued with Marilyn French-St. George, Mitch A. Brisebois and Laura A. Mahan as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '131 Patent and possesses all rights of recovery under the '131 Patent.

12.     On July 20, 2004, U.S. Patent No. 6,765,591 ("the '591 Patent") entitled "Managing a Virtual Private Network" was duly and legally issued with Matthew W. Poisson, Melissa L. Desroches, and James M. Milillo as the named inventors after full and fair examination.  MobileStar owns all rights, title, and interest in and to the '591 Patent and possesses all rights of recovery under the '591 Patent.

13.     On August 30, 2005, U.S. Patent No. 6,937,572 ("the '572 Patent") entitled "Call Trace on a Packet Switched Network" was duly and legally issued with Brian B. Egan and Milos Vodsedalek as the named inventors after full and fair examination.  Rockstar owns all rights, title, and interest in and to the '572 Patent and possesses all rights of recovery under the '572 Patent.

### GENERAL ALLEGATIONS

14.     ASUS has directly and indirectly infringed and continues to direction and indirectly infringe each of the '551, '937, '298, '131, '591, and '572 Patents by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), (c), and/or (f), including but not necessarily limited to one or more of making, using, selling and offering to sell, in this District and elsewhere in the United States, and importing into this District and elsewhere in the United States, certain mobile communication devices having a version

4

(or an adaption thereof) of Android operating system ("ASUS Mobile Communication Devices").

15.     ASUS is doing business in the United States and, more particularly, in the Eastern District of Texas by making, using, selling, importing, and/or offering for sale ASUS Mobile Communication Devices, including but not limited to ASUS family of smartphones, including, but not limited to the ASUS FonePad and PadFone product families, and ASUS family of tablets, including, but not limited to the ASUS Transformer and /or Transformer Pad (including the Transformer TF201), MeMo Pad, and Nexus 7 product families, and other products that infringe the patent claims involved in this action or by transacting other business in this District.

**COUNT ONE**
**PATENT INFRINGEMENT BY ASUS**

16.     Plaintiffs incorporate by reference paragraphs 1-15 as if fully set forth herein.  As described below, ASUS has infringed and/or continues to infringe the '551, '937, '298, '131, '591, and '572 Patents.

17.     At least the ASUS Mobile Communication Devices infringe at least claim 1 of the '551 Patent.  ASUS makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these products and thus directly infringes one or more claims of the '551 Patent, including at least claim 1.

18.     ASUS indirectly infringes the '551 patent by inducing infringement by others, such as resellers, of at least claim 1 in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of the ASUS Mobile

5

Communication Devices. ASUS had actual notice of the '551 Patent at least as of the date this lawsuit was filed.

19. ASUS's affirmative acts of selling ASUS Mobile Communication Devices, causing the ASUS Mobile Communication Devices to be manufactured and distributed, and providing instruction manuals for ASUS Mobile Communication Devices induced ASUS's manufacturers and resellers to make or use ASUS Mobile Communication Devices in their normal and customary way to infringe the '551 patent. Through its manufacture and sales of ASUS Mobile Communication Devices, ASUS specifically intended its resellers and manufacturers to infringe the '551 patent; further, ASUS was aware that these normal and customary activities would infringe the '551 patent. ASUS performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '551 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

20. Accordingly, a reasonable inference is that ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '551 Patent in the United States because ASUS has knowledge of the '551 Patent and ASUS actually induces others, such as resellers and end-use customers, to directly infringe the '551 patent, by using, selling, exporting, supplying and/or distributing within the United States, ASUS Mobile Communication Devices for resale to others, such as resellers and end-use customers. ASUS knew or should have known that such actions would induce actual infringement.

21. ASUS indirectly infringes the '551 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c)

in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices. ASUS had actual notice of the '551 Patent at least as of the date this lawsuit was filed.

22. ASUS Mobile Communication Devices include at least one electronic package comprising a component that is located between an EMI shield and a ground member for performing shielding operations. The EMI shield is incorporated into the electronic package, which is then mounted to a circuit board in ASUS Mobile Communication Devices, and on information and belief, the electronic component does not function in an acceptable manner absent the EMI shielding. Furthermore, the electronic package incorporating the EMI shield does not operate in isolation, but is designed to operate within the Mobile Communication Device, and absent the EMI shielding of the electronic component, ASUS Mobile Communication Devices would not function in an acceptable manner.

23. A reasonable inference to be drawn from the facts set forth is that the EMI shielded electronic package in ASUS Mobile Communication Devices is especially made or especially adapted to operate in an ASUS Mobile Communication Device as an EMI shield.

24. A reasonable inference to be drawn from the facts set forth is that the EMI shielded electronic package is not a staple article or commodity of commerce and that the use of the EMI shielded electronic package is required for operation of ASUS Mobile Communication Devices. Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

25.     The EMI shielded electronic package in ASUS Mobile Communication Devices are each a material part of the invention of the '551 patent and are especially made for the infringing manufacture, sale, and use of ASUS Mobile Communication Devices.  ASUS Mobile Communication Devices, including the EMI shielded electronic package, are especially made or adapted as an electronic package that infringes the '551 patent.  Because the sales and manufacture of ASUS Mobile Communication Devices including the EMI shielded electronic package infringe the '551 patent, ASUS's sales of its infringing products have no substantial non-infringing uses.

26.     Accordingly, a reasonable inference is that ASUS offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ASUS provides to others ASUS Mobile Communication Devices with distinct and separate components, including hardware components, which have no substantial non-infringing use.

27.     At least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Gallery, Email, Maps and Browser functionality, infringe at least claim 13 of the '937 Patent.  ASUS makes, uses, tests, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claim 13 of the '937 Patent.

28.     ASUS indirectly infringes the '937 patent by inducing infringement by others of at least claim 13, such as resellers, in accordance with 35 U.S.C. § 271(b) in this

8

District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the ASUS Mobile Communication Devices. ASUS received actual notice of the '937 Patent at least by May 14, 2012 from a communication from Rockstar, and/or its predecessors-in-interest, to ASUS, and also received knowledge as of the date this lawsuit was filed.

29.     ASUS's affirmative acts of selling ASUS Mobile Communication Devices, causing the ASUS Mobile Communication Devices to be manufactured, and providing instruction manuals for ASUS Mobile Communication Devices induced ASUS's manufacturers and resellers to make or use the ASUS Mobile Communication Devices in their normal and customary way to infringe the '937 patent. Through its manufacture and sales of ASUS Mobile Communication Devices, ASUS specifically intended its resellers and manufacturers to infringe the '937 patent; further, ASUS was aware that these normal and customary activities would infringe the '937 patent. ASUS performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '937 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

30.     Accordingly, a reasonable inference is that ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '937 patent in the United States because ASUS has knowledge of the '937 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, ASUS Communication Devices for resale to others, such as resellers and end-use customers. ASUS knew or should have known that such actions would induce actual infringement.

31.     The use of at least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Gallery, Email, Maps and Browser functionality as intended by ASUS infringes at least method claim 1 of the '937 Patent.  ASUS uses these products and thus directly infringes at least method claim 1 of the '937 Patent.

32.     In addition, ASUS provides at least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Gallery, Email, Maps, and Browser functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 1 of the '937 Patent.

33.     ASUS indirectly infringes the '937 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of the ASUS Mobile Communication Devices.  ASUS received actual notice of the '937 Patent at least by May 14, 2012, in view of a communication from Rockstar, and/or its predecessors-in-interest, to ASUS, and also received knowledge as of the date this lawsuit was filed.

34.     ASUS provides at least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Gallery, Email, Maps and Browser functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe the '937 Patent.  Through its manufacture and sales of ASUS Mobile Communication Devices, ASUS specifically intended its resellers and manufacturers to infringe the '937 patent.

10

35.    ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '937 Patent in the United States. For example, ASUS provides instructions to resellers and end-use customers regarding the use and operation of ASUS's products in an infringing way.   Such instructions include at least "Transformer User Manual TF201" available on ASUS's web site at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf .  When resellers and end-use customers follow such instructions, they directly infringe the '937 Patent.  ASUS knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '937 Patent.  ASUS thus knows that its actions induce the infringement.

36.    ASUS performed the acts that constitute induced infringement, and would induce actual infringement with the knowledge of the '937 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

37.    ASUS indirectly infringes the '937 patent, by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.   Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices.  ASUS received actual notice of the '937 Patent at least by May 14, 2012, in view of a communication from Rockstar, and/or its predecessors-in-interest, to ASUS, and also received knowledge as of the date this lawsuit was filed.

38.    ASUS Mobile Communication Devices include functionality that, inter alia, displays a navigable graphical user interface ("navigable GUI") that permits a user to manipulate and control the contents of the display to maximize the use of display real

11

estate. This navigable GUI is included in ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support at least the Gallery, Email, Maps, and Browser functionalities. On information and belief, these functionalities cannot operate in an acceptable manner absent the navigable GUI, as it is included in every ASUS Mobile Communication Device.

39. A reasonable inference to be drawn from the facts set forth is that the navigable GUI as included in ASUS Mobile Communication Devices is especially made or especially adapted to operate on an ASUS Mobile Communication Device as a navigable GUI that permits a user to manipulate or control the contents of the display to maximize the use of display real estate on the user's ASUS Mobile Communication Devices.

40. A reasonable inference to be drawn from the facts set forth is that the navigable GUI as included in the Mobile Communication Device is not a staple article or commodity of commerce and that the use of the navigable GUI in ASUS Mobile Communication Devices is required for the operation of ASUS Mobile Communication Devices. Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

41. ASUS Mobile Communication Devices with the navigable GUI are each a material part of the invention of the '937 patent and are especially made for the infringing manufacture, sale, and use of ASUS Mobile Communication Devices. ASUS Mobile Communication Devices with the navigable GUI are especially made or adapted as a navigable GUI that infringes the '937 patent. Because the sales and manufacture of

ASUS Mobile Communication Devices with a navigable GUI infringes the '937 patent, ASUS's sales of its infringing products have no substantial non-infringing uses.

42.     Accordingly, a reasonable inference is that ASUS offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '937 patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. ASUS provides to others, ASUS Mobile Communication Devices with distinct and separate components, including software components, which have no substantial non-infringing use.

43.     At least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support the Mobile Hotspot functionality infringe at least claims 27 and 31 of the '298 Patent. ASUS makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claims 27 and 31 of the '298 Patent.

44.     ASUS indirectly infringes the '298 patent by inducing infringement by others of at least claim 27 and 31, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the ASUS Mobile Communication Devices. ASUS had actual notice of the '298 Patent at least by September 27, 2013 from a communication from Rockstar to ASUS, and also received knowledge as of the date this lawsuit was filed.

13

45.     ASUS's affirmative acts of selling ASUS Mobile Communication Devices, causing the ASUS Mobile Communication Devices to be manufactured, and providing instruction manuals for ASUS Mobile Communication Devices induced ASUS's manufacturers and resellers to make or use the ASUS Mobile Communication Devices in their normal and customary way to infringe the '298 patent.  Through its manufacture and sales of ASUS Mobile Communication Devices, ASUS specifically intended its resellers and manufacturers to infringe the '298 patent; further, ASUS was aware that these normal and customary activities would infringe the '298 patent.  ASUS performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '298 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

46.     Accordingly, a reasonable inference is that ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '298 patent in the United States because ASUS has knowledge of the '298 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, ASUS Communication Devices for resale to others, such as resellers and end-use customers. ASUS knew or should have known that such actions would induce actual infringement.

47.     The use of at least ASUS Mobile Communication Devices that support the Mobile Hotspot functionality as intended by ASUS infringes at least method claims 14 and 24 of the '298 Patent.  ASUS uses these products and thus directly infringes at least method claims 14 and 24 of the '298 Patent.

14

48.     In addition, ASUS provides at least ASUS Mobile Communication Devices that support the Mobile Hotspot functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claims 14 and 24 of the '298 Patent.

49.     ASUS indirectly infringes the '298 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the Mobile Hotspot functionality.  ASUS received actual notice of the '298 Patent at least by September 27, 2013, in view of a communication from Rockstar to ASUS, and also received knowledge as of the date this lawsuit was filed.

50.     ASUS's affirmative acts of selling its ASUS Mobile Communication Devices and providing instruction manuals induced the end-users of ASUS Mobile Communication Devices to use ASUS Mobile Communication Devices in their normal and customary way to infringe the '298 patent at least through using Mobile Hotspot functionality.  ASUS also provides instructions, including at least "Transformer User Manual TF201" available on ASUS's web site at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf for using the Mobile Hotspot functionality.  Through its sales of ASUS Mobile Communication Devices with Mobile Hotspot functionality, ASUS specifically intended the end-users of ASUS Mobile Communication Devices to infringe the '298 patent; further, ASUS was aware that the normal and customary use of Mobile Hotspot

functionality would infringe the '298 patent. ASUS also enticed its end-users to use the Mobile Hotspot functionality by providing instruction manuals and also providing Mobile Hotspot functionality. ASUS performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '298 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

51.     Accordingly, a reasonable inference is that ASUS actively induces infringement of the '298 Patent by others, such as resellers and end-use customers. ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '298 Patent in the United States because ASUS had knowledge of the '298 Patent, and ASUS actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of ASUS Mobile Communication Devices in an infringing way. Such instructions include at least "Transformer User Manual TF201" available on ASUS's web site at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf . When resellers and end-use customers follow such instructions, they directly infringe the '298 Patent. ASUS knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '298 Patent. ASUS thus knows that its actions induce the infringement.

52.     ASUS indirectly infringes the '298 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the Mobile

Hotspot functionality. ASUS received actual notice of the '298 Patent at least by September 27, 2013, in view of a Rockstar communication to ASUS, and also received knowledge as of the date this lawsuit was filed.

53. ASUS Mobile Communication Devices with the Mobile Hotspot functionality allow wireless devices from a first, or private, network to connect to a second, or public, network such as the Internet. The Mobile Hotspot functionality is designed to route data packets between wireless devices tethered to the Mobile Hotspot to nodes on a public network such as the Internet, and cannot function in a manner that does not utilize the Mobile Hotspot functionality available to ASUS Mobile Communication Devices. Upon information and belief, the Mobile Hotspot functionality is designed to entice a user to access nodes in a second, or public, network such as the Internet.

54. A reasonable inference to be drawn from the facts set forth is that the Mobile Hotspot functionality is especially made or especially adapted to operate on a mobile communication device for providing access for wireless devices in a first, or private, network to nodes in a second, or public, network.

55. A reasonable inference to be drawn from the facts set forth is that the Mobile Hotspot functionality is not a staple article or commodity of commerce and that the use of the Mobile Hotspot functionality of ASUS Mobile Communication Devices is for interfacing first and second data communications networks, e.g., a private network and a public network such as the Internet. Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

56. ASUS Mobile Communication Devices with Mobile Hotspot functionality are each a material part of the '298 patent and especially made for the infringing use of

the Mobile Hotspot functionality for interfacing private and public data communication networks. ASUS Mobile Communication Devices with the Mobile Hotspot functionality are especially made or adapted to provide access for wireless devices in a first, or private, network through the Mobile Communication Device, to nodes in a second, or public, network that perform or facilitate performance of the steps that infringe the '298 patent. Furthermore, ASUS provides user manuals describing the uses of ASUS Mobile Communication Devices that infringe the '298 patent. Because the sales and manufacture of ASUS Mobile Communication Devices with Mobile Hotspot functionality infringes the '298 patent, ASUS's sales of its infringement products have no substantial non-infringing uses.

57.     Accordingly, a reasonable inference is that ASUS offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. ASUS provides to others, ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Mobile Hotspot functionality. ASUS installs and configures ASUS Mobile Communication Devices with distinct and separate components, including software components, which are used only to perform the infringing method claims.

58.     At least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Message and Notification functionality

18

infringe at least claim 1 of the '131 Patent. ASUS makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claim 1 of the '131 Patent.

59. ASUS indirectly infringes the '131 patent by inducing infringement by others of at least claim 1, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the ASUS Mobile Communication Devices. ASUS had actual notice of the '131 Patent at least by September 27, 2013 from a communication from Rockstar to ASUS, and also received knowledge as of the date this lawsuit was filed.

60. ASUS's affirmative acts of selling ASUS Mobile Communication Devices, causing the ASUS Mobile Communication Devices to be manufactured, and providing instruction manuals for ASUS Mobile Communication Devices induced ASUS's manufacturers and resellers to make or use the ASUS Mobile Communication Devices in their normal and customary way to infringe the '131 patent. Through its manufacture and sales of ASUS Mobile Communication Devices, ASUS specifically intended its resellers and manufacturers to infringe the '131 patent; further, ASUS was aware that these normal and customary activities would infringe the '131 patent. ASUS performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '131 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

61. Accordingly, a reasonable inference is that ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of

19

the '131 patent in the United States because ASUS has knowledge of the '131 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, ASUS Communication Devices for resale to others, such as resellers and end-use customers. ASUS knew or should have known that such actions would induce actual infringement.

62.     The use of at least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Message and Notification functionality as intended by ASUS infringes at least method claim 5 of the '131 Patent. ASUS uses these products and thus directly infringes at least method claim 5 of the '131 Patent.

63.     In addition, ASUS provides at least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Message functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 5 of the '131 Patent.

64.     ASUS indirectly infringes the '131 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the Message and Notifications functionality.  ASUS received actual notice of the '131 Patent at least by September 27, 2013, in view of a Rockstar communication to ASUS, and also received knowledge as of the date this lawsuit was filed.

65.    ASUS's affirmative acts of selling ASUS Mobile Communication Devices and providing instruction manuals induced the end-users of ASUS Mobile Communication Devices to use ASUS Mobile Communication Devices in their normal and customary way to infringe the '131 patent at least through using Message and Notifications functionality. ASUS also provides instructions, including at least "Transformer User Manual TF201" available on ASUS's web site at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf , for using the Messaging and Notifications functionality. Through its sales of Mobile Communication Devices with Messaging and Notifications functionality, ASUS specifically intended the end-users of ASUS Mobile Communication Devices to infringe the '131 patent; further, ASUS was aware that the normal and customary use of the Message and Notifications functionality would infringe the '131 patent. ASUS also enticed its end-users to use the Messaging and Notifications functionality by providing instruction manuals. ASUS performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '131 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

66.    Accordingly, a reasonable inference is that ASUS actively induces infringement of the '131 Patent by others, such as resellers and end-use customers. ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '131 Patent in the United States because ASUS had knowledge of the '131 Patent, and ASUS actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of ASUS Mobile Communication Devices in an infringing way. Such instructions include at least

"Transformer User Manual TF201" available on ASUS's web site at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf. When resellers and end-use customers follow such instructions, they directly infringe the '131 Patent. ASUS knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '131 Patent. ASUS thus knows that its actions induce the infringement.

67. ASUS indirectly infringes the '131 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the Messaging and Notification functionality. ASUS received actual notice of the '131 Patent at least by September 27, 2013, in view of a Rockstar communication to ASUS, and also received knowledge as of the date this lawsuit was filed.

68. ASUS's Message and Notification functionality receives and displays message of different types, such as a phone call, voice mail, text message, or email. The Message and Notification Services functionality is designed to notify the user of an incoming communication and to select the format of the message received and cannot function in a manner that does not utilize the messaging functionality available to ASUS Mobile Communication Devices. Upon information and belief, the Message and Notifications functionality is designed to entice a user to receive notifications of an incoming communication.

22

69.     A reasonable inference to be drawn from the facts set forth is that the Message and Notifications functionality especially made or especially adapted to operate on ASUS Mobile Communication Devices for notifying a user of an incoming communication.

70.     A reasonable inference to be drawn from the facts set forth is that the Message and Notifications functionality is not a staple article or commodity of commerce and that the use of the Messaging and Notifications functionality of the ASUS Mobile Communication Devices is for notifying a user of an incoming communication.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

71.     ASUS Mobile Communication Devices with Messaging and Notifications functionality are each a material part of the '131 patent and especially made for the infringing use of the Messaging and Notification functionality to receive and display messages.  ASUS Mobile Communication Devices including the Messaging and Notification functionality, are especially made or adapted to notify a user of an incoming communication that perform or facilitate performance of the steps that infringe the '131 patent.  Furthermore, ASUS provides user manuals describing the uses of its Mobile Communication Devices that infringe the '131 patent.  Because the functionality provided by ASUS's Messaging and Notification to notify a user of an incoming communication infringes the '131 patent, ASUS's sales of its infringing products have no substantial non-infringing uses.

72.     Accordingly, a reasonable inference is that ASUS offers to sell, or sells within the United States a component of a patented machine, manufacture, combination,

23

or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. ASUS provides to others, Mobile Communication Devices with an operating system configured and installed by ASUS to support Message and Notification functionality. ASUS installs and configures on these products distinct and separate components, including software components, which are used only to perform the infringing method claims.

73. At least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support VPN management functionality, including the ASUS Galaxy S III, infringe at least claims 1 and 8 of the '591 Patent. ASUS makes, uses, sells, offers for sale, imports, exports, supplies and/or distributes within the United States these devices and thus directly infringes at least claims 1 and 8 of the '591 Patent.

74. ASUS indirectly infringes the '591 patent by inducing infringement by others of at least claims 1 and 8, such as resellers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and end-users of the ASUS Mobile Communication Devices. ASUS had actual notice of the '591 Patent at least by September 27, 2013 from a communication from Rockstar to ASUS, and also received knowledge as of the date this lawsuit was filed.

75. ASUS's affirmative acts of selling ASUS Mobile Communication Devices, causing the ASUS Mobile Communication Devices to be manufactured, and providing instruction manuals for ASUS Mobile Communication Devices induced ASUS's

manufacturers and resellers to make or use the ASUS Mobile Communication Devices in their normal and customary way to infringe the '591 patent. Through its manufacture and sales of ASUS Mobile Communication Devices, ASUS specifically intended its resellers and manufacturers to infringe the '591 patent; further, ASUS was aware that these normal and customary activities would infringe the '591 patent. ASUS performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '591 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

76.     Accordingly, a reasonable inference is that ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '591 patent in the United States because ASUS has knowledge of the '591 patent and actually induces others, such as resellers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States, ASUS Communication Devices for resale to others, such as resellers and end-use customers. ASUS knew or should have known that such actions would induce actual infringement.

77.     The use of at least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support VPN management functionality as specified and intended by ASUS infringes at least claims 1 and 8 of the '591 Patent. ASUS uses these products and thus directly infringes at least claims 1 and 8 of the '591 Patent.

78.     In addition, ASUS provides at least its Mobile Communication Devices with an operating system configured and installed by ASUS to support VPN management

functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least claims 1 and 8 of the '591 Patent.

79.     ASUS indirectly infringes the '591 patent by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the VPN management functionality.  ASUS received actual notice of the '591 Patent at least by September 27, 2013, from a Rockstar communication to ASUS, and also received knowledge as of the date this lawsuit was filed.

80.     ASUS's affirmative acts of selling its Mobile Communication Devices and providing instruction manuals induced the end-users of ASUS Mobile Communication Devices to use ASUS Mobile Communication Devices in their normal and customary way to infringe the '591 patent at least through using VPN management functionality. ASUS also provides instructions, including at least "Transformer User Manual TF201" available         on         ASUS's         web         site         at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf , for using the VPN management functionality.  Through its sales of ASUS Mobile Communication Devices with VPN management functionality, ASUS specifically intended the end-users of ASUS Mobile Communication Devices to infringe the '591 patent; further, ASUS was aware that the normal and customary use of VPN management functionality would infringe the '591 patent.  ASUS also enticed its end-users to use the VPN management functionality by providing instruction manuals.  ASUS performed the

acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '591 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

81.     Accordingly, it is a reasonable inference that ASUS actively induces infringement of the '591 Patent by others, such as resellers and end-use customers. ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '591 Patent in the United States because ASUS had knowledge of the '591 Patent, and ASUS actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of ASUS's products in an infringing way.  Such instructions include at least "Transformer User Manual TF201" available on ASUS's web site at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf .  When resellers and end-use customers follow such instructions, they directly infringe the '591 Patent.  ASUS knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '591 Patent.  ASUS thus knows that its actions induce the infringement.

82.     ASUS indirectly infringes the '591 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the VPN management functionality.  ASUS received actual notice of the '591 Patent at least by

September 27, 2013, in view of a Rockstar communication to ASUS, and also received knowledge as of the date this lawsuit was filed.

83.    ASUS's VPN management functionality facilitates management of VPNs. The VPN management functionality is designed for management of VPNs and cannot function in a manner that does not utilize the VPN management functionality available to ASUS Mobile Communication Devices.  The VPN management functionality is designed upon information and belief to entice a user to manage VPNs.

84.    A reasonable inference to be drawn from the facts set forth is that the VPN functionality is especially made or especially adapted to operate on ASUS Mobile Communication Devices for providing VPN management functionality.

85.    A reasonable inference to be drawn from the facts set forth is that the VPN management functionality is not a staple article or commodity of commerce and that the use of the VPN management functionality of ASUS Mobile Communication Devices is for managing VPNs.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

86.    ASUS Mobile Communication Devices with VPN management functionality are each a material part of the invention of the '591 patent and especially made for the infringing use of the VPN functionality to receive call trace information. ASUS Mobile Communication Devices including the VPN management functionality, are especially made or adapted to provide VPN management functionality that perform or facilitate performance of the steps that infringe the '591 patent.  Furthermore, ASUS provides user manuals describing the uses of its Mobile Communication Devices that infringe the '591 patent.   Because the functionality provided by ASUS's VPN

management functionality infringes the '591 patent, ASUS's sales of its infringing Mobile Communication Devices have no substantial non-infringing uses.

87.     Accordingly, a reasonable inference is that ASUS offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ASUS provides to others, Mobile Communication Devices with an operating system configured and installed by ASUS to support VPN management functionality.  ASUS installs and configures on these products distinct and separate components, including software components, which are used only to infringe the '591 Patent.

88.     The use of at least ASUS Mobile Communication Devices with an operating system configured and installed by ASUS to support Location Services functionality, as intended by ASUS infringes at least method claim 17 of the '572 Patent.  ASUS uses these Mobile Communication Devices and thus directly infringes at least method claim 17 of the '572 Patent.

89.     In addition, ASUS provides at least its Mobile Communication Devices with an operating system configured and installed by ASUS to support Location Services functionality to others, such as resellers and end-use customers, in the United States who, in turn, use these products to infringe at least method claim 17 of the '572 Patent.

90.     ASUS indirectly infringes by inducing infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District

and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the Location Services functionality. ASUS received actual notice of the '572 Patent at least by May 14, 2012, in view of a communication from Rockstar, and/or its predecessors-in-interest, to ASUS, and also received knowledge as of the date this lawsuit was filed.

91. ASUS's affirmative acts of selling its Mobile Communication Devices and providing instruction manuals induced the end-users of ASUS Mobile Communication Devices to use ASUS Mobile Communication Devices in their normal and customary way to infringe the '572 patent at least through using Location Services functionality. ASUS also provides instructions, including at least "Transformer User Manual TF201" available on ASUS's web site at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf , for using the Location Services functionality. Through its sales of ASUS Mobile Communication Devices with Location Services functionality, ASUS specifically intended the end-users of ASUS Mobile Communication Devices to infringe the '572 patent; further, ASUS was aware that the normal and customary use of Location Services would infringe the '572 patent. ASUS also enticed its end-users to use the Location Services by providing instruction manuals. ASUS performed the acts that constituted induced infringement, and would induce actual infringement, with the knowledge of the '572 patent and with the knowledge or willful blindness that the induced acts would constitute infringement.

92.     Accordingly, a reasonable inference is that ASUS actively induces infringement of the '572 Patent by others, such as resellers and end-use customers. ASUS specifically intends for others, such as resellers and end-use customers, to directly infringe one or more claims of the '572 Patent in the United States because ASUS had knowledge of the '572 Patent, and ASUS actually induces infringement by providing instructions to resellers and end-use customers regarding the use and operation of ASUS's products in an infringing way. Such instructions include at least "Transformer User Manual TF201" available on ASUS's web site at http://dlcdnet.asus.com/pub/ASUS/EeePAD/TF201/TF201_MANUAL_en_20120210.pdf . When resellers and end-use customers follow such instructions, they directly infringe the '572 Patent. ASUS knows that by providing such instructions, resellers and end-use customers follow those instructions, and directly infringe the '572 Patent. ASUS thus knows that its actions induce the infringement.

93.     ASUS indirectly infringes the '572 Patent by contributing to infringement by others, such as resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, resellers, and/or end-users of ASUS Mobile Communication Devices in their intended use, including a customer's use of the Locations Services functionality. ASUS received actual notice of the '572 Patent at least by May 14, 2012, in view of a communication from Rockstar, and/or its predecessors-in-interest, to ASUS, and also received knowledge as of the date this lawsuit was filed.

94.     ASUS's Location Services functionality provides call trace information, i.e., a geographic location of ASUS Mobile Communication Devices. The Location

Services functionality is designed to notify the user of ASUS Mobile Communication Devices of call trace information, i.e., a geographic location of the Mobile Communication Devices, and cannot function in a manner that does not utilize the Location Services functionality available to the Mobile Communication Devices. Upon information and belief, the Location Services functionality is designed to entice a user to access call trace information.

95.     A reasonable inference to be drawn from the facts set forth is that the Location Services functionality is especially made or especially adapted to operate on ASUS Mobile Communication Devices for obtaining call trace information, i.e., a geographic location of the Mobile Communication Devices.

96.     A reasonable inference to be drawn from the facts set forth is that the Location Services functionality is not a staple article or commodity of commerce and that the use of the Location Services functionality of ASUS Mobile Communication Devices is for providing call trace information. Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

97.     ASUS Mobile Communication Devices with Location Services functionality are each a material part of the '572 patent and especially made for the infringing use of the Location Services functionality to receive call trace information, i.e., a geographic location of the Mobile Communication Devices. The Mobile Communication Devices including the Location Services functionality are especially made or adapted to provide call trace information that perform or facilitate performance of the steps that infringe the '572 patent. Furthermore, ASUS provides user manuals describing the uses of its products that infringe the '572 patent. Because the functionality

32

provided by ASUS's Location Services to obtain call trace information, i.e., a geographic location of the Mobile Communication Devices, infringes the '572 patent, ASUS's sales of its infringing products have no substantial non-infringing uses.

98.     Accordingly, a reasonable inference is that ASUS offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ASUS provides to others, Mobile Communication Devices with an operating system configured and installed by ASUS to support Location Services functionality.  ASUS installs and configures on these products distinct and separate components, including software components, which are used only to perform the infringing method claims.

99.     ASUS's acts of infringement have caused damage to Rockstar and MobileStar.  Rockstar and MobileStar are entitled to recover from ASUS the damages sustained by Rockstar and MobileStar as a result of ASUS's wrongful acts in an amount subject to proof at trial.  In addition, the infringing acts and practices of ASUS have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Rockstar and MobileStar for which there is no adequate remedy at law, and for which Rockstar and MobileStar are entitled to injunctive relief under 35 U.S.C. § 283.

100.     ASUS received actual notice of its infringement of the '551, '937, '298, '973, '131, '591, and '572 Patents through at least letters sent by Rockstar and/or its

33

predecessors-in-interest, Nortel Networks Ltd. and/or Nortel Networks, Inc., to ASUS, and through meetings between employees of Rockstar and/or its predecessors-in-interest, Nortel Networks Ltd., or Nortel Networks Inc. and ASUS. ASUS also has knowledge of its infringement of the Patents-in-Suit by way of this Complaint.

101.   ASUS has willfully infringed and/or does willfully infringe the '551, '937, '298, '131, '591, and '572 Patents.

## DEMAND FOR JURY TRIAL

Rockstar and MobileStar hereby demand a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Rockstar and MobileStar pray for the following relief:

1.   A judgment that ASUS has directly infringed the '551 Patent, contributorily infringed the '551 Patent, and/or induced the infringement of the '551 Patent.

2.   A judgment that ASUS has directly infringed the '937 Patent, contributorily infringed the '937 Patent, and/or induced the infringement of the '937 Patent.

3.   A judgment that ASUS has directly infringed the '298 Patent, contributorily infringed the '298 Patent, and/or induced the infringement of the '298 Patent.

4.   A judgment that ASUS has directly infringed the '131 Patent, contributorily infringed the '131 Patent, and/or induced the infringement of the '131 Patent.

5.      A judgment that ASUS has directly infringed the '591 Patent, contributorily infringed the '591 Patent, and/or induced the infringement of the '591 Patent.

6.      A judgment that ASUS has directly infringed the '572 Patent, contributorily infringed the '572 Patent, and/or induced the infringement of the '572 Patent.

7.      A permanent injunction preventing ASUS and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '551 Patent;

8.      A permanent injunction preventing ASUS and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '937 patent;

9.      A permanent injunction preventing ASUS and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '298 patent;

10.      A permanent injunction preventing ASUS and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '973 patent;

11.    A permanent injunction preventing ASUS and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '131 patent;

12.    A permanent injunction preventing ASUS and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '591 patent;

13.    A permanent injunction preventing ASUS and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the '572 patent;

14.    A judgment that ASUS's infringement of the '551, '937, '298, '131, '591, and '572 Patents has been willful;

15.    A ruling that this case be found to be exceptional under 35 U.S.C. § 285, and a judgment awarding Rockstar and MobileStar to its attorneys' fees incurred in prosecuting this action;

16.    A judgment and order requiring ASUS to pay Rockstar and MobileStar damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, and treble damages for willful infringement as provided by 35 U.S.C. § 284;

17.    A judgment and order requiring ASUS to pay Rockstar and MobileStar the costs of this action (including all disbursements);

36

18.     A judgment and order requiring ASUS to pay Rockstar and MobileStar pre-judgment and post-judgment interest on the damages awarded;

19.     A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that Rockstar and MobileStar be awarded a compulsory ongoing licensing fee; and

20.     Such other and further relief as the Court may deem just and proper.

McKool 940072v1

DATED:  October 31, 2013.

Respectfully submitted,

**McKool Smith, P.C.**

*/s/ Theodore Stevenson, III*
Mike McKool, Jr.
Texas Bar No. 13732100
mmckool@mckoolsmith.com
Douglas A. Cawley
Texas Bar No. 0403550
dcawley@mckoolsmith.com
Theodore Stevenson, III
Lead Attorney
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
dsochia@mckoolsmith.com
**MCKOOL SMITH P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

**ATTORNEYS FOR PLAINTIFFS
ROCKSTAR CONSORTIUM US,
LP AND MOBILESTAR
TECHNOLOGIES LLC**

38