1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
        Sean Pak (Cal. Bar No. 219032)
2       seanpak@quinnemanuel.com
        Amy H. Candido (Cal. Bar No. 237829)
3       amycandido@quinnemanuel.com
        Matthew S. Warren (Cal. Bar No. 230565)
4       matthewwarren@quinnemanuel.com
    50 California Street, 22nd Floor
5   San Francisco, California  94111
    (415) 875-6600
6   (415) 875-6700 (facsimile)

7   Attorneys for Plaintiff GOOGLE INC.

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                      OAKLAND DIVISION

11

12  GOOGLE INC.,                        CASE NO. 13-cv-5933-CW

13              Plaintiff,              **GOOGLE INC.'S OPPOSITION TO**
                                        **DEFENDANTS' MOTION TO DISMISS**
14        v.                            **OR TRANSFER**

15  ROCKSTAR CONSORTIUM US LP and       **REDACTED VERSION OF DOCUMENT**
    MOBILESTAR TECHNOLOGIES LLC,        **SOUGHT TO BE SEALED**
16
                Defendants.             Date:      Thursday, March 13, 2014
17                                      Time:      2:00 p.m.
                                        Courtroom: Courtroom 2, Fourth Floor
18                                      Judge:     Hon. C.J. Claudia Wilken

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    A.    Apple, Microsoft, and Other Investors Acquire Nortel's Licensing Operation ........ 2

    B.    Rockstar Sells Patents to Its Owners, and Reorganizes Itself .................................. 2

    C.    Rockstar Forms MobileStar and Files Actions Against Android Makers ................. 3

    D.    Google Files This Action, and Rockstar Responds By Belatedly Suing Google ...... 5

ARGUMENT ...................................................................................................................... 5

I.    This Court Has Personal Jurisdiction Over Rockstar ..................................................... 5

    A.    Rockstar Cannot Escape Jurisdiction Through Its Litigation Subsidiary ................. 6

    B.    Rockstar Holds Itself Out As Standing in Nortel's Shoes ....................................... 7

    C.    Rockstar's Contacts With Apple Require Personal Jurisdiction .............................. 9

    D.    Rockstar's Licensing Business Also Gives This Court Personal Jurisdiction ........ 12

    E.    Venue is Proper in This District ........................................................................ 18

II.    This Court is the Correct Forum for this Action ...................................................... 18

    A.    Google's Suit Serves the Purposes of the Declaratory Judgment Act ................... 18

    B.    Google, Not Rockstar, Was First to File .............................................................. 19

    C.    Rockstar, Not Google, is Forum Shopping .......................................................... 21

    D.    Proceeding With This Action Will Prevent Duplicative Litigation ....................... 22

    E.    This District is the Appropriate Venue for This Action ........................................ 22

        1.    Convenience and Availability of Witnesses Favors This District .................. 23

        2.    This Court Has Jurisdiction Over All Parties to the Halloween Actions ......... 23

        3.    The Halloween Actions Should Be Stayed or Consolidated Here ................... 24

        4.    The Interests of Justice Strongly Favor This District .................................... 24

        5.    The Remaining Factors All Favor This District ........................................... 25

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Affinity Labs of Texas v. Samsung Elecs. Co., Ltd.*,
No. 12-CV-557, 2013 WL 5508122 (E.D. Tex. Sept. 18, 2013) ........................................ 24

*Akro Corp. v. Luker*,
45 F.3d 1541 (Fed. Cir. 1995) ................................................................. 10, 22

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
846 F.2d 731 (Fed. Cir. 1988) ........................................................................ 18

*ASUSTeK Computer Inc. v. AFTG-TG LLC*,
No. 11-0192, 2011 WL 6845791 (N.D. Cal. Dec. 29, 2011) ........................................ 6

*Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*,
552 F.3d 1324 (Fed. Cir. 2008) .......................................................... 10, 15, 19

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ....................................................................... 5, 10, 15, 17

*Campbell v. Miale*,
542 F.3d 879 (Fed. Cir. 2008) ........................................................................ 17

*Capo, Inc. v. Dioptics Med. Prods., Inc.*,
387 F.3d 1352 (Fed. Cir. 2004) ...................................................................... 18

*Catalyst Assets LLC v. Life Techs. Corp.*,
No. 11-3537, 2012 WL 2289728 (N.D. Cal. June 18, 2012) ........................................ 21, 22

*Checkpoint Sys., Inc. v. U.S. Int'l Trade Comm'n*,
54 F.3d 756 (Fed. Cir. 1995) ........................................................................... 7

*Codex Corp. v. Milgo Elec. Corp.*,
553 F.2d 735 (1st Cir. 1977) .......................................................................... 21

*Daimler A.G. v. Bauman, et. al.*,
571 U.S. —, 134 S. Ct. 746 (2013) ................................................................... 13

*Dainippon Screen Manufacturing. Co., Ltd. v. CFMT, Inc.*,
    142 F.3d 1266 (Fed. Cir. 1998) ............................................................................. 7, 9

*Electronics For Imaging, Inc. v. Coyle*,
    340 F.3d 1344 (Fed. Cir. 2003) ......................................................................... 6, 10, 24

*EMC Corp. v. Norand Corp.*,
    89 F.3d 807 (Fed. Cir. 1996) ..................................................................................... 18

*Futurewei Techs., Inc. v. Acacia Research Corp.*,
    737 F.3d 704 (Fed. Cir. 2013) ................................................................................... 20

*Genentech, Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993) ................................................................................... 19

*Genentech, Inc. v. GlaxoSmithKline LLC*,
    No. 10-4255, 2010 WL 4923954 (N.D. Cal. Dec. 1, 2010) ...................................... 19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. —, 131 S. Ct. 2846 (2011) ......................................................................... 13

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ................................................................................................... 13

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ..................................................................................................... 25

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) ................................................................................. 23

*In re Hoffman-La Roche*,
    587 F. 3d 1333 (Fed. Cir. 2009) ........................................................................... 24, 25

*In re Microsoft*,
    630 F.3d 1361 (Fed. Cir. 2011) ................................................................................. 25

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) ................................................................................. 25

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010) ........................................................................... 23, 25

*Inamed Corp. v. Kuzmak*,
    249 F.3d 1356 (Fed. Cir. 2001) ................................................................. 6, 15

*Ingeniador, LLC v. Adobe Sys. Inc.*,
    No. 12-00805, 2014 WL 105106 (E.D. Tex. Jan. 10, 2014) .............................. 23

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ............................................................................... 5

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*,
    544 F. Supp. 2d 949 (N.D. Cal. 2008) ...................................................... 20

*JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*,
    No. 12-5847, 2013 WL713929 (E.D.N.Y. 2013) ........................................ 14

*Juniper Networks, Inc. v. Juniper Media, LLC*,
    No. 11-03906, 2012 WL 160248 (N.D. Cal. Jan. 17, 2012) ............................. 9

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) .............................................................. 21

*Kyocera Commc'ns, Inc. v. ESS Techs. Int'l, Inc.*, No.
    12-01195 2012 WL 2501119 (N.D. Cal. June 27, 2012) ............................... 22

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*,
    232 F.3d 1369 (Fed. Cir. 2000) ............................................................... 5

*Mabbett v. Tandy Corp.*,
    847 F.2d 841 (Fed. Cir. 1988) ................................................................ 3

*Merial Ltd. v. Cipla Ltd.*,
    681 F.3d 1283 (Fed. Cir. 2012) .............................................................. 20

*Microchip Tech., Inc. v. United Module Corp.*,
    No. 10-4241 2011 WL 2669627 (N.D. Cal. July 7, 2011) .............................. 20

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
    518 F.3d 897 (Fed. Cir. 2008) ................................................. 19, 20, 22, 24

*Nortel Networks Inc. v. State Bd. of Equalization*,
    191 Cal. App. 4th 1259 (2011) ................................................................ 8

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed. Cir. 2010) ................................................................. 5, 17

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) ......................................................................... 19, 20

*Proofpoint, Inc. v. InNova Patent Licensing, LLC*,
    No. 11-2288, 2011 WL 4915847 (N.D. Cal. Oct. 17, 2011)........................ 20, 21

*Quill Corp. v. North Dakota*,
    504 U.S. 298 (1992) .................................................................................. 15

*Radio Sys. Corp. v. Accession, Inc.*,
    638 F.3d 785 (Fed. Cir. 2011) ................................................................... 16, 17

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*,
    148 F.3d 1355 (Fed. Cir. 1998) ........................................................... 10, 15, 19

*Refac Int'l, Ltd. v. Lotus Dev. Corp.*,
    81 F.3d 1576 (Fed. Cir. 1996) ...................................................................... 7

*Reflex Packaging, Inc. v. Audio Video Color Corp.*,
    Case No. 13-03307, 2013 WL 5568345 (N.D. Cal. Oct. 9, 2013) ..................... 23

*Silent Drive, Inc. v. Strong Indus., Inc.*,
    326 F.3d 1194 (Fed. Cir. 2003) .................................................................. 15

*Smugmug, Inc. v. Virtual Photo Store LLC*,
    No. 09-2255, 2009 WL 2488003 (N.D. Cal. Aug. 13, 2009)............................ 5, 6, 11, 12

*Teva Pharms. USA, Inc. v. Eisai Co.*,
    620 F.3d 1341 (Fed. Cir. 2010) ................................................................... 22

*Times Networks, Inc. v. Nortel Networks Corp.*,
    No. 06-00532 (N.D. Cal. July 7, 2006) ......................................................... 8

*Trintec Indus. v. Pedre Promotional Prods.*,
    395 F.3d 1275 (Fed. Cir. 2005) ................................................................ 6, 18

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
    No. 10-3724, 2013 WL 4049572 (N.D. Cal. Aug. 7, 2013).......................... 12

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
    917 F.2d 1574 (Fed.Cir.1990) ............................................................................. 18

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ............................................................................................. 19

# INTRODUCTION

There is only one reasonable place to conduct this litigation:  California.  In this action, Plaintiff Google Inc. ("Google") asks for a declaration that its Android platform and products do not infringe seven patents held by Defendants Rockstar Consortium US LP and MobileStar Technologies LLC (collectively, "Rockstar").  Android is designed, developed, tested, and built primarily here in California—including the features Rockstar accuses of infringement, which arise from work done in California.  California is the locus of Rockstar's accusations, and the logical site for their resolution.  Nonetheless, engaging in blatant forum-shopping, Rockstar seeks to litigate its claims in the Eastern District of Texas, where it claims to have a working office, as verified by a declaration signed by a Rockstar executive working at Rockstar's office—in Canada.

Rockstar makes three arguments to justify moving this action from California (which holds the overwhelming majority of evidence regarding Google's alleged infringement) to Texas (which holds a tiny Rockstar office established to bolster its claim of jurisdiction there).  First, relying on cherry-picked facts and a carefully worded declaration from its Canadian executive, Rockstar argues that this Court has no personal jurisdiction.  But this Court has both general and specific jurisdiction over Rockstar, due at least to Rockstar's significant and pervasive contacts with its majority owner, Apple, as well as its conduct of its admitted sole business, patent licensing and enforcement, throughout this State.  Second, Rockstar claims priority based on its filing, on October 31, 2013, of infringement actions against Android manufacturers, and its amendment of one of those actions, on December 31, to add Google.  But the Court can quickly dismiss both Rockstar's Halloween actions and its New Year's Eve amendment, because Rockstar admittedly sued Google only after Google brought this action, making this action the first-filed one.  Finally, briefly and desperately, Rockstar argues that the Eastern District of Texas is the most convenient location for this action.  This argument fails:  the overwhelming majority of Google's records and witnesses are in Mountain View, California, and Rockstar's records and witnesses are in Canada.

Rockstar's arguments fail so completely that the Court can and should deny Rockstar's motion outright.  If the Court is not inclined to do so, however, it should at a minimum order jurisdictional discovery, so that the Court can decide these issues using a full record.

# BACKGROUND

### A.    Apple, Microsoft, and Other Investors Acquire Nortel's Licensing Operation

Nortel Networks ("Nortel") was Canada's primary telephone provider until deregulation, and later became a successful manufacturer of telecommunications equipment.  (Declaration of Kristin J. Madigan ("Madigan Decl.") Exs. 1-2.)  Although Nortel's headquarters was in Ottawa, Canada, it had offices across the United States, including a substantial campus in Santa Clara, California.  (*Id.* Ex. 3.)  On January 14, 2009, Nortel filed for bankruptcy.  (*Id.* Ex. 4.)  The bankruptcy court ordered an auction of Nortel's patent licensing operation, to occur in June 2011.  (*Id.* Ex. 5, at 2.)  Nortel described the auction as "approximately 6,000 U.S. and foreign patents and patent applications spanning wireless, wireless 4G, data networking, optical, voice, internet, service provider, semiconductors and . . . . nearly every aspect of telecommunications and additional markets as well, including Internet search and social networking."  (*Id.* Ex. 6 ¶ 9.)  During this auction, five of the world's largest technology companies—including Apple, Blackberry, and Microsoft—manufactured and bankrolled an entity called "Rockstar Bidco LP," a Delaware limited partnership, which placed the winning bid of $4.5 billion.  (*Id.* Exs. 7-8.)  According to its filings with the Securities and Exchange Commission, Apple contributed "approximately $2.6 billion" to Rockstar Bidco, or 58% of that sum.  (*Id.* Ex. 9, at 34.)

### B.    Rockstar Sells Patents to Its Owners, and Reorganizes Itself

In addition to Nortel's patent portfolio, the auction also included Nortel's patent licensing team, led by then-Nortel executive and current Rockstar CEO John Veschi.  (*Id.* Exs. 10-11.)  As Mr. Veschi explained in an interview, following the auction his team made an "immediate switchover" from Nortel to Rockstar:  "when the Nortel transaction closed and Rockstar became the acquirer, at that point, my team and myself all came over to Rockstar."  (*Id.* Ex. 11.)  Mr. Veschi's team of former Nortel licensing executives remains based in Nortel's old headquarters town of Ottawa, Canada, and still forms the core of Rockstar's executive ranks.  (*Id.* Ex. 12.)

Once it took control of Nortel's licensing operation, Rockstar Bidco transferred thousands of patents to its owners, which it refers to as "founding licensees."  (*Id.* Exs. 13-14.)  Of the "approximately 6,000 U.S. and foreign patents and patent applications" included in the sale (*Id.*

Ex. 6 ¶ 9), Rockstar Bidco transferred at least 1,147 U.S. patents to Apple, according to records filed with the Patent & Trademark Office.  (*Id.* Ex. 14.)  Apple is headquartered in Cupertino, California.  (*Id.* Ex. 9.)  Because patent owners need not record their transfers, however, this number could be much higher.  *Mabbett v. Tandy Corp.*, 847 F.2d 841 (Fed. Cir. 1988).  Published reports indicate that Rockstar Bidco transferred about 2,000 patents to its owners, leaving it with 4,000 remaining.  (Madigan Decl. Ex. 7.)  Then, in a transaction that remains murky, Rockstar Bidco reorganized itself into Defendant Rockstar Consortium US LP ("Rockstar Consortium"), a Delaware limited partnership.  (*Id.* Exs. 7, 15.)  Rockstar Consortium is admittedly a "patent licensing business" that produces no products, but exists solely to assert its patents.  (*Id.* Ex. 13.)  In the first two months following its creation, Rockstar sought licenses from as many as 100 companies (*Id.* Ex. 7), and since then has sought licenses from many more.  (*Id.* Exs. 16-18; Dean Decl. ¶¶ 18-21.)  Rockstar Consortium claims its principal place of business is at Legacy Town Center 1, 7160 North Dallas Parkway, Suite No. 250, Plano, Texas (Dean Decl. ¶ 5), but the substantial majority of its employees, including all its senior management, are based in Ottawa, Canada.  (Madigan Decl. Ex. 19.)  Tellingly, when pressed to provide a declaration supporting its motion to dismiss or transfer this action to Texas, Rockstar could submit only a declaration from the "VP of IP Licensing for Rockstar Consortium," Afzal Dean, who admits that he "reside[s] and work[s] from Rockstar's Ottawa, Canada location."  (Dean Decl. ¶ 28.)

### C.      Rockstar Forms MobileStar and Files Actions Against Android Makers

On October 30, 2013, Rockstar formed a wholly owned subsidiary, Defendant MobileStar Technologies LLC ("MobileStar").  (Madigan Decl. Ex. 20.)  MobileStar, a Delaware limited liability corporation, purports to have its "principal place of business" in the same office suite as Rockstar Consortium.  (Dean Decl. ¶¶ 5, 15.)  Although Rockstar's motion asserts that "MobileStar's Texas roots are long-standing and substantial" (Mot. at 5), again MobileStar could submit only a declaration from the same Afzal Dean, who is not only a Rockstar VP but also "the President of MobileStar Technologies LLC."  (Dean Decl. ¶¶ 2-3.)  Mr. Dean further avers that "MobileStar is based in Texas," but identifies *zero* employees of MobileStar, instead listing only three officers and one board member, all of whom also work for Rockstar Consortium, and all of

1   whom live and work in Canada—except for one in Colorado.[1]

2       On October 31, the second day of MobileStar's existence, Rockstar Consortium transferred

3   five of the seven patents at issue in this case to MobileStar, and apparently executed exclusive

4   licenses for the other two.[2]  Later that same day, Rockstar filed infringement actions in the Eastern

5   District of Texas against ASUS, HTC, Huawei, LG, Pantech, Samsung, and ZTE—but, notably,

6   not Google.[3]  Although Rockstar did not file a complaint against Google, its seven Halloween

7   actions each alleged infringement by "certain mobile communication devices having a version (or

8   an adaption thereof) of [the] Android operating system" developed by Google.[4]  Rockstar limited

9   its allegations to products using Android, although each of the defendants to its actions also makes

10  other devices.  (Madigan Decl. Ex. 21.)  Indeed, even for U.S. Patent No. 5,838,551, which

11  addresses hardware and not software, Rockstar limited its assertions to devices running Google's

12  Android, and spared all other devices.[5]  Media and industry observers immediately viewed

13  Rockstar's Halloween actions as an attack, by Microsoft and Apple, on Android and Google.[6]

---

[1]  (Dean Decl. ¶¶ 9, 24.)  Afzal Dean is a Vice President of Patent Licensing at Rockstar and resides in Ottawa, Canada.  (Dean Decl. ¶¶ 2-3.)  Chad Hilyard is Rockstar's Chief Intellectual Property Counsel and resides in Colorado.  (*Id.* Exs. 10, 19.)  Michael Dunleavy is outside Chief Corporate Counsel for Rockstar and resides in Ottawa, Canada.  (*Id.* Exs. 10, 23.)  John Veschi is the Chief Executive Officer of Rockstar and resides in Ottawa, Canada.  (*Id.* Ex. 10.)

[2]  Four of the Halloween complaints initially alleged Rockstar to be the owner of "all rights, title, and interest" to three of the seven asserted patents; the others alleged Rockstar to own only two.  *Compare* Mot. Ex. D ¶ 15 *with* Mot. Ex. G ¶ 14.  Rockstar has since amended two of these complaints to state that Rockstar owns "all rights, title, and interest" as to only two of the asserted patents. *See, e.g.*, *Rockstar Consortium US LP v. ZTE Corp.*, No.13-0901 (Dkt. No. 17 ¶ 14).

[3]  *Rockstar Consortium US LP v. ASUSTek Computer, Inc.*, No. 13-0894; *Rockstar Consortium US LP v. HTC Corp.*, No. 13-0895; *Rockstar Consortium US LP v. Huawei Investment & Holding Co.*, No. 13-0896; *Rockstar Consortium US LP v. LG Electronics Inc.*, No. 13-0898; *Rockstar Consortium US LP v. Pantech Co.*, No. 13-0899; *Rockstar Consortium US LP v. Samsung Electronics Co.*, No. 13-0900; and *Rockstar Consortium US LP v. ZTE Corp.*, No. 13-0901.

[4]  *See* Mot. Ex. A ¶ 14; Ex. B ¶ 15; Ex. C ¶ 20; Ex. D ¶ 16; Ex. E ¶ 14; Ex. F ¶ 15; Ex. G ¶ 15; Ex. H ¶¶ 25, 27.

[5]  *E.g.*, *Rockstar Consortium US LP v. ZTE Corp.*, No. 13-0901 (Dkt. No. 17 ¶¶ 15-16.)

[6]  "[Rockstar's] stockpile was finally used for what pretty much everyone suspected it would be used for—launching an all-out patent attack on Google and Android."  (Madigan Decl. Ex. 24); "This is an all out assault on Google and the Android smartphone ecosystem and it would be fair to say that most experts expected those patents would rear their ugly head sometime in the future." (*Id.* Ex. 25); "Some legal experts expect the lawsuits will trigger new attention to Rockstar, largely because it gives the appearance that three leading competitors to Android are teaming up against it . . . 'Alarm bells have to be going off at the Justice Department . . .'" (*Id.* Ex. 26).

D.      **Google Files This Action, and Rockstar Responds By Belatedly Suing Google**

On December 23, 2013, Google filed this action, seeking a declaration that Google's Android platform and the Nexus 5, Nexus 7 and Nexus 10 devices do not directly or indirectly infringe any claim of any of the seven patents Rockstar asserted against others in the Halloween actions. (Dkt. No. 1.) On December 31, 2013, Rockstar responded by amending one of the Halloween actions, *Rockstar v. Samsung*, No. 13-0900 (E.D. Tex.), to add allegations that Google infringes three of the asserted patents: U.S. Patent Nos. 6,037,937, 6,463,131, and 6,765,591. (Mot. Ex. H ¶ 27.) Rockstar did not allege that Google infringed the *other* four patents at issue in the Halloween actions, U.S. Patent Nos. 5,838,551, 6,128,298, 6,333,973 and 6,937,572. (*Id.*)

**ARGUMENT**

**I.      This Court Has Personal Jurisdiction Over Rockstar**

In considering a motion to dismiss for lack of personal jurisdiction, the Court must decide two related but separate questions: whether the Court can now find that it has jurisdiction and, if not, whether the Court should allow jurisdictional discovery.[7] Under the Due Process Clause, the "constitutional touchstone" for personal jurisdiction "remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction takes two forms, general and specific, both of which exist here.

"General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). There is no "specific test to follow when analyzing whether a defendant's activities within a state are 'continuous and systematic.' Instead, a court must look at the facts of each case to make such a determination." *Id.*

---

[7]   *See, e.g., Smugmug, Inc. v. Virtual Photo Store LLC*, No. 09-2255, 2009 WL 2488003 (N.D. Cal. Aug. 13, 2009) (denying motion to dismiss without prejudice and granting jurisdictional discovery). "The law of the Federal Circuit, rather than that of the regional circuit in which the case arose, applies to determine whether the district court properly declined to exercise personal jurisdiction over an out-of-state accused infringer." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010).

"Specific jurisdiction exists where the cause of action arises out of or relates to a defendant's contacts with the forum state, even if those contacts are isolated and sporadic." *ASUSTeK Computer Inc. v. AFTG-TG LLC*, No. 11-0192, 2011 WL 6845791, at *5 (N.D. Cal. Dec. 29, 2011) (citing *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005)).[8]  The Federal Circuit applies the following three-part test to determine if specific jurisdiction exists:  "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'"  *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360-1361 (Fed. Cir. 2001).  "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis."  *Id.*

Finally, although the Court should deny Rockstar's motion, at minimum it should order jurisdictional discovery.  "Where a district court concludes that the existing record is insufficient to support personal jurisdiction and the plaintiff demonstrates that it can supplement its jurisdictional allegations through discovery, the plaintiff is entitled to jurisdictional discovery."  *Smugmug*, 2009 WL 2488003, at *2 (N.D. Cal. Aug. 13, 2009) (citing *Trintec Indus.*, 395 F.3d at 1283).

### A.  Rockstar Cannot Escape Jurisdiction Through Its Litigation Subsidiary

Rockstar's lead argument for dismissal would, if accepted by this Court, upend the normal rules of litigation by giving patentees total control over location of litigation.  Rockstar argues that because it formed MobileStar, a wholly owned shell company made solely for litigation, one day before filing the Halloween actions, and because it gave MobileStar rights in the asserted patents the same day it filed the Halloween actions, the Court cannot consider *any* contacts that *anyone else* had with California, *ever*—because "[i]n the absence of jurisdiction as to MobileStar, this action must be dismissed."  (Mot. at 1; *see also id.* at 8-9.)  Rockstar's argument would replace the

---

[8]   There are actually two separate inquiries:  "whether a forum state's long-arm statute permits service of process, and whether the assertion of jurisdiction would be inconsistent with due process."  *Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).  In this case, however, the two inquiries collapse into one because "California's long-arm statute permits service of process to the limits of the due process clauses of the federal Constitution."  (*Id.*)

normal rules and allow *any* patentee company to make up a litigation subsidiary like MobileStar, transfer patent rights to it, and use the resulting immunity-by-subsidiary to bar *any* action about the transferred patents *except* in the litigation subsidiary's carefully chosen jurisdiction.  That would be an awfully neat trick—had the Court of Appeals not already considered and rejected it. In *Dainippon Screen Manufacturing. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266 (Fed. Cir. 1998), patentee "CFM incorporated CFMT under Delaware law as a holding company for its intellectual property, and "assigned all of its patents to CFMT."  *Id.* at 1267.  When Dainippon Screen sued in this District, CFM and CFMT made precisely the same argument Rockstar makes here:

> Stripped to its essentials, CFM contends that a parent company can incorporate a holding company in another state, transfer its patents to the holding company, arrange to have those patents licensed back to itself by virtue of its complete control over the holding company, and threaten its competitors with infringement without fear of being a declaratory judgment defendant, save perhaps in the state of incorporation of the holding company.  This argument qualifies for one of our "chutzpah" awards.

*Id.* at 1271 (citing *Refac Int'l, Ltd. v. Lotus Dev. Corp.*, 81 F.3d 1576, 1584 (Fed. Cir. 1996); *Checkpoint Sys., Inc. v. U.S. Int'l Trade Comm'n*, 54 F.3d 756, 763 n.7 (Fed. Cir. 1995)).  The Federal Circuit found that "a patent holding subsidiary . . . cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction and declaratory judgment jurisdiction," and held that the District Court "erred in holding that it lacked personal jurisdiction."  *Dainippon Screen*, 142 F. 3d at 1271.  Following this rule, this Court should ignore Rockstar's too-clever-by-half assertion of immunity by subsidiary, and proceed to consider whether it has personal jurisdiction over Rockstar Consortium.

## B.    Rockstar Holds Itself Out As Standing in Nortel's Shoes

This Court can and should find personal jurisdiction over Rockstar based solely on its own decision, undertaken in its own interest, to hold itself out as standing in Nortel's shoes.  Nortel had continuous and systematic contacts with California:  it maintained its primary U.S. campus in Santa Clara (Madigan Decl. Ex. 3), maintained a registered agent for service of process in California (*Id.* Ex. 27), and routinely sued and was sued in California, without quibbling over jurisdiction.  *See, e.g.*, *Times Networks, Inc. v. Nortel Networks Corp.*, No. 06-00532 (N.D. Cal.

1  July 7, 2006); *Nortel Networks Inc. v. State Bd. of Equalization*, 191 Cal. App. 4th 1259 (2011).  If

2  Rockstar stands in Nortel's shoes, then this Court has general jurisdiction over Rockstar.

3     Rockstar has consistently asserted that it does stand in Nortel's shoes.  On its website,

4  Rockstar states it is "[b]ased on Nortel Networks' groundbreaking innovation engine," and

5  Rockstar's sales materials boast that "Nortel, a prolific inventor, conducted a great deal of high

6  quality research and development in the company's 100+ year existence.  The company had over

7  10,000 R&D employees and invested more than $30 billion in R&D between 1995 and 2010."

8  (*Id.* Ex. 28.)  Across multiple interviews, Rockstar's CEO John Veschi has always avoided calling

9  Rockstar a "non-practicing entity," instead calling it a "former practicing entity."  (*E.g.*, *Id.* Ex.

10  12.)  But Rockstar admits it has never practiced anything, so it can be a "former practicing entity"

11  only if it is *the same as Nortel*.  (*Id.*)  Mr. Veschi has gone even further:  in an interview

12  promoting Rockstar, he stated that, "even though the bankruptcy went through a certain path, you

13  could almost look at it as if, the IP continued, and the rest of the company was divested . . . The

14  business is exactly the same." (*Id.* Ex. 11.)  An article Rockstar posted on its website describes it

15  as "essentially a continuation of what was previously the Nortel licensing operation."  (*Id.* Ex. 22.)

16  Perhaps most significantly, in its Halloween actions against Android makers, Rockstar alleges that

17  each defendant received at least some notice of infringement from its "predecessor-in-interest,

18  Nortel Networks Ltd., or Nortel Networks Inc."  (*See* Mot. Ex. A ¶ 100; Ex. B ¶ 116; Ex. C ¶ 121;

19  Ex. D ¶ 117; Ex. E ¶ 105; Ex. F ¶ 117; Ex. G ¶¶ 106; Ex. H ¶ 132.)  Even in this action, Rockstar

20  invokes Nortel ties:  Mr. Dean avers that he is "a former employee of Nortel" and that "Rockstar

21  also inherited the Nortel law department's Richardson office space, many of Nortel's employees in

22  Richardson responsible for licensing activities, and historical Nortel files."  (Dean Decl. ¶¶ 4, 27.)

23     Rockstar has rested firmly on its ties to Nortel, and these ties bind.  This Court does not

24  allow parties to make representations in their normal business, and then avoid jurisdiction arising

25  from those representations by saying, when sued, they are not really true.  In *Juniper Networks,*

26  *Inc. v. Juniper Media, LLC*, the defendant, a Florida limited liability company, presented itself as

27  being in California:  its website listed a telephone number with a 415 area code and an address in

28  Los Angeles, and it issued press releases using a San Jose address.  *Juniper Networks, Inc.*, No.

11-03906, 2012 WL 160248, at *2 (N.D. Cal. Jan. 17, 2012).  The defendant argued that these representations were mistakes and should not affect the jurisdictional analysis, but the court disagreed:  "[g]iven the nature of its services, defendant is undoubtedly cognizant of the technology market's concentration in California's 'Silicon Valley.'  Intentionally creating an aura of local presence is sufficiently encouraging to residents to constitute purposeful direction." *Id.* at *3.  This rule applies here:  Rockstar was "undoubtedly cognizant" of widespread negative views about non-practicing entities.  Seeking to avoid those opinions, Rockstar chose to wrap itself in Nortel's mantle.  Having done so, Rockstar must accept Nortel's jurisdictional contacts as well.

### C.    Rockstar's Contacts With Apple Require Personal Jurisdiction

Apple and Rockstar are inextricably intertwined, and Rockstar's contacts with Apple provide a separate and independent basis for both general and specific jurisdiction.  In its motion, Rockstar is tellingly mum on its creation, and on how it came to acquire its portfolio.  Rockstar repeatedly states that Nortel Networks "owned the patents in suit prior to Rockstar," but omits any mention of Rockstar Bidco, its mysterious predecessor and namesake, for which Apple provided $2.6 billion of the $4.5 billion purchase price, or 58% of the total.  (*See supra* at 2.)  Rockstar Bidco also transferred at minimum 1,147 U.S. patents to Apple, at least 1/6 of its total stock of U.S. patents, and probably significantly more.  (*See supra* at 2-3.)  This transaction alone gives this Court personal jurisdiction over Rockstar, which cannot hide behind its reorganization from Rockstar Bidco any more than its creation of MobileStar.  Like a subsidiary, a predecessor company "cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its" predecessor, here Rockstar Bidco, "engages in activities sufficient to create personal jurisdiction and declaratory judgment jurisdiction." *Dainippon Screen*, 142 F. 3d at 1271.  Were it otherwise, companies like Rockstar could, again, exert full control over the location of litigation, simply by reorganizing after forming contacts they wished to avoid.  (*See supra* at 6-7.)  Immunity by reorganization cannot exist any more than immunity by subsidiary.

This Court also has jurisdiction over Rockstar for another reason:  Apple's ongoing ownership of Rockstar, and Rockstar's concomitant and continuing obligations to Apple.  Apple is either the majority owner of Rockstar or a significant one, and Rockstar does not argue otherwise.

Rockstar is closely held, with only five limited partners:  Apple, Microsoft, Blackberry, Ericsson, and Sony.  (Dean Decl. ¶ 35.)  Rockstar CEO Veschi "schedules periodic calls and meetings with the owners—mainly with their respective heads of intellectual property—and, he says, they work well together."  (Madigan Decl. Ex. 12.)  The purpose of these meetings is to show that Rockstar is marshalling its owners' patents on their behalf:  "I have to show them progress and that real work is being done."  (*Id.*)  Rockstar does not run from this article, instead featuring it on its website.  (*Id.* Ex. 13.)  Rockstar and its CEO thus admit that they are subject to "continuing obligations" to a forum resident—Apple—sufficient to support personal jurisdiction.  *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995); *see also, e.g.*, *Elecs. For Imaging*, 340 F.3d at 1350 (quoting *Burger King*, 471 U.S. at 476) (jurisdiction lies where defendants "created continuing obligations between [themselves] and residents of the forum—and 'proximately result from the actions by the defendant[s] themselves,' such that it is 'presumptively not unreasonable to require [defendants] to submit to the burdens of litigation in that forum as well.'").  It does not matter that, while the licensee in *Akro* was exclusive, Apple is (at least) a non-exclusive Rockstar licensee and significant owner:  as the Court of Appeals later explained, "[w]hat was critical was that the patentee had contacts with that resident in the forum state."  *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998) (citing *Akro*, 45 F.3d at 1546).  *See also Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1335 (Fed. Cir. 2008) ("[U]ndertakings that impose enforcement obligations on a patentee or its licensee reflect the kind of 'other activities' that support specific personal jurisdiction in a declaratory judgment action.").

Finally, Rockstar apparently holds itself out as Apple's representative.  For example, in July and December 2013, Rockstar sold patents to an NPE called Spherix, and took in return at least $60 million in Spherix stock, making it the largest shareholder of Spherix.  (Madigan Decl. Exs. 29-30.)  Anthony Hayes, CEO of Spherix, explained in an interview that "[w]e're really partners with Rockstar," and touted Spherix stock because "Rockstar is Apple, Sony, Microsoft . . . they vetted these patents."  (*Id.* Ex. 30.)  Mr. Hayes repeated that "who you're kind of now partnering with is the biggest tech giants in the industry" and confirmed that obtaining this partnership was "was really one of the big impetuses behind us doing this deal."  (*Id.*)

1      Apple's acquisition of more than 1/6 of Rockstar's patents, as well as Rockstar's

2   continuing obligations to Apple and its holding itself out as Apple's representative, are each

3   sufficient to provide both general and specific jurisdiction over Rockstar.  Each provides general

4   jurisdiction because of its scope and importance to Rockstar, as well as specific jurisdiction

5   because Google's "cause of action arises out of or relates to a defendant's contacts with the forum

6   state," in this case, Rockstar's relationship with Apple.  Rockstar's Halloween actions specifically

7   targeted Android products, even when asserting a purely hardware patent.  (*See supra* at 4.)  As

8   was widely reported at the time, the industry considered this to be an attack by Apple on Android

9   and Google.  (*See supra* at 4 n.6.)  Rockstar's litigation strategy of suing Android device makers

10   but not Google, Android's primary developer, is exactly the kind of "scare-the-customer-and-run"

11   tactic that advances the interests of its majority shareholders, including Apple.  Apple's anti-

12   Android litigation campaign famously began with the publicly disclosed statements of its founder

13   to "destroy" Android by launching a "thermonuclear war."  (Madigan Decl. Ex. 31.)  Given this

14   context for Apple's $2.6 billion investment in Rockstar's litigation business, it strains credulity to

15   suggest that Rockstar's goals are separate from Apple's wish to interfere with the Android

16   platform.  Google's claims in this action thus relate directly to Rockstar's Apple connection.

17      The Court thus has enough information to find that Apple's ties to Rockstar provide it with

18   personal jurisdiction.  Should the Court conclude otherwise, however, it should allow Google

19   jurisdictional discovery into this relationship, because Google "can supplement its jurisdictional

20   allegations through discovery."  *Smugmug*, 2009 WL 2488003, at *2.  Particularly around Apple,

21   Rockstar's motion raises more questions than it answers.  For example, the motion states that

22   "Rockstar's shareholders do not direct or control Rockstar's licensing efforts" and instead that

23   "these activities are directed and controlled by Rockstar's management team"—but, tellingly, the

24   accompanying declaration says that Rockstar's "limited partners neither direct nor control

25   Rockstar's licensing efforts in California or anywhere else," but only that "Rockstar's

26   management directs Rockstar's licensing efforts."  (Dean Decl. ¶ 35.)  Mr. Dean is silent regarding

27   control, and with good reason:  Rockstar is admittedly a "Delaware limited partnership" (*id.* ¶ 15)

28   and is therefore controlled by its general partner—about which Mr. Dean's declaration, and

Rockstar's motion, say precisely nothing.  *See* Del. Code Ann. Tit. 6, § 17-403 ("Except as provided in this chapter or in the partnership agreement, a general partner of a limited partnership has the rights and powers and is subject to the restrictions of a partner in a partnership that is governed by the Delaware Uniform Partnership Law in effect on July 11, 1999 (6 Del. C. § 1501 et seq.).").  Delaware's limited public records reveal the general partner is Rockstar Consortium LLC, which has a mailing address at a New York law firm and was formed by an associate there.  (Madigan Decl. Exs. 32-33.)  Another document shows that the President of Rockstar Consortium LLC, is Kasim Alfahali, Ericsson's Chief Intellectual Property Officer.  (*Id.* Ex. 15.)  That confirms that the Rockstar partners control Rockstar through the G.P. LLC, but not how they do so, or how they allocate control among themselves.  Nor does any of this appear in Rockstar's motion, which deliberately elides the entity that matters most, discovery regarding which would allow Google to supplement its jurisdictional allegations.  Discovery into Rockstar's relationship with Apple will reveal that Apple, indeed, exerts control over Rockstar commensurate to its ownership interest—unless Apple simply decided to give someone else $2.6 billion without any means to protect this massive investment.  Of course that is vanishingly unlikely; the size of Apple's investment and its board members' fiduciary obligation to protect it are, together, enough to require jurisdictional discovery.  *See, e.g.*, *Smugmug*, 2009 WL 2488003, at *4 (N.D. Cal. Aug. 13, 2009) (granting jurisdictional discovery where patentee "Defendant admits to having nonexclusive licenses with three California companies," and the terms and extent of the licenses and defendant's enforcement activities were unknown); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 10-3724, 2013 WL 4049572, at *3 (N.D. Cal. Aug. 7, 2013) (same where the defendant admitted assumption of certain past sales but there was not "presently evidence of ongoing sales").

### D.  Rockstar's Licensing Business Also Gives This Court Personal Jurisdiction

"Rockstar is a patent licensing business."  (Madigan Decl. Ex. 13.)  Except for litigation, "patent licensing and sales" comprise Rockstar's entire business.  (*Id.*)  As Rockstar executives have explained to the media, once Rockstar identifies commercially successful products, it approaches the companies behind those products to seek licenses to Rockstar's patents.  (*Id.* Ex. 7; *see also* Dean Decl. ¶¶ 18-21.)  Rockstar has cast a broad net:  as of May 2012, Rockstar

1    confirmed that it had "started negotiations with as many as 100 potential licensees," (Madigan

2    Decl. Ex. 7) and has since sent letters to many more.  (*Id.* Ex. 17.)  Many of these letters are surely

3    to companies in California—a topic Rockstar's motion carefully does not address.

4            And Rockstar's business works.  Rockstar admits that it ███████████████████████

5    █████████ but, tellingly, does not reveal what income arises from California, and does not

6    explain how much of this income it keeps and how much it returns to its owners, including Apple.

7    (Dean Decl. ¶ 25.)  Instead Rockstar argues that the Court should ignore its entire business, at least

8    for general jurisdiction purposes, because "mere licensing revenue" cannot confer general

9    jurisdiction.  (Mot. at 15 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. —,

10   131 S. Ct. 2846, 2856 (2011) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S.

11   408, 411 (1984)).)  But these cases cannot help Rockstar.  *Goodyear* involved companies that "do

12   not solicit business in North Carolina or themselves sell or ship tires to North Carolina custom-

13   ers," and took no "affirmative action to cause tires which they had manufactured to be shipped

14   into North Carolina."  *Goodyear*, 131 S. Ct. at 2848.  Although "a small percentage" of tires for

15   foreign markets, which "differ in size and construction from tires ordinarily sold in the United

16   States," reached North Carolina, the Court did not adopt a "sprawling view of general jurisdiction"

17   under which any "seller of goods would be amenable to suit, on any claim for relief, wherever its

18   products are distributed."  *Id*. at 2856.  These concerns do not apply here:  Rockstar intentionally

19   solicited California companies for their California revenues—that is Rockstar's *entire business*.

20   Nor can Rockstar find aid in *Helicopteros*, where the party resisting jurisdiction "never solicited

21   business," "never had any employee," "never recruited an employee," and "has no shareholders"

22   in the forum state.  *Helicopteros*, 466 U.S. at 411.  Rockstar does all of the above in California.

23           Finally, Rockstar argues that its contacts with California, no matter how pervasive, cannot

24   give rise to general jurisdiction because they do not render it "essentially at home" in this District,

25   "comparable to a domestic enterprise."  (Mot. at 13, citing *Daimler A.G. v. Bauman, et. al.*, 571

26   U.S. —, 134 S. Ct. 746, 758 n.11 (2013).)  But Rockstar's motion confirms that, under Rockstar's

27   preferred standard, this Court has general jurisdiction over Rockstar because Rockstar's contacts

28   with California make it equally "at home" here as in its claimed domicile of Texas.  Although

Rockstar's motion baldly asserts that it "resides in Texas" (Mot. at 3) and is a "Texas enterprise" (*id.* at 7), the declaration accompanying its motion confirms that Rockstar's Texas presence is for litigation purposes only.  Mr. Dean names not a single Texas-based employee, let alone any senior management.  None of Rockstar's owners reside in Texas, and its general partner is a mail drop at a Midtown Manhattan law firm.  (*See supra* at 12.)  Mr. Dean's declaration describes no business whatsoever at Rockstar's Texas office except holding meetings with prospective licensees—but also confirms that Rockstar executives often hold these same meetings in other states, including in California.  (Dean Decl. ¶¶ 18-21.)  Even Rockstar's letters come from its Ottawa office, or from San Jose, California.  (Madigan Decl. Ex. 17.)  If it is "essentially at home" in Texas as it contends, Rockstar must also be "essentially at home" in California, where it does all the same things it does in Texas—except more so, because the technology industry, Rockstar's area of focus, is concentrated here.  (*See infra* at 15.)

Rockstar's sole business is patent licensing; it directs its licensing efforts into California; and it receives California revenue from those efforts.  These facts are sufficient to provide this Court with general jurisdiction.  *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, No. 12-5847, 2013 WL713929 (E.D.N.Y. Feb. 28, 2013).  In *JetBlue* as here, the patentee was a non-practicing entity that had no "permanent physical presence" in the forum state, but derived income by notifying "those it accuses of patent infringement of the alternatives of entering a licensing agreement or facing litigation."  *Id.* at *2.  After the patentee sent a letter, JetBlue filed a declaratory action and the patentee moved to dismiss.  *Id.* at *3.  The court found general jurisdiction:

> The Federal Circuit has distinguished, in the context of specific personal jurisdiction, between "[a]n offer to license" and "an arms-length negotiation in anticipation of a long-term continuing business relationship."  *Red Wing Shoe Co.*, 148 F.3d at 1361 (citing *Burger King*, 471 U.S. at 479, 105 S. Ct. 2174).  But where, in the context of general jurisdiction, a patentee not only offers to license but also negotiates, enters into agreements, and derives substantial economic benefit from companies in a forum state, it has begun a "long-term business relationship."  These efforts "in the aggregate justify the exercise of general jurisdiction."  *Avocent*, 552 F.3d at 1335-36 & n. 5.

*JetBlue*, 2013 WL713929, at *7.  Rockstar is in precisely the same position as the patentee in *JetBlue*.  The Court should find personal jurisdiction for this reason or, in the alternative, allow discovery into the full scope of Rockstar's interactions with California.  *See id.* at *8.

In addition to general jurisdiction, Rockstar's licensing business provides this Court with specific jurisdiction.  The Federal Circuit has repeatedly held that licensing letters are purposefully directed at the forum, and that a declaratory judgment action "arises out of" these letters.  *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003) (*citing Red Wing Shoe*, 148 F.3d at 1362).  That leaves only one question:  "whether assertion of personal jurisdiction is 'reasonable and fair.'"  *Inamed Corp.*, 249 F.3d at 1360-61, *supra* at 6.  On this point, Rockstar bears a heavy burden:  "When a defendant seeks to rely on the 'fair play and substantial justice' factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *Id.* (quoting *Burger King*, 471 U.S. at 475-76).  Rockstar thus bears the burden of demonstrating that jurisdiction is unreasonable here.  The Federal Circuit has found this "compelling case" where a patentee shows it has engaged in no "'other activities' in addition to cease and desist letters."  *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1334 (Fed. Cir. 2008).  But Rockstar has engaged in several "other activities," each precluding any finding of a "compelling case" against personal jurisdiction.

First, Rockstar has focused on the technology industry, which is concentrated heavily in this District and this State.  Rockstar has consistently warned the technology industry that "[p]retty much anybody out there is infringing."  (Madigan Decl. Ex. 7.)  John Veschi, Rockstar's CEO, has said that "[i]t would be hard for me to envision that there are high-tech companies out there that don't use some of the patents in our portfolio."  (*Id.*)  Mr. Veschi has even publically called out specific companies in California as likely infringers:  "I'm definitely aware of many [Rockstar patents] that 'read on' features that are in any social network, whether it's Facebook [or] LinkedIn or any other thing like that."  (*Id.* Ex. 16.)  Of course Facebook is located in Menlo Park (*Id.* Ex. 34), and LinkedIn in Mountain View.  (*Id.* Ex. 35.)  Rockstar's focus on technology means that many of these contacts are directed toward California, whether or not they start here.  *Quill Corp. v. North Dakota*, 504 U.S. 298, 308 (1992) ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.").  Given this focus on a

1    California-centric industry, "fair play and substantial justice" require Rockstar to be amenable to

2    jurisdiction in California as well.

3           Second, Rockstar's significant and pervasive relationship with Apple, including many

4    "continuing obligations" flowing from Rockstar to Apple and Apple to Rockstar, provide more

5    than sufficient "other activities" to support jurisdiction.  (*See supra* § I.C, at 9-12.)

6           Third, Rockstar's use of a California licensing executive, Mark Wilson, also provides

7    sufficient "other activities."  Until Google filed this action, Mr. Wilson publicly listed himself as

8    "Licensing Consultant for Rockstar" (Madigan Decl. Ex. 36), and has sent letters for Rockstar

9    using an "ip-rockstar.com" email address, signing as "Licensing Executive, Rockstar Consortium"

10   and using a San Jose telephone number.  (*Id.* Ex. 17.)  Mr. Wilson also attended meetings as

11   Rockstar's representative.  (*Id.*)  Rockstar's motion and declaration seek to minimize Mr. Wilson's

12   role, calling him a "part-time independent contractor who lives in California" ████████

13   ████   (Dean Decl. ¶ 34.)  Only months earlier, Rockstar sang a different tune:  an article in

14   the July/August 2013 issue of *Intellectual Asset Management*, evidently produced with Rockstar's

15   cooperation, calls Mr. Wilson one of three licensing executives, and part of senior management:



Figure 1. **Senior Rockstar management**

22   (Madigan Decl. Ex. 12.)  Rockstar evidently approved of this depiction, as it featured this article

23   prominently on its web site.  (*Id.* Ex. 13.)  After this lawsuit was initiated, Mr. Wilson removed

24   "Rockstar Consortium" from his professional profile.  (*Id.* Ex. 37.)  The Federal Circuit has upheld

25   personal jurisdiction over patentees which "retained agents in the forum state to assist in the

26   enforcement of its patent rights."  *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 791 (Fed.

27   Cir. 2011).  Whether he was an employee or an independent contractor, and whether he had

28   ████████████████████████████   Mr. Wilson resided in California and

1   acted as Rockstar's agent "to assist in the enforcement of its patent rights."  *Id.*  Those facts alone

2   provide the required "other activities" in California.  In addition, ███████████████████

3   ████████████████████████████████████████████████ and tellingly does not say it

4   has held no other meetings in California.[9]  Rockstar has admitted that it or Nortel notified the

5   Halloween defendants of its infringement assertions; one of the LG defendants, and one of the

6   ASUS defendants, each hail from California.  (Mot. Ex. A ¶ 4; Ex. D ¶ 5.)  These, too, are "other

7   activities" sufficient to support personal jurisdiction.

8       Finally, Rockstar's Halloween actions, and the enforcement campaign underlying them,

9   are directed exclusively and entirely against "mobile communication devices having a version (or

10  an adaption thereof) of [the] Android operating system" developed by Google—and therefore at

11  Google itself.  (*See supra* at 5.)  Even for the purely hardware patent it asserts, Rockstar has

12  consistently limited its claims to devices running Android software.  (*See supra* at 4 n.5.)  The

13  conclusion is inescapable and unsurprising, given Rockstar's owners:  Rockstar's true intent is to

14  interfere with Google's Android platform by disrupting its customer relationships.  This too

15  provides grounds for personal jurisdiction.  *Campbell v. Miale*, 542 F.3d 879, 887 (Fed. Cir. 2008)

16  (finding jurisdiction where the patentee "took steps to interfere with the plaintiff's business").

17      For all these reasons, Rockstar "'deliberately' has engaged in significant activities" within

18  California and "manifestly has availed [itself] of the privilege of conducting business" here,

19  making it reasonable for Rockstar to submit to the burdens of litigation in California.  *Nuance*, 626

20  F.3d at 1230 (citing *Burger King Corp.*, 471 U.S. at 475-76).  Should the Court disagree, however,

21  it should at minimum order jurisdictional discovery into these issues.  Rockstar's brief and

22  declaration provide a carefully curated presentation, omitting critical facts.  For example, Mr.

23  Dean avers that "███████████████████████████████████████████████

24  ██████████████████████████████████████████████████

25  ████████████████████" (Dean Decl. ¶ 21.)  But Rockstar does not explain what it means

26

27      [9]  (Dean Decl. ¶ 18).  Rockstar's motion also mentioned another meeting subject to a non-
    disclosure agreement.  (Mot. at 6-8, 10, 19.)  Google does not contend that this meeting alters the
28  Court's jurisdictional analysis.

1   by "outside of California," or whether those entities also have presences in California—as does,

2   for example, Samsung—that might affect this Court's personal jurisdiction.  (*Id.*)  Similarly,

3   Rockstar spills much ink stating what it has not done (*e.g., id.* ¶¶ 6-8, 22-23, 29, 33) but does not

4   fully describe what it *does* do in California, let alone Texas or Canada.  (*Id.*)  If the Court cannot

5   now decide personal jurisdiction, jurisdictional discovery will resolve these open issues.

6           **E.      Venue is Proper in This District**

7           Oddly, Rockstar also moved to dismiss this action for improper venue.  (Mot. at 16.)

8   These arguments, however, collapse into Rockstar's failed arguments regarding jurisdiction.

9   "Venue in a patent action against a corporate defendant exists wherever there is personal

10  jurisdiction."  *Trintec Indus.*, 395 F.3d at 1280 (citing *VE Holding Corp. v. Johnson Gas*

11  *Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990)).  For the same reasons that this Court has

12  personal jurisdiction over Rockstar and MobileStar, venue is also proper.

13  **II.     This Court is the Correct Forum for this Action**

14          **A.      Google's Suit Serves the Purposes of the Declaratory Judgment Act**

15          Rockstar argues in the alternative that the Court should decline to exercise its jurisdiction

16  over this action.  (Mot. at 17.)  In order to determine whether the exercise of jurisdiction under the

17  Declaratory Judgment Act is proper, the Court "must determine whether hearing the case would

18  serve the objectives for which the Declaratory Judgment Act was created."  *Capo, Inc. v. Dioptics*

19  *Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004) (citing *EMC Corp. v. Norand Corp.*, 89

20  F.3d 807, 814 (Fed. Cir. 1996).)  Where, as here, these objectives are served, "dismissal is rarely

21  proper."  (*Id.*)  Rockstar admits that the purpose of the Act is to rescue parties from "in terrorem

22  choice between the incurrence of a growing potential liability for patent infringement and

23  abandonment of their enterprises; they could clear the air by suing for a judgment that would settle

24  the conflict of interests."  (Mot. at 17-18 (quoting *Elecs. For Imaging, Inc.*, 394 F.3d at 1346

25  (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988)).)

26  Precisely that happened here.  When Rockstar filed the Halloween actions, for reasons of its own,

27  it declined to sue Google.  But the Halloween actions explicitly target the Android platform

28  developed by Google, thus "infecting the competitive environment of the business community

-18-                         CASE NO. 13-cv-5933-CW

with uncertainty and insecurity." *Elecs. for Imaging*, 394 F.3d at 1346.  In short, the Halloween

actions were precisely the type of allegations addressed by the Declaratory Judgment Act.  *See*

*Avocent*, 552 F.3d at 1332 ("Thus, the nature of the claim in a declaratory judgment action is 'to

clear the air of infringement charges.'") (quoting *Red Wing Shoe*, 148 F.3d at 1360).  The Federal

Circuit saw strikingly similar facts in *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897

(Fed. Cir. 2008).  There, patentee Mosaid did not sue Micron, but did sue "other leading DRAM

manufacturers" and made "public statements" regarding "its intent to continue an aggressive

litigation strategy."  *Id.* at 901.  Micron filed a declaratory action, and the next day Mosaid sued

Micron for infringement.  *Id.*  After this Court declined to exercise declaratory judgment

jurisdiction, the Federal Circuit reversed:

> The record evidence at the time of the filing in the California district court strongly
> suggested that MOSAID would sue Micron soon.  Indeed, that suit, filed only one
> day later, was actually pending in Texas at the time that the California district court
> made its ruling.  Thus, the parties in this dispute are really just contesting the
> location and right to choose the forum for their inevitable suit.  The Declaratory
> Judgment Act exists precisely for situations such as this.

*Id.* at 901-02.  This situation is exactly the same, except Rockstar took six days, not one, to file its

retaliatory case, and sued Google on only three of the seven patents in this action.  Google should

be allowed to clear the air about all of Rockstar's allegations against Android in this single action.

**B.      Google, Not Rockstar, Was First to File**

Although Rockstar sued Google on New Year's Eve, eight days *after* Google filed this

action, Rockstar spills substantial ink seeking dismissal because it was actually first to file.  (Mot.

at 5, 19-24.)  This is simply wrong.  Under the "first-to-file rule," district courts may decline

jurisdiction "when a complaint involving the same parties and issues has already been filed in

another district."[10]  That is not true here, because Rockstar did not sue Google, choosing instead to

---

[10]   *Genentech, Inc. v. GlaxoSmithKline LLC*, No. 10-4255, 2010 WL 4923954, at *1 (N.D.
Cal. Dec. 1, 2010) (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir.
1982).)  Although the first-to-file rule is often called a "rule," it is really more of a guideline,
subject to this Court's discretion.  *See, e.g., Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937-
38 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277
(1995) (exceptions to the first-to-file rule "are not rare, and are made when justice or expediency
        (footnote continued)

---

1   sue Google's customers, the Android manufacturers named in the Halloween actions.

2   Acknowledging this, Rockstar argues that its Halloween actions can still count as first-filed

3   because they have "substantially the same" parties as here.  (Mot. at 20-21 (citing *Futurewei*

4   *Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 706 (Fed. Cir. 2013).)  Rockstar stretches

5   "substantially" past the breaking point.  In *Futurewei*, the "substantially similar" parties were the

6   plaintiff entities:  a patent owner, its exclusive licensee, and the licensee's wholly owned

7   subsidiary and assignee.  *Futurewei Techs.*, 737 F.3d at 705-06.  Google and the Halloween

8   defendants share none of these attributes, and are not substantially the same parties.  Rockstar

9   accuses them all of infringement, but if that accusation alone makes them "substantially similar,"

10  then "substantially similar" has no meaning.[11]  And even Rockstar's *own accusations* are

11  different:  Rockstar asserts seven patents against the Android makers, but only three against

12  Google.  (*See supra* at 5.)

13        Rockstar relies heavily on *Proofpoint, Inc. v. InNova Patent Licensing, LLC*, No. 11-2288,

14  2011 WL 4915847 (N.D. Cal. Oct. 17, 2011), which Rockstar claims applied the first-filed rule

15  across actions with different parties.  (Mot. at 21.)  Not so:  *Proofpoint* found that "the first-filed

16  _____

17  requires, as in any issue of choice of forum"); *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed.
18  Cir. 2012) (finding that the rule should not be "rigidly or mechanically applied" and noting that
    "an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to
19  the lower courts").  The Federal Circuit has cautioned district courts to look beyond categorical
    rules in evaluating cases where the patentee and alleged infringer bring similarly timed suits:
20        [T]he district court judge faced with reaching a jurisdictional decision about a declaratory
          judgment action with an impending infringement action either filed or on the near horizon
21        should not reach a decision based on any categorical rules.  The first-filed suit rule, for
          instance, will not always yield the most convenient and suitable forum.  Therefore, the trial
22        court weighing jurisdiction additionally must consider the real underlying dispute:  the
          convenience and suitability of competing forums.  In sum, the trial court must weigh the
23        factors used in a transfer analysis as for any other transfer motion.
    *Micron Tech., Inc.*, 518 F.3d at 904.  Thus, although Google was first to file and deserves priority
24  for that reason, even if the Court finds that the rule favors Rockstar, the Court should still deny
    Rockstar's motion to dismiss or transfer because the convenience factors under § 1404(a).
25        [11]  Rockstar's remaining cases on this issue similarly fail to provide similar examples of
    "substantially similar."  *Pacesetter Sys., Inc.*, 678 F.2d at 94 (parties agreed that two actions
26  involved identical parties and issues); *Microchip Tech., Inc. v. United Module Corp.*, No. 10-4241
    2011 WL 2669627 (N.D. Cal. July 7, 2011) ("similar" parties were the wholly owned subsidiary
27  of an existing party and the patent owner); *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*,
    544 F. Supp. 2d 949, 958 (N.D. Cal. 2008) (all parties in the later-filed action had already
28  appeared in the first-filed action).

1   rule is not clearly applicable here because Proofpoint is not a party" to the earlier action, but

2   declined jurisdiction based on the "the considerable energy already invested" by the Texas court,

3   which had supervised its case for eleven months, and into claim construction. *Id.* at *7.  That

4   rationale does not apply here, where no party to any of the Halloween actions has answered the

5   complaints, and the Texas court has yet to set a scheduling conference.

6         Finally, even if Rockstar's action was first filed (which it was not), the first-to-file rule

7   would not apply.  As Rockstar acknowledges, the defendants to the Halloween actions are

8   customers and partners of Google who use the Android platform in their devices.  "[A]n exception

9   to the first-filed rule has developed in patent litigation where the earlier action is an infringement

10  suit against a mere customer and the later suit is a declaratory judgment action brought by the

11  manufacturer of the accused devices." *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 738 (1st

12  Cir. 1977); *see also, e.g.*, *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).  "At the

13  root of the preference for a manufacturer's declaratory judgment action is the recognition that, in

14  reality, the manufacturer is the true defendant in the customer suit." *Codex*, 553 F.2d at 738.

15  Rockstar's own complaints confirm this, restricting its allegations to "mobile communication

16  devices having a version (or an adaption thereof) of [the] Android operating system" developed by

17  Google.  (*See supra* at 4.)  Google is the true target of Rockstar's allegations.

18        **C.      Rockstar, Not Google, is Forum Shopping**

19        Rockstar next asserts that, because Google brought claims in the court nearest its

20  headquarters—this Court—it is somehow engaging in nefarious forum shopping.  (Mot. at 18-19.)

21  This argument is disingenuous at best, because Rockstar's presence in Texas is purely for

22  litigation, and has nothing to do with its actual business.  (*See supra* at 3-4.)  The evidence and

23  witnesses regarding Google's alleged infringement are overwhelmingly in California.  (*See infra*

24  at 23.)  The only party to this action that is forum-shopping is Rockstar.[12]  Rockstar argues that

25

26        [12]  Rockstar cites to only a single case, *Catalyst Assets LLC v. Life Techs. Corp.*, No. 11-3537, 2012 WL 2289728 (N.D. Cal. June 18, 2012).  There, the question before the Court was whether to grant a motion for voluntary dismissal of a patent infringement suit that the Court had already stayed and administratively closed pending reexamination proceedings.  *Id.* at *1.  The Court
27        (footnote continued)

28

1   Google should have intervened in its Halloween actions, but if Rockstar had wished to include

2   Google in those actions, it *could have included Google*.  Having declined to do so, Rockstar

3   cannot complain that Google has brought its claims in a much more convenient forum.

4          **D.**       **Proceeding With This Action Will Prevent Duplicative Litigation**

5          Rockstar briefly argues that this Court should decline to hear this action because Rockstar

6   later sued Google, and also because Rockstar previously sued the Android manufacturers.  This

7   argument fails for several reasons.  Rockstar was not first to file against Google, and the customer-

8   suit exception overrides the first-to-file analysis.  (*See supra* at 19-21.)  In addition, the Federal

9   Circuit has confirmed that courts confronting competing actions must not simply defer to the one

10  with the earlier date, but must "consider the real underlying dispute:  the convenience and

11  suitability of competing forums.  In sum, the trial court must weigh the factors used in a transfer

12  analysis as for any other transfer motion."  *Micron Tech., Inc.*, 518 F.3d at 904.  This Court, not

13  the Eastern District of Texas, easily prevails under those factors.  Seeking to avoid this result,

14  Rockstar makes an unsupported leap:  proceeding from the idea that only one court should hear all

15  the actions relating to these patents, Rockstar simply assumes it should be Texas, its preferred

16  forum, rather than this Court.  But *Micron* does not allow the Court to make such an assumption,

17  and this Court, not Texas, would prevail under *Micron*.[13]

18         **E.**       **This District is the Appropriate Venue for This Action**

19         The Court should also deny Rockstar's motion to transfer this action under 28 U.S.C.

20  

21  dismissed the entire action, including the declaratory judgment counterclaims, and noted in dicta
    that courts should discourage forum shopping—after concluding that no forum shopping had

22  occurred in that case.  *Id.* at *2-3.  *Catalyst Assets* thus has no bearing here, except as an
    exhortation to behave well.  Rockstar does not address *Akro*, 45 F.3d at 1549, which confirmed, in

23  ruling on a declaratory judgment action, "[t]hat it is to plaintiff's advantage to adjudicate the
    dispute in the district court that it has chosen does not militate against its right to have access to

24  that court."  *Id.  Akro* further noted that the plaintiff's home forum "has a manifest interest in
    providing its residents with a convenient forum for redressing injuries inflicted by out-of-state

25  actors," including "restraint of its production of goods" by a patent infringement suit.  *Id.*

    [13]  Rockstar cites cases that do it no service, or actually support Google.  *Teva Pharms. USA,*

26  *Inc. v. Eisai Co.*, 620 F.3d 1341, 1349 (Fed. Cir. 2010), held that the district court abused its
    discretion where it declined to exercise declaratory judgment jurisdiction.  In *Kyocera Commc'ns,*

27  *Inc. v. ESS Techs. Int'l, Inc.*, No. 12-01195 2012 WL 2501119, at *3 (N.D. Cal. June 27, 2012),
    unlike this case, the declaratory judgment plaintiff had already sought "the same declaratory

28  judgments of non-infringement and invalidity" in an earlier-filed case.

§ 1404(a).  (Mot. at 22-24.)  Rockstar addresses the four convenience factors discussed by *Micron*, but ignores several other factors.  *Reflex Packaging, Inc. v. Audio Video Color Corp.*, Case No. 13-03307, 2013 WL 5568345, at *2 (N.D. Cal. Oct. 9, 2013).  The factors addressed by Rockstar, as well as the remaining convenience factors, support keeping this action before this Court.

### 1.   Convenience and Availability of Witnesses Favors This District

Convenience of witnesses is "probably the single most important factor" in the relevant analysis.  *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).  The majority of witnesses are located in the Northern District.  (Declaration of Abeer Dubey ("Dubey Decl.") ¶¶ 3-8.)  Most employees involved in the design and development of the accused Android features are located at Google's headquarters in Mountain View, California.  (*Id.* ¶ 6.)  If the case were transferred to the Eastern District, these witnesses "would be forced to travel more than 1,500 miles to attend trial." *Ingeniador, LLC v. Adobe Sys. Inc.*, No. 12-00805, 2014 WL 105106, at *3 (E.D. Tex. Jan. 10, 2014) (granting transfer to this Court where "most witnesses will likely come from California"). Rockstar tepidly argues that "majority of the inventors of the patents-in-suit are listed on the patents as being from Canada," but does not say where those witnesses are *now*, years later.  (Mot. at 22.)  In any event, from much of Canada air travel is more convenient to the Bay Area than it is to Marshall, Texas.  Rockstar further argues that it is located in Texas, but cannot assert that any relevant witnesses reside there, making this location irrelevant.  (Mot. at 22.)  Rockstar's primary operations and headquarters are in Canada; its only employees in the Eastern District appear to be legal staff.  A venue is not convenient for transfer where it "is convenient only for [plaintiff]'s litigation counsel."  *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010).

### 2.   This Court Has Jurisdiction Over All Parties to the Halloween Actions

Without citation to a single authority, Rockstar argues that this Court does not have jurisdiction over Google's "customers who are defendants in the Texas Actions," which Rockstar asserts are "indispensable parties to this litigation."  (Mot. at 23.)  Rockstar does not support the second proposition, and those parties are not necessary to resolution of claims between Rockstar and Google—but, in any event, Rockstar itself contends that this Court has jurisdiction.  In its Halloween complaints, Rockstar asserts jurisdiction over all defendants based on their placing

"one or more [allegedly] infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Eastern District of Texas." (*See* Mot. Ex. A ¶ 7; Ex. B ¶ 7; Ex. C ¶ 12; Ex. D ¶ 8; Ex. E ¶ 7; Ex. F ¶ 8; Ex. G ¶ 8; Ex. H ¶¶ 16-17.)  Those products are equally available in California, and if selling products nationwide is enough for jurisdiction in Texas, it is enough for jurisdiction here.

### 3.      The Halloween Actions Should Be Stayed or Consolidated Here

Rockstar argues that this action should be "consolidated" with its Halloween actions—but, again, provides no support beyond its own *ipse dixit*.  (Mot. at 23.)  But the Court must consider where this action should best occur, *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008), and that is here, not in Texas.  The correct resolution of all issues would be to stay or transfer the Halloween actions into this one.  *E.g., Elecs. For Imaging, Inc.*, 340 F.3d at 1352 (finding that a pending patent infringement case in Nevada "can be consolidated with the current action," a declaratory judgment action in the Northern District of California.)  This factor therefore favors this district, which has already set a case management conference, and where the parties will commence discussions under Fed. R. Civ. P. 26(f) in the coming weeks.

### 4.      The Interests of Justice Strongly Favor This District

This Court has a much greater interest in this case than the Eastern District of Texas. Rockstar's litigation campaign has placed a cloud on Google's Android platform, and threatened Google's business and relationships with its customers and partners, as well as its sales of Nexus-branded Android devices.  The Android platform is overwhelmingly designed, developed, and maintained by Google in this District.  (Dubey Decl. ¶¶ 3-9.)  "The Northern District of California has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley." *Affinity Labs of Texas v. Samsung Elecs. Co., Ltd.*, No. 12-CV-557, 2013 WL 5508122, at *3 (E.D. Tex. Sept. 18, 2013).  The claims in this action "call[] into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." *In re Hoffman-La Roche*, 587 F. 3d 1333, 1336 (Fed. Cir. 2009).  In contrast, Rockstar's contacts with the Eastern District of Texas could hardly be more minimal. (*See supra* at 3-4.)  Rockstar's mere designation of Texas as its principal place of business does

1    not establish an interest in Texas.  *Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010).

2        Rockstar proceeds from the "fallacious assumption" that courts "must honor connections to

3    a preferred forum made in anticipation of litigation."  *In re Microsoft*, 630 F.3d 1361, 1364-65

4    (Fed. Cir. 2011) (dismissing litigation-driven incorporation "under the laws of Texas sixteen days

5    before filing suit"); *In re Zimmer Holdings, Inc.*, 609 F.3d at 1381 (rejecting connections to Texas

6    as "recent, ephemeral, and an artifact of litigation"); *In re Hoffman-La Roche*, 587 F.3d at 1337

7    (transfer of documents to Texas should not affect venue as their location was a "fiction which

8    appears to have been created to manipulate the propriety of venue").  Rockstar's litigation-driven

9    location aside, the citizens of the Eastern District have no more or less of a meaningful connection

10   to this case than any other venue, as the allegedly infringing devices are sold throughout the

11   United States.  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008).

12                **5.    The Remaining Factors All Favor This District**

13       Rockstar does not address the remaining transfer factors, including plaintiff's choice of

14   forum, convenience of the parties, ease of access to the evidence, familiarity of each forum with

15   the applicable law, local interest in the controversy, and the relative court congestion and time to

16   trial in each forum.  These factors favor this Court.  Google, plaintiff here, chose its home forum;

17   this District is far more convenient for both Google (based here) and Rockstar (based in Canada).

18   The vast majority of evidence is in this District.  Both Courts are equally familiar with patent law.

19   Local interest in the controversy is paramount here, and minimal in the Eastern District.

20   Congestion is neutral and, although both cases are at early stages, this action is more advanced.

21                               **CONCLUSION**

22       For all of the foregoing reasons, this Court should deny Rockstar's motion to dismiss or

23   transfer.  To the extent the Court is unable to decide either motion, it should allow jurisdictional

24   discovery, so that it can decide these questions on a full and complete record.

25   DATED:  February 6, 2014              Respectfully submitted,

26                                     QUINN EMANUEL URQUHART & SULLIVAN, LLP

27                                     By  /s Matthew S. Warren
                                         Matthew S. Warren
28                                       *Attorneys for Google Inc.*