1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Charles K. Verhoeven (Cal. Bar No. 170151)
2     Sean Pak (Cal. Bar No. 219032)
      Matthew S. Warren (Cal. Bar No. 230565)
3     quinn-google-n.d.cal.-13-05933@quinnemanuel.com
    50 California Street, 22nd Floor
4   San Francisco, California 94111
    (415) 875-6600
5   (415) 875-6700 (facsimile)

6   Attorneys for Plaintiff GOOGLE INC.

7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11

12  GOOGLE INC.,                          CASE NO. 13-cv-5933-CW

13            Plaintiff,                   **OPPOSITION OF GOOGLE INC. TO
                                           ROCKSTAR'S RENEWED MOTION TO
14       v.                                TRANSFER OR STAY THIS ACTION**

15  ROCKSTAR CONSORTIUM US LP and
    MOBILESTAR TECHNOLOGIES LLC,           Date:        Thursday, June 26, 2014
16                                         Time:        2:00 P.M.
            Defendants.                    Courtroom:   Courtroom 2, Fourth Floor
17                                         Judge:       Hon. C.J. Claudia Wilken

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 1

    A.    Rockstar Moves to Dismiss This Action or, in the Alternative, to Transfer ............. 1

    B.    This Court Denies Rockstar's Motion to Dismiss and Its Motion to Transfer ......... 1

    C.    Rockstar Distorts This Court's Order to the Eastern District of Texas .................... 2

    D.    Rockstar Files Its Renewed Motion to Transfer This Action, or Stay It .................. 3

ARGUMENT ................................................................................................................. 4

I.    Rockstar's Renewed Motion to Transfer Violates Local Rule 7-9 ....................................... 5

II.    As This Court Found in Denying Rockstar's Prior Motion to Transfer, Rockstar's Headquarters is in Canada, Not Texas; Rockstar Has No Meaningful Connection to Texas, and Brought the Halloween Actions There Solely for Strategic Purposes ................ 7

    A.    MobileStar Technologies LLC is a Sham Entity Which the Court Must Ignore ...... 7

    B.    Rockstar's Principal Place of Business is in Ottawa, Canada ................................... 9

    C.    Proceeding With This Action Will Prevent Duplicative Litigation ........................ 11

III.    Because Each of the Transfer Factors Favors This District or is Neutral, to the Extent the Court Reconsiders Its Original Order Denying Rockstar's Motion to Transfer This Action, It Should Again Deny Rockstar's Renewed Motion to Transfer ............................................................................................................. 12

    A.    Plaintiff's Choice of Forum Favors This District .................................................. 12

    B.    Convenience of Parties and Witnesses Favors This District .................................. 14

    C.    Availability of Compulsory Process Favors This District ..................................... 15

    D.    Feasibility of Consolidation With Other Claims Favors This District .................... 19

    E.    Ease of Access to the Evidence Favors This District ............................................. 20

    F.    Local Interest in the Controversy Favors This District .......................................... 21

    G.    Relative Court Congestion and Time to Trial Favor This District .......................... 22

    H.    Familiarity of Each Forum with the Applicable Law is Neutral ............................ 23

IV.    The Court Should Deny Rockstar's Cursory Request for a Stay ........................................ 23

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Affinity Labs of Texas v. Samsung Elecs. Co.*,
  2013 WL 5508122 (E.D. Tex.) .................................................................21

*Altmann v. Republic of Austria*,
  317 F.3d 954 (9th Cir. 2002) ..................................................................12

*Brackett v. Hilton Hotels Corp.*,
  619 F. Supp. 2d 810 (N.D. Cal. June 30, 2008) ....................................15

*Brookstone Co.*,
  2009 U.S. Dist. LEXIS 69630 (N.D. Cal. July 30, 2009) ......................24

*Clinton v. Jones*,
  520 U.S. 681 (1997) ...............................................................................23

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986)...........................................................5, 12, 14

*Electronics for Imaging, Inc. v. Coyle*,
  394 F.3d 1341 (Fed. Cir. 2005).........................................................13, 19

*FTC v. Publishing Clearing House, Inc.*,
  104 F.3d 1168 (9th Cir. 1997) ...............................................................14

*Forte Capital Partners v. Harris Cramer*,
  No. 07-1237, 2007 WL 1430052 (N.D. Cal. May 14, 2007) ...................14

*Google Inc. v. ContentGuard Holdings, Inc.*,
  No. 14-498 (N.D. Cal. Apr. 15, 2014),  ................................................24

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ...............................................................................12

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) .................................................................................21

*Hynix Semiconductor, Inc. v. Rambus, Inc.*
  2009 U.S. Dist. LEXIS 10939 (N.D. Cal. Feb. 3, 2009).........................24

*In re Hoffman-LaRoche*,
  587 F.3d 1333 (Fed. Cir. 2009) .............................................................21

*Ingeniador, LLC v. Adobe Sys. Inc.*,
  No. 12-00805, 2014 WL 105106 (E.D. Tex. Jan. 10, 2014)...............14, 15

*Kina v. United Air Lines, Inc.*,
  No. 08-4358, 2008 WL 5071045 (N.D. Cal. Dec. 1, 2008) ......................5

*King v. B.F. Saul Mortg. Co.*,
   No. 10-1749, 2010 U.S. Dist. LEXIS 99022 (S.D. Cal. Sept. 21, 2010) ...................................6

*LML Holdings, Inc. v. Pac. Coast Distrib. Inc.*,
   No. 11-cv-06173, 2012 WL 2994017 (N.D. Cal. July 20, 2012)....................................4

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ............................................................................................2

*Leviton Mfg. Co. v. Interline Brands, Inc.*,
   2006 U.S. Dist. LEXIS 61944 (M.D. Fla. Aug. 30, 2006).........................................24

*Man Against Extinction v. Hall*,
   No. 08-01488, 2008 WL 4534279 (N.D. Cal. Oct. 7, 2008).......................................6

*Mateos v. Select Energy Servs., L.L.C.*,
   919 F. Supp. 2d 817 (W.D. Tex. 2013) .................................................................23

*Micron Technology, Inc. v. Mosaid Technologies, Inc.*,
   518 F.3d 897 (Fed. Cir. 2008) .......................................................................11, 12

*Microsoft Corp. v. Geotag Inc.*,
   847 F. Supp. 2d 675 (D. Del. 2012) .....................................................................15

*Natural Wellness Centers of Am., Inc. v. J.R. Andorin Inc.*,
   No. 11-04642, 2012 WL 216578 (N.D. Cal. Jan. 24, 2012) .......................................13

*Natural Wellness Ctrs. of Am., Inc. v. Golden Health Prods.*,
   2013 U.S. Dist. LEXIS 8658 (N.D. Cal. Jan. 22, 2013) .............................................18

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
   626 F.3d 1222 (Fed. Cir. 2010) ............................................................................2

*Oakley, Inc. v. Jofa AB*, 287 F. Supp. 2d 1111 (C.D. Cal. 2003)...................................6

*Protrade Sports, Inc. v. Nextrade Holdings, Inc.*,
   No. 05-4039, 2006 WL 269951 (N.D. Cal. Feb. 2, 2006) ..........................................6

*In Ricoh Co., Ltd. v. Aeroflex Inc.*,
   279 F. Supp. 2d 554, 556 (D. Del. 2003*)* .............................................................24

*Saleh v. Titan Corp.*,
   361 F. Supp. 2d 1152 (N.D. Cal. 2005) ................................................................4

*Sec. Investor Protection Corp.*,
   764 F.2d at 1317 ..............................................................................................12

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) .........................................................................................2, 4

*In re TS Tech United States Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ...........................................................................4

*Trintec Indus., Inc. v. Pedre Promotional Products, Inc.*,
   395 F.3d 1275 (Fed. Cir. 2005) ...........................................................................6

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ................................................................................12

*Ventress v. Japan Airlines*,
    486 F.3d 1111 (9th Cir. 2007) ..................................................................................4

*Wellens v. Daiichi Sankyo Co., Inc.*,
    No. 13-00581, 2013 WL 3242294 (N.D. Cal. June 25, 2013) ...................4, 5, 14, 15

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*,
    157 F.R.D. 215 (D. Del. 1993) ................................................................................23

### **Statutes and Rules**

28 U.S.C. § 1292(b) ......................................................................................................1

28 U.S.C. § 1391 ....................................................................................................2, 3, 6

28 U.S.C. § 1404 .......................................................................................................3, 4

Del. Code Ann. Tit. 6, § 17-403 ....................................................................................3

Fed. R. Civ. P. 15 .....................................................................................................1, 5

Fed. R. Civ. P. 26(a)(1) ...............................................................................................15

Fed. R. Civ. P. 45(b)(2) ...............................................................................................15

Fed. R. Civ. P. 45(c)(1)(B)(ii) .....................................................................................15

1

## **INTRODUCTION**

2    This motion seeks to relitigate an issue this Court already decided.  In January, Rockstar

3 asked this Court to dismiss this action or "in the alternative transfer Google's claims to the Eastern

4 District of Texas," where Rockstar claimed its principal place of business.  After reviewing the

5 record, however, this Court found that Rockstar's principal place of business is actually in Canada,

6 denied Rockstar's motion to dismiss, and denied Rockstar's motion to transfer.  Although most

7 litigants would have accepted the Court's ruling and moved on, Rockstar instead filed not only a

8 request for certification under 28 U.S.C. § 1292(b), but also this do-over transfer motion, which

9 *again* asks the Court to transfer this action, *again* to the Eastern District of Texas.  Rockstar's

10 redux quickly devolves into farce:  having failed to convince the Court that Texas is its "principal

11 place of business," Rockstar now argues that its Texas office is "the only office for the company."

12 Rockstar supports this incredible allegation—literally, not credible—with a sworn declaration, just

13 four months after it filed a different sworn declaration from another Rockstar executive, who

14 testified to "reside and work from Rockstar's Ottawa, Canada location."  Rockstar's remaining

15 arguments are not as risible, but they fare no better.  Rockstar's renewed transfer motion is exactly

16 that:  a rehash of arguments Rockstar has made before.  The Court should deny it.

17

## **BACKGROUND**

18    **A.    Rockstar Moves to Dismiss This Action or, in the Alternative, to Transfer**

19    On December 23, 2013, Google filed this action.  (Docket No. 1.)  On January 23, 2014,

20 Rockstar moved to dismiss for lack of personal jurisdiction—or, in the alternative, to transfer this

21 action to the Eastern District of Texas.  (Docket No. 19-4.)  With this motion, Rockstar submitted

22 a declaration from Afzal Dean, President of MobileStar Technologies LLC and Vice President of

23 IP Licensing for Rockstar Consortium US LP.  (Docket No. 19-6 ¶¶ 2-3.)  Seeking to support

24 Rockstar's allegation that its "principal place of business" was in Plano, Texas, Mr. Dean averred

25 under penalty of perjury that, "Even though I reside and work from Rockstar's Ottawa, Canada

26 location, I travel frequently to Plano and have an assigned office in the Plano office."  (*Id.* ¶ 28.)

27    **B.    This Court Denies Rockstar's Motion to Dismiss and Its Motion to Transfer**

28    On April 17, this Court entered an order denying Rockstar's motion to dismiss (Docket

No. 58 at 7-23), and separately denying Rockstar's motion to transfer this action to the Eastern District of Texas.  (*Id.* at 23-28.)

### C.    Rockstar Distorts This Court's Order to the Eastern District of Texas

Instead of preparing to litigate this action in this Court, Rockstar launched a campaign to misrepresent this Court's ruling to the Eastern District of Texas.  This campaign sought to encourage the Eastern District to ignore this Court's ruling while deciding the motions to transfer pending before it.  Toward this end, Rockstar systematically distorted this Court's ruling by conflating two separate portions:  this Court's ruling on the motion to dismiss and its ruling on the motion to transfer:

> The NDCA Order was decided in the context of a motion to dismiss or transfer venue under 28 U.S.C. § 1391. The § 1391 legal standard required that the NDCA base its decision on the allegations pled in *Google's complaint* and resolve any "conflicts in the allegations and evidence . . . in [*Google's*] favor." *Google Inc.*, 2014 U.S. Dist. LEXIS 53757, at *26.  As a result, the NDCA Order rests on an incomplete view of the facts and the acceptance of pled allegations that are false. No such legal standard is applicable here, and as such, unlike the NDCA, this Court has the benefit of weighing the evidence and facts before it.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

*Rockstar v. Samsung*, No. 13-900 (E.D. Tex. May 8, 2014), Docket No. 67 at 1 (alterations and emphasis in original) (footnotes omitted); *see also Rockstar v. ASUS*, No. 13-894 (E.D. Tex. May 5, 2014), Docket No. 93 at 1; *Rockstar v. HTC*, No. 13-895 (E.D. Tex. May 5, 2014), Docket No. 38 at 1; *Rockstar v. LG*, No. 13-898 (E.D. Tex. May 5, 2014), Docket No. 42 at 1; *Rockstar v. Pantech*, No. 13-899 (E.D. Tex. Apr. 25, 2014), Docket No. 28 at 15; *id.*, Docket No. 31 at 1-2; *Rockstar v. ZTE*, No. 13-901 (E.D. Tex. May 5, 2014), Docket No. 48, at 1.

For several reasons, this was false.  First, Rockstar's self-serving summary of this Court's order improperly conflated two separate portions, one denying Rockstar's motion to dismiss (Docket No. 58 at 7-23), and another denying Rockstar's motion to transfer.  (*Id.* at 23-28.)  As the Court explained in its Order, under Rule 12(b)(2) and cases applying it, when a "court decides the personal jurisdiction question based on affidavits and other written materials, and without an evidentiary hearing, a plaintiff need only make a prima facie showing that a defendant is subject to personal jurisdiction."  (Docket No. 58 at 5:18-21 (citing *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).)  But Rockstar's summary alleged that this

Court also applied *the same* standard to the *second* portion of its opinion denying Rockstar's motion to transfer. That portion of this Court's ruling, however, does not depend on *any* assumption of correctness of *any* portion of Google's complaint. (Docket No. 58 at 23-28.) To the contrary, the Court's denial of Rockstar's motion to transfer depends on the parties' submitted declarations and documentary evidence—precisely the type of evidence Rockstar and the Halloween defendants have submitted to the Eastern District. (*See, e.g.*, Docket No. 58 at 25:22-26 (citing declaration submitted by Google).) Where this Court relied on the allegations in Google's complaint, it carefully so stated—and *never* did so during the Court's ruling on Rockstar's motion to transfer, because that standard did not apply. (*See, e.g.,* Docket No. 58 at 10:15-17; 17:9-12; 19:17 to 20:1.)

In addition to misrepresenting the standards applied by this Court, Rockstar also distorted its own motion, stating that this Court's order "was decided in the context of a motion to dismiss or transfer venue under 28 U.S.C. § 1391." *Rockstar v. Samsung*, No. 13-900 (E.D. Tex.), Docket No 67 at 1; *see also Rockstar v. ASUS*, No. 13-894 (E.D. Tex. May 5, 2014), Docket No. 93 at 1; *Rockstar v. HTC*, No. 13-895 (E.D. Tex. May 5, 2014), Docket No. 38 at 1; *Rockstar v. LG*, No. 13-898 (E.D. Tex. May 5, 2014), Docket No. 42 at 1; *Rockstar v. Pantech*, No. 13-899 (E.D. Tex. Apr. 25, 2014), Docket No. 28 at 15; *id.*, Docket No. 31 at 1-2; *Rockstar v. ZTE*, No. 13-901 (E.D. Tex. May 5, 2014), Docket No. 48, at 1. Rockstar thus *admitted* that it previously moved this Court to transfer this action, but contended that it did so only "under 28 U.S.C. § 1391," and not under 28 U.S.C. § 1404. (*Id.*) Unfortunately for Rockstar, there is *no such thing* as a motion to transfer venue under 28 U.S.C. § 1391. Section 1391 concerns "venue generally," simply states where an action may be brought, and says *absolutely nothing* about transfer. *Id.* Rockstar has never explained what it means by "a motion to dismiss or transfer venue under 28 U.S.C. § 1391," likely because it cannot do so.

## D. Rockstar Files Its Renewed Motion to Transfer This Action, or Stay It

On May 9, Rockstar filed its renewed motion to transfer this action, this time adding a brief section also requesting a stay. (Docket No. 67; the "Motion.") With this renewed motion, Rockstar submitted declarations including one from Donald Powers, Litigation Counsel for

1   Rockstar Consortium US LP.  Mr. Powers swore under penalty of perjury that "Rockstar's Plano,

2   Texas, office is the only office for the company, although some employees work out of their

3   homes in addition to working from offices in the Plano, Texas, facilities."  (Docket No 67-43

4   ¶ 26.)  Mr. Powers thus directly contradicted his superior, Mr. Dean, who four months before had

5   sworn that "I reside and work from Rockstar's Ottawa, Canada location."  (Docket No. 19-6 ¶ 28.)

6                                        **ARGUMENT**

7           "For the convenience of the parties and witnesses, in the interest of justice, a district court

8   may transfer any civil action to any other district or division where it might have been brought."

9   28 U.S.C. § 1404(a).  "A district court has broad discretion to adjudicate motions for transfer on a

10  case-by-case basis, considering factors of convenience and fairness."  *Wellens v. Daiichi Sankyo*

11  *Co., Inc.*, No. 13-00581, 2013 WL 3242294, at *1 (N.D. Cal. June 25, 2013) (citing *Stewart Org.*

12  *Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  In exercising its discretion under the statute, this

13  Court may consider factors including "(1) the plaintiff's choice of forum; (2) convenience of the

14  parties; (3) convenience of the witnesses; (4) relative ease of access to the evidence; (5) familiarity

15  of each forum with the applicable law; (6) feasibility of consolidation with other claims; (7) any

16  local interest in the controversy; and (8) the relative court congestion and time to trial in each

17  forum."  *Wellens*, 2013 WL 3242294, at *1 (citing *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152,

18  1156 (N.D. Cal. 2005)).[1]  "Weighing of the factors for and against transfer involves subtle

19  considerations and is best left to the discretion of the trial judge."  *Ventress v. Japan Airlines*, 486

20  F.3d 1111, 1118 (9th Cir. 2007).

21          "As a general rule, the plaintiff's choice of forum is given significant weight and will not

22  be disturbed unless other factors weigh substantially in favor of transfer."  *Wellens*, 2013 WL

23  3242294 at *2 (citing 28 U.S.C. § 1404(a)).  Thus the party seeking transfer "bears the burden of

24  justifying the transfer by a strong showing of inconvenience."  *Wellens*, 2013 WL 3242294 at *2

25  _____

26          [1]  "[B]ecause a motion to transfer does not involve substantive issues of patent law, this court
    applies the law of the regional circuit in which the district court sits."  *LML Holdings, Inc. v. Pac.*
27  *Coast Distrib. Inc.*, No. 11-cv-06173, 2012 WL 2994017, at *2 n.3 (N.D. Cal. July 20, 2012)
    (citing *In re TS Tech United States Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008)).

28

1   (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)); *see*

2   *also Kina v. United Air Lines, Inc.*, No. 08-4358, 2008 WL 5071045, at *5 (N.D. Cal. Dec. 1,

3   2008) ("The burden is on the party seeking transfer to show that when these factors are applied,

4   the balance of convenience clearly favors transfer.").  This Court may deny the motion "if the

5   increased convenience to one party is offset by the added inconvenience to the other party."

6   *Wellens*, 2013 WL 3242294 at *2 (citing *Decker Coal*, 805 F.2d at 843).  Indeed, "[w]here the

7   defendant attempts to shift the inconvenience—and disproportionately so—onto plaintiff, transfer

8   must be denied."  *Wellens*, 2013 WL 3242294, at *3 (citing *Decker Coal*, 805 F.2d at 843).

9   **I.      Rockstar's Renewed Motion to Transfer Violates Local Rule 7-9**

10             Rockstar's Motion improperly seeks reconsideration and violates Local Rule 7-9; the Court

11   can deny it for this reason alone.  Rule 7-9 allows Rockstar to seek "leave to file a motion for

12   reconsideration of any interlocutory order," but bars it from filing a "motion for reconsideration

13   without first obtaining leave of Court to file the motion."  Loc. R. 7-9(a).  Rockstar's Motion

14   stands in clear violation of this Rule:  this Court specifically and separately denied Rockstar's

15   motion to dismiss (Docket No. 58 at 7-23) and Rockstar's prior motion to transfer this action.  (*Id.*

16   at 23-28.)  Google informed Rockstar several times that this "Court has already resolved this

17   issue," and that any renewed motion to transfer "would violate, among other things, Local Rule 7-

18   9(a)."  (Docket No. 65 at 5:12-13 (citing Docket No. 58 at 23-28).)  Despite these warnings,

19   Rockstar forged ahead with its renewed motion to transfer and, in that motion, barely addressed

20   Local Rule 7-9, dismissing it in a footnote.  (Motion at 1 n.1.)  In that footnote, Rockstar states

21   that "Defendants have not previously moved to transfer under § 1404(a) or based on *forum non-*

22   *conveniens*, nor have Defendants asked for a stay.  As such, Defendants do not believe, and do not

23   intend for this to be, a motion for reconsideration pursuant to L.R. 7-9."  (*Id.*)  Rockstar's

24   argument is self-executing:  because Rockstar itself does not "believe" its motion violates Local

25   Rule 7-9 and does not "intend" to violate the rule, Rockstar argues, its motion cannot violate the

26   Rule.  But if Rockstar's own opinion of its prior motion were sufficient to avoid Rule 7-9, then the

27   rule would have no meaning.  The Court, not Rockstar, must determine whether Rockstar's

28   renewed motion to transfer improperly overlaps with its prior motion, and thus violates Local Rule

7-9.  *See Man Against Extinction v. Hall,* No. 08-01488, 2008 WL 4534279, at *1 (N.D. Cal. Oct.

7, 2008) (construing "an ill-disguised opposition to defendants' original motion to dismiss, which

is untimely" as a motion for reconsideration filed in violation of Local Rule 7-9); *King v. B.F.*

*Saul Mortg. Co.*, No. 10-1749, 2010 U.S. Dist. LEXIS 99022, at *2 (S.D. Cal. Sept. 21, 2010)

(where the Court had granted a motion to dismiss, construing a motion for extension of time to

oppose dismissal as an improper motion for reconsideration).

         Rockstar's renewed motion to transfer says nothing about what Rockstar actually meant, in

its prior motion, when it moved this Court to "transfer Google's claims to the Eastern District of

Texas."  (Docket No. 19-4 at 24:7-9; *see also supra* § A.)  Rockstar offers slightly more

explanation in the parties' Joint Case Management Statement, stating that its prior "motion only

raised venue under 28 U.S.C. § 1391."  (Docket No. 65 at 2 n.1 (citing Docket No. 20 at 3, 16);

*see also* Docket No. 65 at 4:1-3.)  Unfortunately for Rockstar, this explanation makes no sense.

As this Court found in denying Rockstar's prior motion, "Venue in a patent action against a

corporate defendant exists wherever there is personal jurisdiction."  (Docket No. 58 at 20 n.9

(quoting *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.,* 395 F.3d 1275, 1280 (Fed. Cir.

2005).)  Thus, if venue failed under 28 U.S.C. § 1391 (which the Court found it did not), then

jurisdiction would necessarily also fail, reducing the available remedies to dismissal.  *See, e.g.,*

*Protrade Sports, Inc. v. Nextrade Holdings, Inc.*, No. 05-4039, 2006 WL 269951, at *4 (N.D. Cal.

Feb. 2, 2006) ("Accordingly, the Court cannot exercise personal jurisdiction over defendant and

must dismiss this action."); *Oakley, Inc. v. Jofa AB,* 287 F. Supp. 2d 1111, 1113 (C.D. Cal. 2003),

("Pursuant to Federal Rule of Civil Procedure 12(b)(2), a court must dismiss a case for 'lack of

jurisdiction over the person.'").  Nor can Rockstar's nonsensical, post-hoc explanation of its prior

motion explain why it not only discussed the §1404(a) convenience factors in its prior motion, but

also specifically sought transfer of this action while doing so.  (*See, e.g.*, Docket No. 19-4 at

23:13-16 ("interest of judicial efficiency, then, dictates that Google's Action is properly heard in

the Eastern District of Texas"); 23:23-24 ("this factor favors dismissing or transferring Google's

Action"); 24:1-2 ("this factor weighs in favor of the Texas Actions").)

         In short, Rockstar previously moved to transfer this action to the Eastern District of Texas;

1  this Court reviewed its motion and denied it; but Rockstar now returns with a renewed motion to

2  transfer this action—and offers no justification for its attempted do-over other than its own,

3  unsupported assertion that its motion is not an attempted do-over.  Under these circumstances, the

4  Court could easily deny Rockstar's renewed motion simply for failing to follow the strictures of

5  Local Rule 7-9.  In light of Rockstar's statements to the Eastern District, however, that this

6  Court's prior Order "rests on an incomplete view of the facts" and that the Eastern District "unlike

7  the NDCA . . . has the benefit of weighing the evidence and facts before it" (*supra* at 2), the Court

8  should also consider the merits of Rockstar's motion.  Rockstar's representations to the Eastern

9  District can have only one purpose:  to encourage that Court to deny the Halloween defendants'

10  pending motions to transfer to this Court, thus leaving the parties and the courts with related

11  actions actively pending in two Districts.  As the Court recognized at oral argument and in its

12  order denying Rockstar's original motion, such competing "clusters" of cases are far from ideal.

13  (Docket No. 47 at 6:22 to 7:1; Docket No. 58 at 26:12-18.)  In denying Rockstar's renewed

14  motion to transfer, the Court should enter as firm and complete an order as possible, so that

15  Rockstar cannot further mischaracterize its ruling to the Eastern District.

16  **II.**     **As This Court Found in Denying Rockstar's Prior Motion to Transfer, Rockstar's**

17  **Headquarters is in Canada, Not Texas; Rockstar Has No Meaningful Connection to Texas, and Brought the Halloween Actions There Solely for Strategic Purposes**

18  **A.**     **MobileStar Technologies LLC is a Sham Entity Which the Court Must Ignore**

19  As this Court has already found, Rockstar's one-day-before-filing creation of MobileStar

20  Technologies LLC was a sham.  (Docket No. 58 at 7:19-10:21.)  Rockstar seeks to relitigate this

21  issue as well, but inevitably fails.  Opposing Rockstar's first motion to transfer venue, Google

22  showed that, although Rockstar argued that "MobileStar's Texas roots are long-standing and

23  substantial" and it had its "principal place of business" in Texas, in fact, Rockstar formed

24  MobileStar the day before Rockstar filed the Halloween Actions and used it solely to argue that

25  this Court could not have jurisdiction over this action, because freshly-minted MobileStar had

26  never left Texas and, in "the absence of jurisdiction as to MobileStar, this action must be

27  dismissed."  (Docket No. 30-4 at 6:18-24; Docket No. 19-4 at 1:22-26; *see id.* at 6-9.)  This Court

28  agreed with Google, finding that "the circumstances here strongly suggest that Rockstar formed

1  MobileStar as a sham entity for the sole purpose of avoiding jurisdiction in all other fora except

2  MobileStar's state of incorporation (Delaware) and claimed principal place of business (Texas)."

3  (Docket No. 58 at 9:12-15; *see id.* at 9:12 to 10:21 & n.3.)

4         The Court's ruling should have resolved this issue.  Rockstar, however, returns in its

5  renewed motion to transfer, and *again* argues that MobileStar has "deep ties to the EDTX," is

6  "resident in the EDTX," and that the Court should transfer this action for those reasons.  (*See, e.g.,*

7  Motion at 2:6-8, 4:14-20 & n.4, 5:8-15, 5 n.4, 7:19 to 8:1.)  Rockstar's arguments have not gained

8  through repetition:  although Rockstar now tries to articulate a non-sham reason for MobileStar's

9  existence, its attempts only confirm the correctness of this Court's prior ruling.  Rockstar first

10  argues that it "assigned certain patents corresponding to different market segments and technology

11  areas to those newly-created subsidiaries" such as MobileStar, and that "MobileStar focuses on

12  licensing patents related to mobile device technology."  (Motion at 4:13-15.)  That may be so, but

13  it does not make MobileStar less of "a sham entity."  (Docket No. 58 at 9:12-15.)  To the contrary,

14  nothing stopped Rockstar from "licensing patents related to mobile device technology" *without*

15  transferring them to a paper subsidiary, and nothing required Rockstar to argue that its subsidiary

16  barred jurisdiction beyond Delaware and Texas—as Rockstar did to this Court and to the Eastern

17  District.  (*See, e.g.*, Docket No. 19-4 at 1:22-26; *id.* at 6-9; *Rockstar v. Samsung*, No. 13-900 (E.D.

18  Tex. April 14, 2014), Docket No. 61 at 6.)  Transferring patents to MobileStar cannot make it

19  legitimate, especially when Rockstar previously argued that the *same* transfer of patents supported

20  the *same* arguments that this Court found a sham.

21         Rockstar next argues, even less convincingly, that MobileStar could not be a sham because

22  it was too poorly executed to qualify as one:

23         Had Rockstar created MobileStar as a "sham" entity for the purpose of evading
         personal jurisdiction or manipulating venue, Rockstar would have assigned all of
24         the patents-in-suit to MobileStar and would not have made itself a party to the
         Texas Actions.  That Rockstar and MobileStar are both resident in the EDTX,
25         Rockstar maintained ownership of certain of the patents-in-suit, and Rockstar made
         itself a party to the Texas Actions belies any suggestion that MobileStar's creation
26         constitutes some jurisdiction or venue-driven machination.

27  (Motion at 4-5 n.4.)  But this ignores Rockstar's own prior argument to this Court.  Rockstar

28  argued, vociferously and at length, that Rockstar Consortium US LP's presence as a plaintiff *did*

1   *not matter at all*, because "the suit cannot be maintained against MobileStar without personal

2   jurisdiction, and MobileStar is indispensable to the suit." (Docket No. 39-3 at 2:20-22; *see id.* at

3   2-5; Docket No. 19-4 at 1:22-26; *id.* at 6-9.) Rockstar thus asked this Court to dismiss Google's

4   allegations against Rockstar Consortium US LP because, it argued, they could not proceed without

5   the allegations against MobileStar. (Docket No. 19-4 at 1:22-26; *id.* at 6-9.; Docket No. 39-3 at

6   2:20-22.) Having specifically argued that MobileStar's presence in this action exempted Rockstar

7   Consortium US LP from this Court's jurisdiction, Rockstar cannot now argue the flip side, that

8   Rockstar Consortium US LP's presence in this action exempts MobileStar from being a sham

9   entity. The Court recognized as much, specifically finding that MobileStar was a "sham entity"

10   designed to protect *the rest of Rockstar*, a finding Rockstar conveniently ignores. (Docket No. 58

11   at 9:12 to 10:21.) Rockstar has submitted nothing to contradict this Court's finding that "Rockstar

12   formed MobileStar as a sham entity for the sole purpose of avoiding jurisdiction," and the same

13   rationales apply to questions of venue too. In resolving Rockstar's renewed motion to transfer

14   venue, therefore, the Court can and should exclude MobileStar from its analysis.

15   **B.     Rockstar's Principal Place of Business is in Ottawa, Canada**

16   Rockstar seeks to relitigate another issue as well: the location of its principal place of

17   business and, hence, the location of witnesses and documents. Opposing Rockstar's first motion

18   to transfer venue, Google established that the substantial majority of Rockstar's employees work

19   at what Mr. Dean averred was "Rockstar's location" in Ottawa, Canada. (Docket No. 30-4 at

20   3:12-15; Docket No. 31 Ex. 19.) Rockstar argued that it instead ran its business out of Plano,

21   Texas, but again the Court agreed with Google:

22          Rockstar's website and the declaration of Afzal Dean, Rockstar Vice President and
           President of MobileStar, identifies officers and board members who represent both
23          Defendants and who are almost all based in Canada, except one in Colorado.
           Rockstar's "nerve center," or the place where its "officers direct, control, and
24          coordinate the corporation's activities," thus appears to be in Ottawa, Canada.

25   (Docket No. 58 at 3 n.1.) Since opposing Rockstar's first motion to transfer, Google has learned

26   additional facts confirming Rockstar's "nerve center" in Canada. For example, MobileStar did not

27   even register as a foreign corporation with the Texas Secretary of State, as required by Texas law,

28   until more than a month after filing the Halloween Actions. *Rockstar v. Samsung*, No. 13-900

1   (E.D. Tex.), Docket No. 26 at 3-4.  Indeed, Rockstar does not even allege that MobileStar took

2   *any* actions in Texas *whatsoever* before filing the Halloween Actions.  (Docket Nos. 20, 39, 67.)

3   Most tellingly, through a public-records request, Google obtained the document effecting transfer

4   of five patents-in-suit from Rockstar Consortium US LP to MobileStar.  (Madigan Decl. Ex. 1.)

5   Although Rockstar still insists that transferor (Rockstar Consortium US LP) and transferee

6   (MobileStar) "reside in Texas" and "run their business from the EDTX" (Docket No. 20 at 3:4-5;

7   Motion at 21:14-15), this critical transaction, which Rockstar alleged made MobileStar

8   indispensable to this action, was executed *in Canada* by two members of Rockstar's senior

9   management, both Canadians, and was duly witnessed and notarized by Rockstar's Canadian

10  corporate counsel.  (Madigan Decl. Ex. 1.)

11         Again, the Court's finding that Rockstar's "nerve center" is in Ottawa, Canada, should

12  have resolved this issue; again, Rockstar's renewed motion seeks to reopen what the Court has

13  already resolved.  Instead of abandoning its argument for a "principal place of business" in Texas,

14  Rockstar now doubles down, asserting that its "only office is located in Plano, Texas."  (Motion at

15  16:12; Powers Decl. ¶ 23.)  Rockstar's supporting declarations reveal how it hopes to square this

16  impossible circle:  by contending that the Canadian office is irrelevant to this action because it is

17  operated by Rockstar Consortium Inc., which Rockstar has described as a "different (although

18  affiliated) entity from Rockstar Consortium US LP."  (Docket No. 57-4 at 2-3.)  As Rockstar

19  acknowledges, "Rockstar Consortium Inc. employs 21 employees in Canada – 19 in its office in

20  Ottawa and two in Toronto."  (*Id.* ¶ 32.)  Rockstar does not provide specifics, but it appears that all

21  of Rockstar's self-identified "senior management" are employees of Rockstar Consortium Inc.

22  (Docket No. 30-4 at 16:13-24.)  There is no evidence that anyone at Rockstar previously cared

23  about, or even knew of, the distinction between Rockstar and its subsidiary or sister company,

24  Rockstar Consortium Inc.; to the contrary, Rockstar's "VP of IP Licensing for Rockstar

25  Consortium," Afzal Dean, swore under oath: "I reside and work from Rockstar's Ottawa, Canada

26  location."  (Dean Decl. ¶ 28.)  More importantly, it *does not matter* if another company also pays

27  for Rockstar's senior management; what matters is the "nerve center" from which executives

28  exercise control, and nothing in Rockstar's renewed motion disturbs or even challenges the

1    Court's finding that this "nerve center" for Rockstar itself is in Ottawa, Canada.

2        **C.    Proceeding With This Action Will Prevent Duplicative Litigation**

3        Rockstar spills substantial ink to make a simple argument:  because it would be more

4    efficient for one Court to supervise both this action and the Halloween actions, this Court should

5    transfer this action to join the Halloween actions in Texas.  (Motion at 9-15.)  There is nothing

6    controversial about Rockstar's first point, as the Court itself acknowledged during oral argument

7    on Rockstar's prior motion.  (Docket No. 47 at 6:22 to 7:1; 9:17-24.)  But Rockstar's second point

8    does not follow from its first:  the cases would better be supervised together, but that does not

9    mean they must be supervised together *in Texas*.  The Halloween defendants have all moved to

10   transfer their actions to this Court, as this Court has already noted in denying Rockstar's prior

11   motion to transfer.  (Docket No. 58 at 26 n.11.)  Rockstar's renewed transfer motion entirely

12   ignores this critical fact, and instead proceeds from the unstated assumption that the Halloween

13   actions will proceed in Texas, not here.  (Motion at 9-15.)  Rockstar can make this assumption, but

14   the Court cannot; to the contrary, as this Court already found in resolving Rockstar's first motion

15   to transfer, "[t]he court of the actual first-filed case should rule on motions to dismiss or transfer

16   based on exceptions to the first-to-file rule or on the convenience factors."  (Docket No. 58 at

17   23:12-14 (citing *Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 904 (Fed.

18   Cir. 2008).)  This Court further found that this action was "the actual first-filed case," and in any

19   event "takes precedence" over the Halloween actions under "the customer-suit exception to the

20   first-to-file rule."  (Docket No. 58 at 23:6 to 24:26.)  Rockstar does not contest these rulings.

21       Once it decided this action was the first-filed one, as required by *Micron*, this Court then

22   analyzed the convenience factors and correctly concluded it should not transfer the case.  (Docket

23   No. 58 at 24:27 to 28:12.)  To the extent the Court considers the merits of Rockstar's renewed

24   motion to transfer, it must undertake the analysis of these factors again—it cannot, as Rockstar

25   repeatedly urges in its renewed motion, simply transfer this action to Texas because there are other

26   actions there.  *Micron*, 518 F.3d at 904.  Rockstar's proposed rule would lead to nonsensical

27   results:  whenever parties in two actions moved to transfer each action to join the other, the court

28   that ruled first would *always* transfer its action to the other forum.  Luckily the law does not allow

1  such a silly system, but rather requires the "court of the actual first-filed case"—here, this Court—

2  to apply the convenience factors and determine the proper forum.  (Docket No. 58 at 23; *Micron*,

3  518 F.3d at 904.)  Rockstar itself agrees:  in its first motion to transfer, Rockstar argued that

4  "*Micron* makes application of the factors mandatory" in a "first-filed action analyzed by the court

5  presiding over the first-filed action."  (Docket No. 20 at 22 n.6.)  At that time, of course, Rockstar

6  still argued that the Halloween actions were first-filed and this action was not.  (*Id.* at 20:10 to

7  22:3.)  Now that the Court has rejected that argument, however, Rockstar has changed its tune, and

8  removed any mention of *Micron* from its renewed motion.  Still, Rockstar's original position was

9  correct:  under *Micron*, this Court cannot abdicate its responsibility to consider the convenience

10  factors simply by noting that other actions are pending in another court.  Nor can Rockstar require

11  transfer of this action simply by asserting the same.

12  **III.    Because Each of the Transfer Factors Favors This District or is Neutral, to the Extent
13          the Court Reconsiders Its Original Order Denying Rockstar's Motion to Transfer
             This Action, It Should Again Deny Rockstar's Renewed Motion to Transfer**

14          Although this Court has substantial discretion to evaluate the relevant factors as applied to

15  the specific facts of this action (*see supra* at 4), in this action this exercise of discretion should be

16  relatively easy:  each of the eight factors favors this Court over the Eastern District, or is neutral.

17          **A.      Plaintiff's Choice of Forum Favors This District**

18          "[P]laintiff's choice of forum should rarely be disturbed."  *Gulf Oil Corp. v. Gilbert*, 330

19  U.S. 501, 508 (1947); *Sec. Investor Protection Corp.*, 764 F.2d at 1317.  Indeed, the Ninth Circuit

20  has repeatedly expressed its preference for the plaintiff's choice of forum.  *E.g.*, *Tuazon v. R.J.*

21  *Reynolds Tobacco Co.*, 433 F.3d 1163, 1177 (9th Cir. 2006) ("the plaintiff's choice of forum is

22  entitled to deference"); *Altmann v. Republic of Austria*, 317 F.3d 954, 973 (9th Cir. 2002)

23  (plaintiff's "choice of forum should not be disturbed unless, when weighing the convenience of

24  the parties and the interests of justice, the balance is strongly in favor of the defendant."); *Decker*

25  *Coal*, 805 F.2d at 843 ("The defendant must make a strong showing of inconvenience to warrant

26  upsetting the plaintiff's choice of forum.").

27          This Court is Google's home forum.  (Docket No. 1 ¶ 2; Docket No. 61 ¶ 2.)  Since

28  Google's founding, it has maintained its headquarters in this District.  (Docket No. 30-5 ¶ 4.)

1   Rockstar admits that Google's principal place of business is in this District.  (Docket No. 1 ¶ 2;

2   Docket No. 61 ¶ 2.)  Under the law, "the plaintiff's choice of forum should rarely be disturbed."

3   *Natural Wellness Centers of Am., Inc. v. J.R. Andorin Inc.*, No. 11-04642, 2012 WL 216578, at

4   *10 (N.D. Cal. Jan. 24, 2012).  "This is especially true when a plaintiff chooses to sue in its 'home

5   turf,'" as Google did here.  *Id.* (citations omitted.)  This factor counsels strongly against transfer.

6          Seeking to avoid this rule, Rockstar argues that because Google brought claims in the court

7   nearest its headquarters—this Court—it somehow engaged in nefarious forum shopping.  (Motion

8   at 15:14 to 16:9.)  Rockstar cannot challenge Google's presence in this District, and does not try to

9   do so.  Instead, Rockstar argues that Google is forum shopping because it failed to sue Rockstar in

10  *Rockstar's preferred forum*.  (*Id.*)  But if Rockstar wanted to include Google as a defendant in the

11  Halloween actions, it *could have included Google as a defendant in those actions* when it filed

12  them.  Rockstar did not do so, of course, choosing instead a "litigation strategy of suing Google's

13  customers in the Halloween actions."  (Docket No. 58 at 19:4-6.)  As this Court has recognized, it

14  was entirely appropriate for Google to respond to this "'scare the customer and run' tactic," which

15  "infects the competitive environment of the business community with uncertainty and insecurity,"

16  with a declaratory judgment action of its own, filed in its own home forum.  (*Id.* at 19:11-12; 22:4-

17  6 (quoting *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346 (Fed. Cir. 2005); *see also*

18  Docket No. 58 at 20:8 to 23:4.)  Rockstar thus failed to present any cognizable argument against

19  Google's choice of forum, counting this factor firmly against transfer.[2]

20  _____

21      [2]   Rockstar also asserts that Google "invited Rockstar to a meeting in California," and then

22  "six days later Google filed this case—using that meeting as a basis for venue and jurisdiction."
     (Motion at 15:23 to 16:2.)  This is incorrect:  the only party that has referenced Rockstar's meeting

23  with Google is Rockstar.  Rockstar's motion cites only Rockstar's own declaration (Motion at
     15:22 to 16:2 (citing Docket No. 19-6 ¶¶ 12-13)), and the only other document discussing this

24  meeting is Rockstar's initial motion to transfer, which did so at some length.  (Docket No. 20 at 6-
     8, 10, 19.)  Google never mentioned this meeting, which was covered by a non-disclosure

25  agreement, in its pleadings.  Indeed, even though Rockstar discussed the meeting in its motion

26  papers, Google explicitly declined to rely on this meeting in its opposition.  (Docket No. 30-4 at
     17 n.9.)  But because Rockstar put this meeting at issue, the Court could of course rely on it, along

27  with many other things, in denying Rockstar's prior motion to dismiss or transfer.  (Docket No. 58
     at 14:8-9.)  Rockstar may rue this result, but it has no one but itself to blame.

28

-13-                                    CASE NO. 13-cv-5933-CW

GOOGLE'S OPPOSITION TO ROCKSTAR'S RENEWED MOTION TO TRANSFER OR STAY

**B.      Convenience of Parties and Witnesses Favors This District**

The convenience of parties and witnesses firmly favors this District.  This Court has already addressed this factor in resolving Rockstar's prior motion to transfer:

> This factor favors California because Google's Android products, the target of this infringement action, were designed and created here.  Many of the witnesses who can testify to the design and development of the accused Android platform's features reside near Google's headquarters in Mountain View, California. Other witnesses, such as the inventors of the patents-in-suit, are likely to be in Canada.

(Docket No. 58 at 25:15-27.)  As the Court ruled, the majority of witnesses likely to be called at trial reside in the Northern District.  (Madigan Decl. Ex. 2 ¶¶ 3-9.)  Most employees involved in the design and development of the accused features work at Google's headquarters in Mountain View.  (*Id.* ¶ 6.)  If this case were transferred to the Eastern District, these witnesses "would be forced to travel more than 1,500 miles to attend trial."  *Ingeniador, LLC v. Adobe Sys. Inc.*, No. 12-00805, 2014 WL 105106, at *3 (E.D. Tex. Jan. 10, 2014) (transferring to this Court where "most witnesses will likely come from California").  "Where the defendant attempts to shift the inconvenience—and disproportionately so—onto plaintiff, transfer must be denied."  *Wellens*, 2013 WL 3242294, at *3 (N.D. Cal. June 25, 2013) (citing *Decker Coal*, 805 F.2d at 843.)

Defendants submit cookie-cutter declarations stating—without any support or elaboration whatsoever—that the Eastern District of Texas is more convenient than the Northern District of California.  (*See* Docket No. 67-38 ¶ 6 ("It would be more convenient for me to attend trial in the Eastern District of Texas than to attend trial in the Northern District of California."); Docket Nos. 67-42 ¶ 6 (same); 67-44 ¶ 6 (same); 67-46 ¶ 5 (same).)  Such conclusory, self-serving declarations receive no weight.  *See, e.g.*, *Forte Capital Partners v. Harris Cramer*, No. 07-1237, 2007 WL 1430052, at *2 (N.D. Cal. May 14, 2007) ("In order to meet its burden, the moving party must present affidavits or declarations to establish the facts supporting transfer."  For a motion to transfer, "[c]onclusory declarations are not sufficient."  Furthermore, "a party seeking transfer cannot rely on vague generalizations as to the convenience factors."); *cf. FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

1    Setting aside Rockstar's self-serving declarations, travel from Rockstar's headquarters in

2  Ottawa is equally convenient to this Court and the Eastern District.  The flights from Ottawa to

3  Dallas-Fort Worth or Shreveport are shorter than or equivalent to flights to the Bay Area, but

4  require lengthy drives to Marshall, Texas.  (Madigan Decl. ¶¶ 3-8; *Microsoft Corp. v. Geotag Inc.*,

5  847 F. Supp. 2d 675, 678 (D. Del. 2012) (noting that "Marshall is three hours from a major

6  airport").)  As a result it would take the same time, and cost the same amount, for Rockstar's

7  witnesses to travel to trial in either forum.[3]  Google's witnesses, in contrast, can travel easily to

8  this Court from Google's headquarters in Mountain View, but must travel "more than 1,500

9  miles" to the Eastern District.  *Ingeniador*, 2014 WL 105106, at *3.[4]

10    **C.    Availability of Compulsory Process Favors This District**

11    "The convenience of witnesses includes 'a separate but related concern, the availability of

12  compulsory process to bring unwilling witnesses live before the jury.'"  *Wellens*, 2013 WL

13  3242294 at *4 (quoting *Brackett v. Hilton Hotels Corp.,* 619 F. Supp. 2d 810, 821 (N.D. Cal. June

14  30, 2008)).  The Eastern District agrees that "the focus of this factor is on witnesses for whom

15  compulsory process might be necessary."  *Ingeniador*, 2014 WL 105106, at *2.  But in this area,

16  

_____

17    [3]  As of June 26, 2014, the day of the hearing on this motion, the fastest flight from Ottawa to

18  San Francisco would take 7 hours and 30 minutes of travel time, and cost $455.  (Madigan Decl.
Ex. 3.)  The drive from San Francisco International Airport to the United States Courthouse in
Oakland, California would take approximately 29 minutes.  (*Id.* Ex. 4.)  The fastest flight from

19  Ottawa to Dallas/Fort Worth would take 5 hours and 4 minutes of travel time and cost $485.  (*Id.*

20  Ex. 5.)  The drive from Dallas/Fort Worth to the United States Courthouse in Marshall, Texas
would take approximately 2 hours and 38 minutes.  (*Id.* Ex. 6.)  The fastest flight from Ottawa to

21  Shreveport Regional Airport is would take 7 hours and 6 minutes of travel time and cost $805.
(*Id.* Ex. 7.)  The drive from Shreveport to the United States Courthouse in Marshall, Texas would

22  take approximately 35 minutes.  (*Id.* Ex. 8.)  In total, travel from Ottawa to this court would take 7

23  hours and 59 minutes and cost $455 plus a taxi fee; travel from Ottawa to Marshall via Dallas
would take 7 hours and 42 minutes and cost $485 plus car rental or transport to Marshall; and

24  travel from Ottawa to Marshall via Shreveport would take 7 hours and 41 minutes and cost $805

25  plus a taxi fee or car rental.  Travel from Ottawa to this District is thus equally or more convenient
than travel from Ottawa to the Eastern District.

26    [4]  Rockstar briefly mentions that "Jeff Hamilton, a software engineer on Google's Android

27  team who specializes in '[o]perating systems development for mobile devices,' lives in Austin,
Texas."  (Motion at 6:7-9.)  But Rockstar does not include Mr. Hamilton in its disclosures under

28  Fed. R. Civ. P. 26(a)(1), confirming his irrelevance.  (Madigan Decl. Ex. 9.)

1   too, the facts strongly favor this District over Texas.  Both this Court and the Eastern District can

2   issue nationwide deposition subpoenas under Fed. R. Civ. P. 45(b)(2), but each Court has different

3   powers to require attendance at trial.  This Court can compel only non-party witnesses residing

4   within California, and the Eastern District only from within Texas.  Fed. R. Civ. P. 45(c)(1)(B)(ii).

5   In at least three subject-matter areas, the relevant witnesses are here.  First, witnesses with

6   knowledge of the Android platform, including former employees of Google and Android Inc.,

7   remain heavily concentrated in the Northern District.  At least one named inventor resides in the

8   Northern District (Madigan Decl. Ex. 10), as do dozens of relevant prior artists of record.[5]

9         Finally and most critically, the Northern District is home to important, but very likely

10  unwilling, trial witnesses:  employees of Apple.  As this Court has already found in denying

11  Rockstar's first motion to transfer, Apple will play a significant role in this action:

> Google demonstrates a direct link between Apple's unique business interests,
> separate and apart from mere profitmaking, and Defendants' actions against Google
> and its customers.  Google and Apple's rivalry in the smartphone industry is well-
> documented.  Apple's founder stated that he viewed Android as a "rip off" of
> iPhone features and intended to "destroy" Android by launching a "thermonuclear
> war."  Defendants' litigation strategy of suing Google's customers in the

---

[5] The inventors include Edward H. Frank, James Arthur Gosling, and John C. Liu, named inventors on European Patent No. 0,605,945; Ashish Thanawala, named inventor on European Patent No. 0,630,141; Michael C. Tchao, named inventor on U.S. Patent No. 5,563,996; Scott A. Jenson, named inventor on U.S. Patent No. 5,570,109; Mitchell D. Forcier, named inventor on U.S. Patent No. 5,590,257; Robert Irribarren, named inventor on U.S. Patent No. 5,737,395, Stephen P. Capps, named inventor on U.S. Patent No. 5,745,716; Ilan Raab, Ravi Manghirmalani, Ofer Doitel, and Lynne Marie Izbicki, named inventors on U.S. Patent No. 5,751,967; Ajay Gupta and Gregory Skinner, named inventors on U.S. Patent No. 5,781,550; Judy Dere, Leon Leong, Daniel Simone, and Allan Thomson, named inventors on U.S. Patent No. 5,802,286; Thomas P. Moran and Patrick Chiu, named inventors on U.S. Patent No. 5,809,267; Christopher D. Coley, named inventors on U.S. Patent No. 5,826,014; Tom Ziola and William Herman, named inventors on U.S. Patent No. 5,862,339; Nicolle Henneuse and Pete Billington, named inventors on U.S. Patent No. 5,963,913; John H. Hart and W. Paul Sherer, named inventors on U.S. Patent No. 6,041,166; Srikumar N. Chari, named inventor on U.S. Patent No. 6,046,742; Prakash C. Banthia, a named inventor on U.S. Patent No. 6,085,243; Umesh Muniyappa, Alampoondi Eswaran Natarajan, Nicholas Michael Brailas, and Michael Terzich, named inventors on U.S. Patent No. 6,092,200; Keith McCloghrie, Bernard R. James, Christopher Young, and Norman F. Finn, named inventors on U.S. Patent No. 6,219,699; Leslie J. Arrow and Quentin C. Liu, named inventors on U.S. Patent No. 6,226,751; Snehal G. Karia and Dean C. Cheng, named inventors on U.S. Patent No. 6,643,267; and Kamran Sistanizadeh and Masoud M. Kamali, named inventors on U.S. Patent No. 6,681,232.  (Madigan Decl. Ex. 11 ¶ 3.)

1   Halloween actions is consistent with Apple's particular business interests. In suing
2   the Halloween action defendants, Defendants here limited their infringement claims
    to Android-operating devices only, even where they asserted a hardware-based
3   patent. This "scare the customer and run" tactic advances Apple's interest in
    interfering with Google's Android business.

4   (Docket No. 58 at 18:22 to 19:14 (citations and footnotes omitted).) This finding explains why

5   witnesses from Apple will likely testify at trial—but will not do so willingly. They will only

6   testify at trial if the action is heard in this District, where Apple is headquartered.

7        Although Rockstar unsurprisingly tries to minimize the importance of its ally and owner,

8   Apple, it cannot succeed. Rockstar first argues that "[a]ny focus on Apple as a non-party witness

9   is inapposite because the parties do not dispute the amounts of the bids placed for the Nortel patent

10  portfolio." (Motion at 17:18-19.) But Rockstar's Answer and Counterclaims puts at issue in this

11  action—in fact, at the forefront—the not the mere amounts of the bids, but the valuation they

12  represent. (Docket No. 61 ¶¶ 4-9.) Rockstar alleges that Google "ultimately bid as high as $4.4

13  billion" for the portfolio, but lost to Apple and the other Rockstar owners. (*Id.* ¶ 4.) Rockstar will

14  surely argue to the jury that Google's alleged bids indicate that Google recognized the intrinsic

15  value and importance of these patents, including the patents-in-suit. To counter this argument,

16  Google must be able to present to the jury evidence of other rationales for the valuation of the

17  auction portfolio—including "Apple's particular business interests" and its intention to "destroy

18  Android by launching a thermonuclear war" of litigation using these patents. (Docket No. 58 at

19  19:1-7.) But the Eastern District of Texas cannot compel live testimony from Apple's California

20  witnesses, although Rockstar would receive live testimony from Google's California witnesses.

21  Google would suffer grave prejudice from the resulting asymmetry. This District can compel live

22  testimony from Apple, eliminating this asymmetry and prejudice. The Eastern District cannot.

23       Recognizing this, Rockstar argues in the alternative that, "to the extent that testimony from

24  Apple is relevant, testimony from the other Nortel bidders (such as Google) and other Rockstar

25  limited partners would be equally relevant." (Motion at 18:1-3.) Not so. This Court has already

26  found a "direct link between Apple's unique business interests" and Rockstar's "actions against

27  Google and its customers"; other bidders or Rockstar owners cannot shed light on "Apple's unique

28  business interests." (Docket No. 58 at 18:23-25.) In addition, this Court has already found

"strong evidence that Apple is indeed the majority shareholder of Defendants based on Apple's majority investment in Rockstar's predecessor entity, Rockstar Bidco." (*Id.* at 17:9-13.) In response, Rockstar submits only a red herring, stating that "each limited partner, including Apple, owns a 'minority' stake" in Rockstar. (Motion at 17:16-18.) But Rockstar is, once again, tellingly mum regarding Apple's ownership of its general partner, Rockstar Consortium LLC. (*See* Motion at 3:8-9). The general partner controls the limited partnership, Del. Code Ann. Tit. 6, § 17-403, but Rockstar has said almost nothing about the general partner's composition or ownership, even though Google has previously raised this issue. (Docket No. 30-4 at 11:26 to 12:12.) Rockstar's silence does not come from a lack of information: Rockstar volunteered that, as of now, "Rockstar Consortium LLC's CEO is John Veschi" (Motion at 4 n.3), and further provided a list of the general partner's current officers. (Docket No 67-4.) Although it evidently and unsurprisingly has access to its general partner's records, Rockstar provided no evidence to rebut Google's "strong evidence" that Apple controls Rockstar through Rockstar Consortium LLC. (Docket No. 58 at 17:9-13.) To the contrary, every assertion Rockstar makes about Apple's alleged lack of control includes the same Texas-sized loophole: they address only Apple's role as a limited partner, and not its control over the general partner. (*E.g.*, Docket No. 20 at 15:17-23; Motion at 7:13-18, 8:4-10, 17:14-18.) To explore Apple's control of Rockstar and its use of Rockstar to advance "Apple's unique business interests," Google must present to the jury live testimony from Apple witnesses, which it can only do in this District. This factor weighs strongly against transfer.[6]

---

[6] Rockstar also argues that Google's assertions of likely Apple witnesses "lack the required level of specificity" for inclusion in the venue analysis. (Motion at 18 n.22 (citing *Natural Wellness Ctrs. of Am., Inc. v. Golden Health Prods.*, 2013 U.S. Dist. LEXIS 8658, at *16 (N.D. Cal. Jan. 22, 2013).) *Natural Wellness* found that defendants "fail to explain adequately how these witnesses' testimony is material to this dispute." (*Id.* at *16.) But here, Google has already shown, in opposing Rockstar's prior motion to dismiss or transfer, why Apple is central to this action and what testimony Apple witnesses will provide. (Docket No. 30-4 at 11:1-16.) This Court has already accepted Google's reasoning. (Docket No. 58 at 18:22 to 19:14.) Google has further detailed likely testimony from Apple witnesses, *see supra* at II.D.2. It rings hollow for Rockstar to now argue that Google's allegations lack specificity.

1

**D.      Feasibility of Consolidation With Other Claims Favors This District**

2

This Court has already addressed this factor in resolving Rockstar's prior motion to

3

transfer, and found that it favored retaining this action in this District:

4

> The Halloween actions might not and need not be transferred here.  They might be
> stayed in Texas and be reopened upon completion of this suit, which likely will
> resolve some of the infringement issues there.  If the Texas actions are transferred
> here, they can be consolidated with this case at least for pretrial purposes.

5

6

7

(Docket No. 58 at 26:12-18.)  Rockstar simply ignores the Court's prior ruling, arguing instead

8

that it would, hypothetically, be feasible to consolidate this action with the Halloween action

9

against Samsung, to which Rockstar belatedly added Google.  (Motion at 19:22 to 20:10.)  This

10

argument is both legally and factually insufficient.  Legally, Rockstar says nothing to explain why

11

the Court's prior ruling was incorrect, or why cases should be consolidated in Texas rather than

12

this District.  As required by *Micron*, the Court already considered where this action should best

13

occur, and that is here, not in Texas.  (Docket No. 58 at 24:27 to 28:10.)  The correct resolution

14

would be to stay or transfer the Halloween actions into this one.  *See Elecs. For Imaging, Inc.*, 340

15

F.3d at 1352 (finding that a pending patent infringement case in Nevada "can be consolidated with

16

the current action," a declaratory judgment action in the Northern District of California).

17

Rockstar's arguments are also factually incorrect.  Rockstar asserts that "[t]his case and

18

Defendants' case against Google in the EDTX involve wholly overlapping issues as to

19

infringement and damages, including whether and to what extent Google's products (including the

20

Nexus 5, Nexus 7 and Nexus 10) infringe one or more claims of the patents-in-suit."  (Motion at

21

20:6-9.)  But as this Court explained in ruling on Rockstar's prior motion to transfer, Rockstar's

22

New Year's Eve complaint against Google included only "allegations that Google infringes three

23

of the asserted patents at issue in this case"; although Rockstar later "sought to include the final

24

four other patents in the Texas case, leave to amend has not yet been granted."  (Docket No. 58 at

25

4:27 to 5:9; 22:15 to 23:1.)  That remains true.  As Google explained in opposition to that motion,

26

Rockstar could not excuse any delay in asserting the final four patents because, "[i]n its Halloween

27

complaint against ASUS, Rockstar expressly accused the Nexus 7, one of Google's Nexus

28

products developed by Google and sold on Google's website."  *Rockstar v. Samsung*, No. 13-900

(E.D. Tex.), Docket No. 56 at 2.  As confirmed by Rockstar's later accusations against Google for infringement by selling the same Nexus 7, Rockstar could have sued Google on Halloween, but for strategic decisions did not; Rockstar's strategic delay cannot allow amendment under Fed. R. Civ. P. 15.  *Id.*  Thus this case and Rockstar's Texas action against Google do not present "wholly overlapping issues"; this action will resolve the issues in that action, but not vice versa.

Similarly, this action will resolve any allegation of infringement against Google's Android Platform, including Google's publication of the Android Open Source Project on the Internet. (Docket No. 1 ¶¶ 25-26, 31, 37, 43, 49, 55, 61, 67.)  Rockstar's action in Texas will not resolve these issues, and Rockstar does not argue otherwise.  Instead Rockstar contends only that, in this action, "Defendants contest Google's identification of the 'Android Platform.'"  (Motion at 20:9.) But that is *precisely the point*:  this action will resolve whether Google can seek a declaration of non-infringement govering its Android Platform and, if it can, whether that platform infringes any of the asserted patents.  Rockstar's Texas action will not resolve these issues, even if that Court grants Rockstar's motion for leave to amend its complaint.  Rockstar is thus doubly wrong in asserting that the two actions have "wholly overlapping issues," and that "[e]ach of the claims in this case could be raised by Google as a defense in the Texas Action."  (*Id.* at 20:9-10.)  This factor therefore favors this district.

### E.     Ease of Access to the Evidence Favors This District

Google's development of Android is largely in Mountain View; unsurprisingly, Google's relevant documents are largely in Mountain View as well.  (Madigan Decl. Ex. 2 ¶ 12.)  Because Rockstar's principal place of business is in Ottawa, Canada, most of Rockstar's documents are likely there as well.  (*See supra* at 9.)  Rockstar does not argue otherwise, but only claims to have some relevant documents in Texas, including "files relating to patent licenses, patent licensing efforts, and payment of royalties."  (Motion at 19:13-16.)  But Rockstar has not quantified any of these documents further, and has not produced any of them to Google.  More tellingly, public evidence indicates most documents are indeed in Canada.  In bankruptcy proceedings regarding Nortel's assets, a Canadian court appointed a Monitor to represent the court during the proceeding. *See* R.S.C., 1985, c. C-36 § 11.7(1); Madigan Decl. Ex. 12 (order of Canadian court requiring

routine reports on status of bankruptcy proceedings).  The Monitor found little-to-no connection

between Nortel's R&D and the Richardson facility:

> Nortel was always headquartered in Canada, where it was founded as part of the Bell Telephone Company of Canada in 1883.  Before the 1980s, all of Nortel's R&D was performed in Ottawa.  While laboratories were later established in other jurisdictions, Ottawa always remained the primary centre for R&D.  NNL's Ottawa campus was home to the largest concentration of Nortel's R&D employees.  Ottawa was also the location of Nortel's advanced technology and R&D leadership.  No major decision regarding R&D direction or funding was taken without approval from Ottawa.

(Madigan Decl. Ex. 13 ¶ 30.)  These proceedings thus confirm the logical inference that most of

Rockstar's relevant documents are in Canada, not Texas.  This factor favors this District.

### F.      Local Interest in the Controversy Favors This District

This Court has a local interest in the controversy between Google and Rockstar.  The

Eastern District of Texas does not.  As this Court has already found, Rockstar's allegations

specifically target Google's Android platform; in the Halloween actions, for example, Rockstar

"limited their infringement claims to Android-operating devices only, even where they asserted a

hardware-based patent."  (Docket No. 58 at 19:7-11.)  The Android platform is overwhelmingly

designed, developed, and maintained by Google in this District.  (Madigan Decl. Ex. 2 ¶¶ 3-9.)

Thus, as this Court found in denying Rockstar's prior motion to transfer, this District "has the

greater interest in this litigation because the claims here will 'call into question the work and

reputation of several individuals residing in or conducting business in this community.'"  (Docket

No. 58 at 27:14-19 (quoting *In re Hoffman-LaRoche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009)).  The

Eastern District itself has "recognized that the 'Northern District of California has an interest in

protecting intellectual property rights that stem from research and development in Silicon Valley.'"

(Docket No. 58 at 27:19-25 (quoting *Affinity Labs of Texas v. Samsung Elecs. Co.*, 2013 WL

5508122, at *3 (E.D. Tex.)).)  Conversely, the Eastern District of Texas has little interest in this

action.  Rockstar's mere proclamation that Plano, Texas is its principal place of business does not

establish a local interest; to the contrary, the Court must "take as the 'nerve center' the place of

actual direction, control, and coordination, in the absence of such manipulation."  *Hertz Corp. v.*

*Friend*, 559 U.S. 77, 79 (2010).  After undertaking this analysis, this Court has already found that

Rockstar's "nerve center" is in Ottawa, Canada (Docket No. 58 at 3 n.1), reducing or removing

1    any interest in the Eastern District.  Thus, this factor favors this District.

2            Rockstar makes two arguments in response; both fail.  First, Rockstar argues that it

3    actually has "meaningful ties to the EDTX" and "conducts its business in the EDTX."  (Motion at

4    20:24 to 21:10.)  As the Court has already found, however, Rockstar actually conducts the

5    overwhelming majority of its business from Ottawa, Canada (*see supra* § II.B); so this argument

6    fails.  Second, Rockstar argues that "the patents-in-suit are the result of Nortel's research, and

7    Nortel's long-standing U.S. headquarters was in Richardson, Texas."  (Motion at 21:15-16.)  As

8    an initial matter, the Court can dismiss this argument because Richardson, as Rockstar has

9    admitted, is not in the Eastern District at all.  (Madigan Decl. Ex. 14 ¶ 8.)  Furthermore,

10   Rockstar's statement carefully omits any connection between where "Nortel's research" was

11   conducted and Nortel's facility in Texas; absent any evidence, the Court should discount it.  As

12   the bankruptcy Monitor found, "Ottawa always remained the primary centre for R&D," further

13   reducing any Texas interest in this action.  (*See supra* at 20-21.)  The Monitor also found that

14   Nortel's Canadian parent "was a substantial funder of R&D," and "proportionally spent the most

15   on R&D."  (*Id.*)  When Rockstar CEO John Veschi took control of Nortel's IP function in 2009,

16   he did so from Nortel's Ottawa headquarters, "the former centre of Nortel's R&D operations."

17   (*Id.* Ex. 15.)  Especially in light of this substantial contrary evidence, the Court can and should

18   ignore Rockstar's unsupported assertion that *all* of Nortel's research came from Texas.

19           **G.     Relative Court Congestion and Time to Trial Favor This District**

20           This factor also favors this District.  The most recent federal judicial caseload statistics,

21   compiled by the judiciary using data through June 30, 2013, show average times to trial of 27.5

22   months in this Court and 25.5 months in the Eastern District, a negligible difference.  (Madigan

23   Decl. Ex. 16.)  Rockstar submits a PricewaterhouseCoopers study of patent cases from 1995

24   through 2012, which finds median time-to-trial in this District to be 2.72 years, and in the Eastern

25   District to be 2.19 years.  (Docket No. 67-32.)  Rockstar now argues that "this factor favors

26   transfer," although it found the same factor "neutral" in opposing Google's motion to transfer

27   before the Eastern District.  (Motion at 22; *Rockstar v. Samsung*, No. 13-900 (E.D. Tex. April 14,

28   2014), Docket No. 61 at 15.)

This factor would in fact be neutral, but for a more recent study released by Lex Machina on May 13, 2014.  (Madigan Decl. Ex. 17; *see id.* Ex. 18.)  That study surveyed every patent case filed in 2013, and found that Judge Gilstrap, to whom the Eastern District assigned the Halloween actions, received 941 new patent actions in 2013 alone, representing more than 15% of the total patent actions filed anywhere in the nation, and more than triple the number of cases, 263, received by the next-most-busy judge.  This deluge of 941 new cases would tax any chambers, even the most efficient, and militates strongly against transfer of this action.  The purpose of the congestion factor is not only to avoid unreasonable delays to actions directly at issue on transfer motions, but also to ensure a more even and fair distribution of cases across the various judicial districts.  *See, e.g., Mateos v. Select Energy Servs., L.L.C.*, 919 F. Supp. 2d 817, 824 (W.D. Tex. 2013) (considering new case assignments per judge and refusing transfer where potential transferee district "is as busy, if not busier" as current district); *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 219 (D. Del. 1993) (refusing to transfer "to a court that is already carrying the burden of many more cases" where adding matter to another judge's docket could "impose a significant incremental burden on that judge's work load").  This Court need not add to the heavy burden already imposed on Judge Gilstrap and his chambers by the myriad of filings in 2013.  This factor favors this District.

### H.      Familiarity of Each Forum with the Applicable Law is Neutral

As this Court has already found, this Court and the Eastern District are both familiar with patent law.  (Docket No. 58 at 28:7-10.)  For once, Rockstar does not challenge the prior ruling of this Court.  (Motion at 23:1-2.)  This factor is neutral.

### IV.     The Court Should Deny Rockstar's Cursory Request for a Stay

Rockstar closes its brief with a perfunctory request that the Court exercise its inherent authority to stay these proceedings pending resolution of the Halloween Actions.  Like Rockstar's motion to transfer, this request falls within the Court's sound discretion, exercised to balance the parties' competing interests. *Landis v. N. Am. Co*., 299 U.S. 248, 254-56 (1936).  For Rockstar to prevent this action from proceeding, it must clear a high bar:

1

> The suppliant for a stay must make out a clear case of hardship or inequity in being
> required to go forward, if there is even a fair possibility that the stay for which he
> prays will work damage to someone else.  Only in rare circumstances will a litigant
> in one cause be compelled to stand aside while a litigant in another settles the rule
> of law that will define the rights of both.

2

3

4    *Landis*, 299 U.S. at 255.  "The proponent of a stay bears the burden of establishing its need."

5    *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (quoting *Landis*, 299 U.S. at 255).  Rockstar presents

6    no interests favoring a stay; the Court should quickly deny this request.

7            First, Rockstar argues that the Halloween actions will not "resolve each of the

8    infringement claims presently before this Court as to Google's devices."  (Motion at 23.)  But as

9    Google has already explained, this is simply not so; to the contrary, only this action will resolve all

10   issues between Rockstar and Google.  (*See supra* at 11.)  Second, the primary case Rockstar uses

11   to support its request actually supports Google here, not Rockstar.  In *Google, Inc. v.*

12   *ContentGuard Holdings, Inc.*, this Court stayed a declaratory action in favor of an infringement

13   action in the Eastern District—but did so, critically, following a finding that the Eastern District

14   case was the first-filed one, and after the Eastern District had considered the convenience factors

15   under *Micron* and decided to keep its case.  *Google Inc. v. ContentGuard Holdings, Inc.*, No. 14-

16   498 (N.D. Cal. Apr. 15, 2014), Docket No. 42.  Here, in contrast, this Court has already found this

17   action to be the first-filed one, further found that "even if the parties were substantially similar in

18   the Halloween actions and this one, the customer-suit exception to the first-to-file rule would

19   apply," applied the *Micron* factors, and ruled that this action should proceed.  (Docket No. 58 at

20   23:6-28:12.)  Under these circumstances, Rockstar's request for a stay reduces to yet another

21   instance of its well-worn argument that this Court should abandon this action simply because other

22   actions exist in Texas.  (*See supra* at 11-12.)  This argument cannot support a stay any more than it

23   can a transfer; instead the Court must apply the convenience factors and decide the proper location

24   of this action.  (*Id.*)  Rockstar may not like the answer yielded by the convenience factors, but

25   seeking a stay cannot and does not change it.[7]  Rockstar provides no support for its request, let

26

27   [7]   Rockstar's other authorities militate *against* stay of this action.  In *Nat'l Broom Co. of Cal. v.*
     *Brookstone Co.*, the court stayed after finding, unlike the Court here, that "departing from the first-
28       (footnote continued)

1  alone "a clear case of hardship or inequity"; the Court should deny its rote request for a stay.

2                                   **CONCLUSION**

3           For all of the foregoing reasons, this Court should deny Rockstar's renewed motion to

4  transfer or stay this action, and should enter an order precluding further attempts by Rockstar to

5  avoid the jurisdiction of this Court.

6  DATED:  May 23, 2014                    Respectfully submitted,

7                                          QUINN EMANUEL URQUHART & SULLIVAN, LLP

8                                          By  /s Matthew S. Warren
                                               Matthew S. Warren
9                                              *Attorneys for Google Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22  _____

23  to-file rule is warranted."  2009 U.S. Dist. LEXIS 69630, at *8 (N.D. Cal. July 30, 2009).  In
    *Ricoh Co., Ltd. v. Aeroflex Inc.*, the court concluded the customer-suit exception favored
24  resolution of the manufacturer's suit, and did not even consider a stay.  279 F. Supp. 2d 554, 556
    (D. Del. 2003).  In *Leviton Mfg. Co. v. Interline Brands, Inc.*, as here, the court found the
25  customer-suit exception applied to stay of the *customer* suits, expressly rejecting Rockstar's
    position that the customer-suit exception requires an agreement by the customers to be bound.
26  2006 U.S. Dist. LEXIS 61944 (M.D. Fla. Aug. 30, 2006).  Finally, *Hynix Semiconductor, Inc. v.
    Rambus, Inc.* is irrelevant:  it imposed a stay pending appeal of a ruling of unenforceability of the
27  patents due to the plaintiff's destruction of documents.  2009 U.S. Dist. LEXIS 10939, at *13-15
    (N.D. Cal. Feb. 3, 2009).

28