1 | **Courtland L. Reichman (SBN 268873)**
creichman@mckoolsmithhennigan.com
2 | **McKool Smith Hennigan, P.C.**
**255 Shoreline Drive Suite 510**
3 | **Redwood Shores, CA 94065**
**(650) 394-1400**
4 | **(650) 394-1422 (facsimile)**

5 | **ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE**

7 | **Attorneys for Defendants**
**Rockstar Consortium U.S. LP and**
**MobileStar Technologies LLC**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND

| Google, Inc. | Case No. 13-cv-5933 |
|---|---|
| Plaintiff, | **DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT** |
| vs. | |
| Rockstar Consortium U.S. LP and MobileStar Technologies LLC | |
| Defendants. | |
| | Date: March 13, 2014 |
| | Time: 2:00 p.m. |
| | Courtroom: TBD |
| | Judge: Hon. Claudia Wilken |

# TABLE OF CONTENTS

I. Google Has Failed To Establish Personal Jurisdiction Over Either Defendant ............................... 2

    A.    Google Does Not Even Attempt To Show Personal Jurisdiction Over MobileStar Without Impermissibly Ignoring The Corporate Form ............................. 2

    B.    Google Has Failed To Establish Specific Jurisdiction Over Rockstar ........................ 5

    C.    Google's Attempt To Subject Rockstar To General Jurisdiction Is Frivolous Under *Daimler*'s Controlling Standard ........................................................................ 8

    D.    Google Cannot Impute Third-Party Contacts To Rockstar ....................................... 10

        1.    Rockstar Did Not Assume All Of Nortel's Minimum Contacts By Obtaining Nortel Patents After A Bankruptcy Auction Or Hiring Ex-Nortel Employees ................................................................................................ 10

        2.    Apple's Status As A Rockstar Shareholder Does Not Impute Apple's Contacts To Rockstar ............................................................................................. 11

        3.    Google's Request For Jurisdictional Discovery Is A Request For A Fishing Expedition That Will Not Improve Google's Thin Jurisdictional Allegations .............................................................................................................. 12

II. The Court Should Decline To Exercise Discretionary Jurisdiction Over Google's Declaratory Judgment Action ........................................................................................................ 12

    A.    Google's Action Is Not In The Interest Of Justice And Would Frustrate Judicial Efficiency ........................................................................................................ 12

    B.    Google's Action Undermines The Purposes Of The Declaratory Judgment Act ....... 13

    C.    Google Is Incorrect That Rockstar's Claims Concern Only Android ......................... 14

    D.    Defendants Have Not Yet Filed Any Motion To Transfer Venue .............................. 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*123 Sys. v. Hydro-Quebec*,
    626 F.3d 1213 (Fed. Cir. 2010)..................................................................................................2

*3D Sys. Inc. v. Aarotech Labs, Inc.*,
    160 F.3d 1373 (Fed. Cir. 1998).........................................................................................3, 4, 9

*Akro Corp. v. Luker*,
    45 F.3d 1541 (Fed. Cir. 1995)....................................................................................................7

*Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*,
    566 F.3d 1012 (Fed. Cir. 2009)...............................................................................................5, 6

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
    552 F.3d 1324 (Fed. Cir. 2008).......................................................................................... *passim*

*Campbell Pet Co. v. Miale*,
    542 F.3d 879 (Fed. Cir. 2008)....................................................................................................6

*Catalyst Assets LLC v. Life Techs. Corp.*,
    2012 U.S. Dist. LEXIS 84347 (N.D. Cal. June 17, 2012) .......................................................12

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014)..............................................................................................................8, 9

*Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*,
    142 F.3d 1266 (Fed. Cir. 1998)...............................................................................................3, 4

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) .............................................................................................10, 11

*Elecs. for Imaging, Inc. v. Coyle*,
    394 F.3d 1341 (Fed. Cir. 2005).................................................................................................12

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ...................................................................................................4

*JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*,
    No. 12-5847, 2013 U.S. Dist. LEXIS 28439 (E.D.N.Y. Feb. 28, 2013) ...................................9

*Juniper Networks, Inc. v. SSL Servs., LLC*,
    No. 08-cv-5758, 2009 U.S. Dist. LEXIS 112399 (N.D. Cal. Nov. 16, 2009), *aff'd*, 2010
    U.S. App. LEXIS 25498 (Fed. Cir. Dec. 13, 2010) ..................................................................6

-ii-
DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case
No. 3:13-cv-5933-CW

*Katzir's Floor Home and Design, Inc. v. M-MLS.COM*,
    394 F.3d 1143 (9th Cir. 2004) ..................................................................................................10

*Manville Sales Corp. v. Paramount Sys., Inc.*,
    917 F.2d 544 (Fed. Cir. 1990).....................................................................................................4

*Micron Tech., Inc. v. MOSAID Techs., Inc.*,
    518 F.3d 897 (Fed. Cir. 2008)...................................................................................................12

*Proofpoint, Inc. v. InNova Patent Licensing, LLC*,
    2011 U.S. Dist. LEXIS 120343 (N.D. Cal. Oct. 17, 2011).................................................12, 13

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003) ......................................................................................................9

*Radio Sys. Corp. v. Accession, Inc.*,
    638 F.3d 785 (Fed. Cir. 2011)............................................................................................5, 6, 7

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
    148 F.3d 1355 (Fed. Cir. 1998)...........................................................................................4, 5, 7

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ......................................................................................................2

*Silent Drive, Inc. v. Strong Indus., Inc.*,
    326 F.3d 1194 (Fed. Cir. 2003)...............................................................................................5, 7

*Silver Valley Partners, LLC v. De Motte*,
    400 F. Supp. 2d 1262 (W.D. Wash. 2005)................................................................................10

*Smugmug, Inc. v. Virtual Photo Store LLC*,
    No. 09-cv-2255, 2009 U.S. Dist. LEXIS 112400 (N.D. Cal. Nov. 16, 2009) ............................6

*Smugmug, Inc. v. Virtual Photo Store LLC*,
    No. 09-cv-2255, 2009 U.S. Dist. LEXIS 71305 (N.D. Cal. Aug. 13, 2009) ............................11

**STATUTES**

28 U.S.C. § 1404(a) .........................................................................................................................14

28 U.S.C. § 2201............................................................................................................... *passim*

**OTHER AUTHORITIES**

Rest. (2d) Conflict of Laws § 40, cmt......................................................................................10

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

According to Google, the only "reasonable" place to conduct this litigation is California. Yet California is not even an *option* for this litigation, and Google's contrary view squarely conflicts with controlling law. This Court should dismiss this second-filed, duplicative suit for at least three reasons.

First, this Court lacks personal jurisdiction over MobileStar, an indispensable party. It makes little sense to adjudicate patent claims when the party that owns (or is the exclusive licensee) of *every* patent-in-suit is beyond the Court's jurisdiction. Google never suggests that MobileStar has any meaningful California ties, which it does not. Instead, Google argues that MobileStar is bound where Rockstar is bound. But Google never attempts to pierce the corporate veil, and Google has no basis for doubting MobileStar's legitimate corporate form. There is no such "personal-jurisdiction-is-different" exception in corporate law. If Google wishes to hale MobileStar into court, it has to establish jurisdiction using MobileStar's contacts. Its failure to do so is dispositive.

Second, Google says Rockstar is subject to jurisdiction in California. But Google cannot reconcile its jurisdictional allegations with the Supreme Court's decision in *Daimler* or the Federal Circuit's longstanding rule that a patentee's "commercialization activity" does *not* give rise to jurisdiction. Google simply brushes aside these controlling doctrines, and instead tries to establish jurisdiction—over *other* parties. But Google cannot sue Rockstar in California by saying it could have sued Apple or Nortel in California. Personal jurisdiction is *personal*, and Google has not shown Rockstar itself is subject to suit in this Court.

Third, even if Defendants could be sued in California, this suit has no business in this Court. According to Google, the "natural" defendant's second-filed suit under the Declaratory Judgment Act should determine the forum where the "natural" plaintiff may enforce its rights. Indeed, according to Google, that same second-filed suit should also trump the "natural" plaintiff's choice for *six* first-filed suits, against other parties, all pending in a proper venue where this entire dispute can be fully and fairly litigated. Google's effort to invoke the Declaratory Judgment Act invites

-1-
DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW

1  precisely the kind of inefficient, duplicative litigation (and risk of inconsistent results) that the Act
2  will not tolerate. Google cannot avoid these impermissible costs without insisting that the Texas
3  courts transfer six pending suits (including against foreign defendants) to California—rather than
4  relocate this single suit to Texas. The Texas litigation was first-filed and it reflects the proper vehicle
5  for adjudicating Google's defenses.

Finally, Google's request for jurisdictional discovery is futile. A fishing expedition into Rockstar and MobileStar will not change the fact that neither Defendant is "at home" in California, neither Defendant has any meaningful contacts with the State, neither Defendant has engaged in anything besides (irrelevant) commercialization activity here, and neither Defendant has done anything to justify piercing the corporate veil—a request that Google, smartly, has not made. Further discovery is pointless and would only postpone the inevitable. This case is defective and should be dismissed.

## ARGUMENT

### I. Google Has Failed To Establish Personal Jurisdiction Over Either Defendant

#### A. Google Does Not Even Attempt To Show Personal Jurisdiction Over MobileStar Without Impermissibly Ignoring The Corporate Form

As previously established, "each defendant's contacts with the forum State must be assessed individually" (*Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008)), and MobileStar has no qualifying contacts with California. *See, e.g.*, Mot. 7-8; Dean Decl. ¶¶ 5-9, 13-14. This shortcoming undercuts Google's entire complaint: the suit cannot be maintained against MobileStar without personal jurisdiction, and MobileStar is indispensable to the suit. There is no point in entertaining a declaratory-judgment action without the party that owns (or is the exclusive licensee) of all seven patents-in-suit. *See* Mot. 8-9; *see also 123 Sys. v. Hydro-Quebec*, 626 F.3d 1213, 1217 (Fed. Cir. 2010).

In response, Google does not identify a single fact supporting jurisdiction or controverting MobileStar's evidence. Instead, Google asserts that this Court may freely disregard the corporate

-2-
DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW

form. According to Google, even without any attempt to pierce the corporate veil, Rockstar's contacts are attributable to MobileStar as its "litigation subsidiary." Opp. 6-7. MobileStar is undeniably a separate entity, but it cannot ask Google to show that MobileStar, individually, has contacts with California—at least not without an "awfully neat trick" (Opp. 7). *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("the plaintiff bears the burden of demonstrating that [personal] jurisdiction is appropriate"). Reduced to its logical conclusion, according to Google, the corporate form is *irrelevant* in the personal-jurisdiction context.

Google is wrong. Corporate identity matters, and the corporate form (unless properly set aside) has consequences. *3D Sys. Inc. v. Aarotech Labs, Inc.,* 160 F.3d 1373, 1380-81 (Fed. Cir. 1998). Google may wish to sweep aside MobileStar's identity and focus exclusively on Rockstar. But the proper vehicle for asserting such a challenge is piercing the corporate veil or establishing any other valid ground for looking past the corporate structure. *Ibid.* Here, however, it is indisputable that MobileStar is a legitimate separate entity. It was properly created under Delaware law, and it follows all applicable corporate formalities. As a separate "person," it is protected, individually, under the Due Process Clause. If a litigant wishes to hale MobileStar into court, it must establish MobileStar's own jurisdictional contacts with the chosen venue.

Google refuses even to acknowledge these settled principles. Instead, as its sole support, Google latches onto dicta from a single decision—*Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266 (Fed. Cir. 1998)—and construes it in a way that is irreconcilable with circuit law. *Dainippon* did not announce some unbounded rule that all litigation subsidiaries assume the jurisdictional contacts of all parent companies. On the contrary, *Dainippon* determined, first and foremost, that the *subsidiary itself* had minimum contacts with the forum, and those contacts (not the parent's contacts) "justif[ied] the imposition of personal jurisdiction." 142 F.3d at 1271. That was the panel's holding, and, unlike *Dianippon*, MobileStar has *no* requisite contacts with Google's chosen forum.

-3-
**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

After reaching that conclusion, the *Dianippon* panel also noted that, on those particular facts, "the parent-subsidiary relationship between CFM and CFMT" rendered "the imposition of personal jurisdiction over CFMT…'reasonable and fair.'" *Id.* at 1271. The panel's finding, however, was motivated by an apparent effort to manipulate jurisdiction: the subsidiary was incorporated in "another state," and the parent sought to "insulate" itself from "defending declaratory judgment actions in those fora where [the parent]…operates under the patent." *Ibid.* Here, by contrast, there is no hint whatsoever of *any* manipulation. Rockstar and MobileStar are incorporated in the *same* State and have adopted the *same* principal place of business—a particularly odd strategy for a company supposedly seeking "immunity by subsidiary." Opp. 7. Rockstar does not "operate" in California under the patent; nor does it attempt to avoid suits in California based on MobileStar's lack of California contacts. This is thus nothing like the panel's narrow concerns in *Dainippon*, where a parent may try to artificially usher any suits to "the state of incorporation of the holding company." 142 F.3d at 1271. MobileStar was created for legitimate reasons having nothing to do with personal jurisdiction. Rockstar certainly did not act out of concern that, in the future, Google may elect to forum-shop and file a feeble suit under the Declaratory Judgment Act in a court where *Rockstar itself* plainly is not subject to jurisdiction.

*Dainippon* is simply too thin a reed to support Google's aggressive reworking of personal jurisdiction and corporate law. This is why the Federal Circuit has continued, after *Dainippon*, to recognize the importance of adhering to corporate formalities absent valid grounds for setting aside the corporate form. *See, e.g.*, *3D Sys.*, 160 F.3d at 1380-81. One such valid ground—focusing on jurisdictional concerns of "fair play and substantial justice"—may be a deliberate attempt to manipulate jurisdiction (as in *Dainippon*). *See, e.g.*, *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990). But there is no such thing as a "personal-jurisdiction-doesn't-count" exception to corporate law. Google's complaint flunks the ordinary rule that each corporate entity is a separate person with its own identity. *See Harris Rutsky & Co. Ins. Servs. v. Bell &*

-4-
**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

1  *Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003). It cannot establish personal jurisdiction over
2  MobileStar, and that is sufficient reason alone for dismissing this suit.
3       Nor, finally, should this Court postpone the inevitable by authorizing jurisdictional
4  discovery. Indeed, Google does not even *request* such discovery as to MobileStar, and any discovery
5  would be futile. MobileStar has no legal contacts with California, and no amount of discovery can
6  resuscitate Google's misreading of controlling law.

     **B.**     **Google Has Failed To Establish Specific Jurisdiction Over Rockstar**

     As previously established (Mot. 10-12), there is no specific jurisdiction over Rockstar, and Google's contrary theories are strictly at odds with controlling law. Google readily admits that "Rockstar's licensing business" is its only hook for specific jurisdiction. Opp. 15. Yet the Federal Circuit has unequivocally held that efforts to "commercializ[e]" patent rights are *not* grounds for jurisdiction. *Avocent*, 552 F.3d at 1335. Parties have every right to "give proper notice of [their] patent rights." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998). "The patent system has national application. If infringement letters created jurisdiction, the patentee could be haled into court anywhere the letters were sent." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003). This is why ordinary activities of "offer[ing]…a license," sending "cease-and-desist letter[s]," and "initiat[ing] settling negotiations" are *per se* insufficient to subject a patentee to the *infringer's* home forum. *Red Wing Shoe*, 148 F.3d at 1360-61.

     Yet Google barely pays lip service to these binding principles. In fact, its main response is to target—even *more* commercialization efforts. It accuses Rockstar of "cast[ing] a broad net" to enforce its patent rights, "negotiat[ing]" with infringers, and sending "letters" to protect its interests, including to "companies in California." Opp. 12-13, 15, 17. Google never disputes that "Rockstar's licensing contacts with other companies are limited to notifying them of Rockstar's patents and negotiating non-exclusive patent licenses." Dean Decl. ¶ 17. These are all classic "commercialization activit[ies]" (*Avocent*, 552 F.3d at 1335), and the Federal Circuit has declared

-5-
**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

them off-limits "for establishing specific personal jurisdiction." *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, 566 F.3d 1012, 1020 (Fed. Cir. 2009).[1]

Google reluctantly admits that it must identify "other activities"[2] above and beyond Defendants' ordinary licensing efforts. Opp. 15. But just *any* "other activities" will not do. "For the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum <u>and related to the cause of action</u> besides the letters threatening an infringement suit." *Silent Drive*, 326 F.3d at 1202 (emphasis added). None of the "activities" identified by Google satisfy these conditions.

First, Google alleges that Rockstar targets the "technology industry" in California, as if that were some "activity" *separate* from "commercialization." But that only means that multiple companies in California are subject to Rockstar's licensing efforts. Google does not dispute that "Rockstar's contacts" with those companies "are limited to notifying them of Rockstar's patents and negotiating non-exclusive patent licenses." Dean Decl. ¶ 17; *see also* Mot. 11 ("Rockstar's enforcement activities pertain only to permissible licensing activities (*i.e.*, notifying others of Rockstar's patent rights) and nothing more."). As a matter of law, those limited activities cannot support specific jurisdiction. *See Avocent*, 552 F.3d at 1336; *Smugmug, Inc. v. Virtual Photo Store LLC*, No. 09-cv-2255, 2009 U.S. Dist. LEXIS 112400, at *11 (N.D. Cal. Nov. 16, 2009) (Wilken, J.). Moreover, Google's allegations are wrongly limited to Rockstar's general media statements regarding licensing its portfolio *as a whole*, not any specific patents involved in these suits. Opp. 15-16. "Only enforcement or defense efforts *related to the patent*, rather than the patentee's own commercialization efforts, are to be considered for specific personal jurisdiction." *Radio Sys.*, 638 F.3d at 790 (emphasis added).

---

[1] Google also faults Rockstar for failing to delineate what portion of its licensing income "arises from California." Opp. 13. This is again incompatible with circuit law: the in-state contacts of Defendants' *licensees* are not "'constitutionally cognizable' for purposes of jurisdiction," and thus "any financial benefits accruing to [Defendants] from [their] licensees' relations with [California] are irrelevant." *Red Wing Shoe*, 148 F.3d at 1362.

[2] Contrary to Google's contention (Opp. 15), "the plaintiff must satisfy the court that the assertion of personal jurisdiction under the circumstances is reasonable and fair," *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011), and must identify "other activities" beyond ordinary commercialization efforts to establish personal jurisdiction. *See, e.g.*, *Autogenomics*, 566 F.3d at 1020.

-6-
**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

Second, Google is incorrect that Rockstar's pending litigation *in Texas* constitutes "other activities" sufficient to assert specific jurisdiction *in California*. Opp. 17. This assertion disregards controlling law and common sense. The Federal Circuit has made clear that judicial enforcement of the patents-in-suit in *another forum* does not constitute "other activities." *Avocent*, 552 F.3d at 1339; *see also Juniper Networks, Inc. v. SSL Servs., LLC*, No. 08-cv-5758, 2009 U.S. Dist. LEXIS 112399, at *11-12 (N.D. Cal. Nov. 16, 2009), *aff'd*, 2010 U.S. App. LEXIS 25498 (Fed. Cir. Dec. 13, 2010) (suing a California entity in Texas is insufficient to confer specific jurisdiction in California). Google's reliance on *Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008), is misplaced. Opp. 17 (citing *Campbell* for the notion that attempts to interfere with "customer relationships" qualify as "other activities"). In *Campbell*, a patentee directly attacked the plaintiff's business by venturing outside the judicial system and enlisting a third-party to *remove* the infringer's products from an *in-state* convention. 542 F.3d at 886; *see also Autogenomics*, 566 F.3d at 1020 (likewise distinguishing *Cambell*). That is contrary to the situation here, as Rockstar's *Texas* litigation, by definition, does not constitute *extra*-judicial efforts to enforce the patents in *California*. A lawsuit is the quintessential *judicial* effort to enforce a patent. Defendants are entitled to enforce their rights in another State without being subject to specific jurisdiction in *every* State based on those same patents. Any legitimate fallout for Google's "customer relationships" is irrelevant.

Third, Google is incorrect that Rockstar's use of a part-time consultant, Mark Wilson, qualifies as "other activities." Google never alleges that Wilson's responsibilities concern the patents-in-suit, and never disputes that Wilson's responsibilities for Rockstar are unrelated to those patents. Dean Decl. ¶ 34. Again, Google simply ignores the lack of any nexus between Google's suit and Wilson's conduct. The Federal Circuit, however, has "consistently required" these "other activities" to "relate to the enforcement or the defense of the validity *of the relevant patents*." *Avocent*, 552 F.3d at 1334 (emphasis added). Google also incorrectly invokes *Radio Sys.* as broadly supporting the proposition that a patentee's retention of in-state agents subjects the patentee to specific jurisdiction. Opp. 16. In *Radio Sys.*, the court found it relevant that an out-of-state patentee

-7-
**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

1  hired an in-state attorney to enforce the patents-in-suit *in that same forum*. 638 F.3d at 791. Here, however, Wilson has no responsibilities concerning the patents-in-suit, and Rockstar has no in-state agents enforcing these patents in California. The material facts undergirding *Radio Sys.* are absent.

Finally, Google is mistaken that Rockstar's "relationship" with Apple gives rise to specific jurisdiction. Opp. 16; *see also* § I.D.2, *infra*. Again, Google fails to allege how these supposed "continuing obligations" concern the *relevant* patents-in-suit. General allegations about generic "obligations" are insufficient. *Silent Drive*, 326 F.3d at 1202. Additionally, Google acknowledges that Apple is a "non-exclusive" licensee, but wrongly insists that "does not matter." Opp. 10. In analyzing jurisdiction, however, the Federal Circuit (including in cases Google misconstrues) has "emphasized the *exclusive* nature of [a] license" for a reason. *Red Wing Shoe*, 148 F.3d at 1362 (emphasis added). Exclusive arrangements often require patentees to assume *enforcement efforts* in the subject forum, a critical factor missing from non-exclusive licenses. *See, e.g.*, *Avocent*, 552 F.3d at 1334, 1336 (describing "entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum"); *Akro Corp. v. Luker*, 45 F.3d 1541, 1548-49 (Fed. Cir. 1995). Thus it *does* matter that Apple's license is non-exclusive; Google has not explained how Rockstar is subject to *any* such "enforcement" obligations *in California*.

Jurisdictional discovery cannot cure Google's deficiencies. Google simply invites a conflict with settled law. Its theories suffer from legal *and* factual defects; no amount of discovery will cure the former, and the factual record (including the scope and nature of Rockstar's activities) is uncontroverted. Google cannot evade dismissal with pointless, burdensome discovery from a party not properly before the Court.

### C. Google's Attempt To Subject Rockstar To General Jurisdiction Is Frivolous Under *Daimler*'s Controlling Standard

Contrary to Google's contention, it cannot wish away the Supreme Court's definitive ruling in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), by casting it as Rockstar's "preferred standard." Opp. 13. That case eviscerates the entirety of Google's argument, which can be easily dismissed.

-8-
DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW

1    Google begins by framing the standard in exactly the terms that *Daimler rejected*: "[g]eneral
2 jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum
3 state." Opp. 5 (internal quotation marks omitted). According to the Supreme Court, however, the
4 proper inquiry is "not whether a foreign corporation's in-forum contacts can be said to be in some
5 sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so
6 'continuous and systematic' as to render [it] *essentially at home in the forum State*.'" *Daimler*, 134
7 S. Ct. at 761 (emphasis added). It is no longer sufficient (if it ever were) to ground general
8 jurisdiction in allegations that a defendant "directs its licensing efforts into California" and "receives
9 California revenue from those efforts." Opp. 14. Such allegations are "unacceptably grasping."
10 *Daimler*, 134 S. Ct. at 761. General jurisdiction permits a defendant to be sued on *any* cause of
11 action, accruing anywhere, no matter how unrelated to the forum. *Id.* at 754 n.5. That unlimited
12 power is properly restricted to situations where the defendant is "comparable to a domestic
13 enterprise in that State." *Id.* at 758 n.11. Google's allegations would subject virtually *every*
14 nationwide business to general jurisdiction in every State. That is strictly inconsistent with *Daimler*'s
15 command. *Id.* at 761-62.

16    Google suggests that if Rockstar is "essentially at home" in Texas, it must also be
17 "essentially at home" in California, where it purportedly does "all the same things." Opp. 13-14.
18 Leaving aside the little oversights—such as Google's downplaying of Rockstar's permanent office in
19 Texas, its permanent employees in Texas, its Texas roots, *etc.*, all things that are *not* the "same" in
20 California—Google also overlooks one undeniable fact: Rockstar's principal place of business is *in*
21 *Texas*, not California. After *Daimler*, only "exceptional" cases will permit general jurisdiction in a
22 forum "other than [a corporation's] formal place of incorporation or principal place of business," a
23 standard that *excludes* subjecting Rockstar to general jurisdiction here. *Id.* at 761 n.19.[3]

---

[3] Rather than grapple with *Daimler*, Google favors a single unreported decision from the Eastern District of New York, which of course *pre-dated Daimler*. Opp. 14 (citing *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, No. 12-5847, 2013 U.S. Dist. LEXIS 28439 (E.D.N.Y. Feb. 28, 2013)). Rockstar has no "long-term business relationship" in California (Opp. 14), but even the facts at issue in *Jet Blue* would hardly qualify for general jurisdiction under today's standard.

-9-
**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

Google, again, requests jurisdictional discovery, and, again, Google's request is deficient. No amount of discovery will alter Rockstar's "home"—its place of incorporation or principal place of business are known quantities that will not change. *Daimler* resolves this issue, and it does so today.

### D. Google Cannot Impute Third-Party Contacts To Rockstar

#### 1. Rockstar Did Not Assume All Of Nortel's Minimum Contacts By Obtaining Nortel Patents After A Bankruptcy Auction Or Hiring Ex-Nortel Employees

According to Google, because Rockstar purportedly holds itself out as standing in Nortel's shoes, all of Nortel's jurisdictional contacts are automatically imputed to Rockstar. Opp. 7-9. This is perplexing. Rockstar is not Nortel and it never assumed Nortel's identity or its contacts. It simply obtained Nortel's patent portfolio during Nortel's chapter 11 bankruptcy.[4] There is no rule of law or logic suggesting that any party who acquires any patent suddenly assumes every jurisdictional contact of the patent's prior owner. (Due process, after all, asks whether the *party*, not the *patent*, has contacts with the forum. Google's contrary view would transform patent law in an unprincipled way: the fact that a patent was asserted somewhere in the past does not mean that a *subsequent* owner availed itself of any rights in that forum. *See, e.g.*, *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784-85 (7th Cir. 2003).)

In addition, the general rule is that the "corporate form is not to be lightly cast aside." *3D Sys.*, 160 F.3d at 1380-81. Here, Google effectively asserts (without argument or proof) that Rockstar is Nortel's alter ego for jurisdictional purposes. Google starts with statements (plucked mostly from random interviews) that Rockstar is built upon Nortel's *licensing* operation (a part of Nortel that was based in Texas) and leaps to the conclusion that Rockstar essentially *is* Nortel, a substantial entity with multiple operations worldwide aside from licensing.

The law is clear that a successor generally does not step into the predecessor's shoes. *Katzir's Floor Home and Design, Inc. v. M-MLS.COM*, 394 F.3d 1143, 1150-51 (9th Cir. 2004) ("The general rule of successor liability is that a corporation that purchases *all* of the assets of another

---

[4] Rockstar Bidco, LP purchased the patents, which were later distributed to Microsoft, Apple, Blackberry, and Rockstar. While Rockstar Bidco is a separate entity from Rockstar, that has no effect on the jurisdictional analysis.

-10-
**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

corporation is not liable for the former corporation's liabilities unless, among other theories, the purchasing corporation is a mere continuation of the selling corporation.") (emphasis added). Google fails to identify any law supporting its contrary theory. Here, Rockstar purchased only a small portion of Nortel's assets; in no sense is Rockstar a mere continuation of the corporate entity. There is no basis for Google's novel view that Rockstar is suddenly bound by all of "Nortel's jurisdictional contacts."

### 2. Apple's Status As A Rockstar Shareholder Does Not Impute Apple's Contacts To Rockstar

Google contends that Rockstar is subject to Apple's jurisdictional contacts, because Apple is a Rockstar shareholder and partial owner. Opp. 9-11. Google is mistaken.

Corporations are not automatically subject to suit wherever any shareholder is subject to jurisdiction. *See, e.g.*, *Silver Valley Partners, LLC v. De Motte*, 400 F. Supp. 2d 1262, 1269 (W.D. Wash. 2005); *cf.* Rest. (2d) Conflict of Laws § 40, cmt. In support of the contrary proposition, Google cites—nothing. Opp. 9-10. If Google wished to set aside the corporate form via alter ego or agency theories, it had every opportunity to prove its case. *See Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). But Google made no such attempt for a reason. Under the alter-ego test, the "plaintiff must make out a prima facie case that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist." *Id.* at 926. Here, however, it is clear that Apple and Rockstar are not the same entity, a fact Google might have discovered from Rockstar's *other* shareholders.

And Rockstar is clearly not Apple's agent. "At an irreducible minimum, the general agency test requires that the agent perform some service or engage in some meaningful activity in the forum state on behalf of its principal such that its 'presence substitutes for presence of the principal.'" *Id.* at 930. Rockstar performs services and engages in activity *on behalf of Rockstar*. The fact that these benefits may inure to its shareholders is hardly surprising or extraordinary. It is common for shareholders or investors to communicate with a corporate board or provide direction or influence.

-11-

*See, e.g.*, *id.* at 926 (describing "appropriate parental involvement"). If those ordinary actions were sufficient to pierce the corporate veil, there would be few corporations left.

In support of its argument, Google also cites ambiguous statements made by an outside *third-party* (the CEO of an unrelated company) stating that Rockstar is "Apple, Sony, Microsoft" and "the biggest tech giants in the industry." Opp. 10. Google, however, offers no statements *by Rockstar* indicating that Rockstar "holds itself out as Apple's representative." A third party's statement is not sufficient to set aside Rockstar's corporate structure or presume an agency relationship. And that same statement does not magically transform Rockstar into a California entity. There is no principled basis for assuming that Rockstar is subject to suit wherever any of its shareholders happen to reside.

### 3. Google's Request For Jurisdictional Discovery Is A Request For A Fishing Expedition That Will Not Improve Google's Thin Jurisdictional Allegations

This Court is familiar with weak allegations regarding analogous alter-ego theories, and it has previously rejected jurisdictional discovery because such theories would fail. *Smugmug, Inc. v. Virtual Photo Store LLC*, No. 09-cv-2255, 2009 U.S. Dist. LEXIS 71305 (N.D. Cal. Aug. 13, 2009) (Wilken, J.) (denying jurisdictional discovery). Google's theories will fail now or later, and there is no reason to entertain futile jurisdictional discovery.

## II. The Court Should Decline To Exercise Discretionary Jurisdiction Over Google's Declaratory Judgment Action

### A. Google's Action Is Not In The Interest Of Justice And Would Frustrate Judicial Efficiency

Because Google cannot prove that this Court has personal jurisdiction over MobileStar, there is particularly no reason to permit this duplicative lawsuit to proceed. MobileStar is the owner of *five* of the seven patents-in-suit (and the exclusive licensee of the remaining two). MobileStar is an indispensable party, and it is at least suboptimal (if *permissible*) to engage in litigation without it. That holds especially true given the open and available venue in Texas for adjudicating these

-12-
**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

1   identical claims. *See* Mot. 18-21. (In fact, the Texas court assuredly *will* adjudicate these claims
2   whether this suit retreads the same ground or not.)

3       It is not in the interest of justice to bifurcate Google's action into two suits—one here against
4   Rockstar (if personal jurisdiction is somehow satisfied), and the other in Texas against MobileStar—
5   when a single suit in Texas, combined with six *existing* suits in Texas, can fully safeguard Google's
6   interest. It is also not in the interest of justice to continue litigation without MobileStar, especially in
7   the face of such an obvious alternative (read: the Texas litigation).

8       Google had every opportunity to intervene in Texas or file its declaratory-judgment suit
9   there. Either option would have been consistent with the purpose of the Declaratory Judgment Act.
10  *See Proofpoint, Inc. v. InNova Patent Licensing, LLC*, 2011 U.S. Dist. LEXIS 120343, at *22-23
11  (N.D. Cal. Oct. 17, 2011) (encouraging the declaratory-judgment plaintiff to move to intervene in
12  the Texas Action or bring a separate action for declaratory relief in Texas and seek to relate that to
13  the Texas Action).  Instead, Google opted for forum-shopping. It brought a second-filed duplicative
14  action in this Court without any explanation for not pursuing relief in Texas. *Catalyst Assets LLC v.*
15  *Life Techs. Corp.*, 2012 U.S. Dist. LEXIS 84347, at *7-8 (N.D. Cal. June 17, 2012) (noting that a
16  court should decline to entertain declaratory-judgment suits where litigants file the action as a means
17  of forum-shopping). Moreover, Google is already a defendant in Texas, and can add its declaratory-
18  judgment claims to any answer or counterclaims. Google's suit, filed nearly two months after the
19  Texas litigation was initiated, may satisfy Google's own preferences, but it invites an unacceptably
20  inefficient use of judicial resources. *See, e.g.*, *Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d
21  897, 904-05 (Fed. Cir. 2008).

22      **B.**    **Google's Action Undermines The Purposes Of The Declaratory Judgment Act**
23      For similar reasons, Google is incorrect that its suit satisfies the purposes of the Declaratory
24  Judgment Act. The entire point of offering declaratory relief is to avoid the unfairness where "the
25  patent owner refused to grasp the nettle and sue." *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341,
26  1346 (Fed. Cir. 2005). The Act provides a vehicle for seeking certainty if no other vehicle exists.

27
-13-
28  **DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

Here, however, a *better* vehicle exists. Rockstar and MobileStar sued on the same patents at issue here nearly two months before Google filed suit. Google cannot explain the efficiencies in pursuing this separate action or why the Texas action is inadequate for establishing Google's rights. Indeed, if Google is so convinced that all six Texas actions are destined to be transferred to this Court, there is no reason Google could not have intervened in those actions and filed a motion to transfer venue. (In the same light, Google could have included all six patents in any suit in Texas.)

Nor is it any answer to blame Defendants—the "natural" plaintiffs—for forum-shopping. In ordinary circumstances, the plaintiff is *entitled* to choose the venue, and that choice is typically respected. That is not impermissible "forum shopping," but simply exercising the prerogative of the injured party seeking judicial redress. Defendants, who are based in Texas, brought seven actions in Texas that are indisputably proper in Texas. (One has since settled.) The natural response of a litigant wishing to establish its rights is to *participate* in that litigation—just as Google is now doing. This repetitive filing complicates matters unnecessarily and offers nothing to gain.

### C. Google Is Incorrect That Rockstar's Claims Concern Only Android

Throughout its opposition, Google argues that the asserted patents in this action and the Texas litigation concern solely the Android operating system. *E.g.*, Opp. 17. This is misleading and mistaken. Rockstar and MobileStar are accusing various *mobile devices* that, while including the Android operating system, also include hardware and software components that infringe Rockstar and MobileStar patents, not the Android operating system alone. *See* Exs. A-H, Defendants' Mot. to Dismiss. For example, at least one patent (U.S. Patent No. 5,838,551) asserted against these mobile devices in the Texas actions has nothing to do with their operating system, but is directed solely to a type of component contained in those devices.

For this reason, Google is mistaken in invoking the customer-suit exception to the first-to-file rule. That exception applies only "where the first suit is filed against a customer who is simply a reseller of the accused goods, while the second suit is a declaratory action brought by the manufacturer of the accused goods." *Proofpoint*, 2011 U.S. Dist. LEXIS 120343, at *17 (quoting

-14-
**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

*Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989)).[5] Here, the Texas defendants are not resellers of devices or Android operating systems obtained from Google, but rather design, manufacture, and sell the devices themselves (which use the Android operating system). *See* Exs. A-H, Defendants' Mot. to Dismiss. This is hardly the situation of a patentee taking advantage of a customer who unknowingly purchased an infringing product from a manufacturer.

In any event, Google cannot have it both ways. If Google wishes to paint the Texas litigation as a direct assault on Google itself, then Google cannot plausibly hold out this suit as the "first-filed" case. It is undoubtedly the second-filed case under any logical view of the substance of each suit.

### D. Defendants Have Not Yet Filed Any Motion To Transfer Venue

Contrary to Google's contention, Defendants have not yet filed a motion to transfer venue under 28 U.S.C. § 1404(a). Opp. 22-23. While Defendants discussed certain factors that also apply to transfer motions, Defendants did so in the context of the Court's decision to exercise (or not) its discretionary power to entertain this declaratory action. Mot. 22 & n.7 ("*the first-to-file rule mandates* that Google's action should be dismissed, or in the alternative, transferred to the Eastern District of Texas"; "*[i]f the Court applies the first-to-file* rule it should dismiss or transfer Google's Action to the Eastern District of Texas"; "the Court can transfer the Google Action to the Eastern District of Texas pursuant to this motion *under the first-to-file rule*") (emphases added). Google may be anxious to resolve a transfer motion because it assuredly realizes that is the predictable next step should this case survive a motion to dismiss. (Defendants, of course, reserve the right to file such a motion, if necessary, at an appropriate time.) That is yet another reason to decline to exercise jurisdiction: there is little basis for inviting endless procedural disputes over an improper lawsuit when the merits can be swiftly resolved in an open and available suit in the "natural" plaintiffs' first-filed choice of venue.

---

[5] Under such circumstances, the first-filed rule may give way to the "manufacturer's presumed greater interest in defending its actions against charges of patent infringement." *Ibid*.

-15-
**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**

Dated this 13th day of February, 2014.

Respectfully submitted,

By:   /s Courtland Reichman _____
Courtland L. Reichman (SBN 268873)
MCKOOL SMITH HENNIGAN, P.C.
255 Shoreline Drive Suite 510
Redwood Shores, CA 94065
(650) 394-1400
(650) 394-1422 (facsimile)

Mike McKool (Pro Hac Vice Application Forthcoming)
Douglas A. Cawley (Admitted Pro Hac Vice)
Ted Stevenson III (Admitted Pro Hac Vice)
David Sochia (Admitted Pro Hac Vice)

**ATTORNEYS FOR Defendants Rockstar Consortium U.S. LP and MobileStar Technologies LLC**

-16-
**DEFENDANTS' REPLY TO GOOGLE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO DECLINE EXERCISING JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT - Case No. 3:13-cv-5933-CW**