QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
Charles Verhoeven (Cal. Bar No. 170151)
Sean Pak (Cal. Bar No. 219032)
Matthew S. Warren (Cal. Bar No. 230565)
Kristin J. Madigan (Cal. Bar No. 233436)
quinn-google-n.d.cal.-13-05933
  @quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600
(415) 875-6700 facsimile

Attorneys for Plaintiff Google Inc.

Courtland L. Reichman (SBN 268873)
Mike McKool (Admitted Pro Hac Vice)
Douglas A. Cawley (Admitted Pro Hac Vice)
Ted Stevenson III (Admitted Pro Hac Vice)
David Sochia (Admitted Pro Hac Vice)
creichman@mckoolsmithhennigan.com
McKool Smith Hennigan, P.C.
255 Redwood Shores, CA 94065
(650) 394-1400
(650) 394-1422 facsimile

Attorneys for Defendants Rockstar Consortium
U.S. LP and MobileStar Technologies LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GOOGLE INC.,<br><br>Plaintiff,<br><br>v.<br><br>ROCKSTAR CONSORTIUM US LP and MOBILESTAR TECHNOLOGIES LLC,<br><br>Defendants. | CASE NO. 13-cv-5933-CW<br><br>**JOINT STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

**1.    PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2.    COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3.  **LIAISON**

    a.  The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

    b.  Rockstar appoints Josh Budwin, as its e-discovery liaison.

    c.  Google appoints Kristin J. Madigan as its e-discovery liaison.

4.  **PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

    a.  ESI regarding the patents-in-suit will only preserved if it existed at the time of the filing of this lawsuit, and was created or received between April 1, 1998 and December 23, 2013 will be preserved;

    b.  ESI regarding the accused functionality will be preserved only if it existed at the time of the filing of this suit and was created or received between January 1, 2004 and December 23, 2013.

    c.  The parties have discussed the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary;

    d.  The parties will agree on the number of custodians per party for whom ESI will be preserved;

e.  These data sources are not reasonably accessible because of undue burden or cost under Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved pursuant to normal business retention, but not searched, reviewed, or produced:

   i.  backup systems and/or tapes used for disaster recovery; and
   ii. systems no longer in use that cannot be accessed.

f.  Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve the following:

   i.    voicemail messages
   ii.   information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;
   iii.  instant messaging;
   iv.   automatically saved versions of documents and emails;
   v.    video and audio recordings;
   vi.   deleted, slack, fragmented, or other data accessible only by forensics;
   vii.  random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;
   viii. on-line access data such as temporary internet files, history, cache, cookies, and the like;
   ix.   dynamic fields of databases or log files that are not retained in the usual course of business; and
   x.    data in metadata fields that are frequently updated automatically, such as last opened dates.

g.  In addition to the agreements above, the parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved: none.

5. **SEARCH**

   a. The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

   b. Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, MP3, MP4, WAV, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), Program Installers.

   c. Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. A party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate." To the extent that de-duplication through MD5 or SHA-1 hash values is not

|   |   |   |
|---|---|---|
| 1 | | possible, the parties shall meet and confer to discuss any other proposed method of |
| 2 | | de-deduplication. |
| 3 | d. | No provision of this Order affects any inspection of source code that is responsive |
| 4 | | to a discovery request and will be made available consistent with the protective |
| 5 | | order governing this case. |

6. **PRODUCTION FORMATS**

The parties agree to produce documents in the formats described in Appendix 1 to this Order.  If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents.  The parties agree not to degrade the searchability of documents as part of the document production process.

7. **PHASING**

a. When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI.

b. Defendant's initial production will be from the following sources and custodians: Internal Patent History Files, Sharepoint, Electronic Data Room, Poisson, Egan.

c. Plaintiff's initial production will be from the following sources and custodians: Source Code for the Accused Functionality.

8. **DOCUMENTS PROTECTED FROM DISCOVERY**

a. Under Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.  A producing party may assert privilege or protection over produced documents at any time by notifying the receiving party in writing of the assertion of privilege or protection.  Information that contains privileged matter or attorney work product shall be returned immediately if such information appears on its face to have been inadvertently produced or if requested.

    b.    Parties to this action and their subsidiaries need not log privileged communications transmitted after October 31, 2013, or privileged documents created after October 31, 2013. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

    c.    Activities undertaken in compliance with the duty to preserve information are protected from discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

    d.    Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**9.    MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Stipulated Order will supercede the previous Stipulated Order.

IT IS SO STIPULATED.

DATED: August 4, 2014    Respectfully submitted,

    QUINN EMANUEL URQUHART & SULLIVAN, LLP

    By /s Matthew S. Warren
        Matthew S. Warren
        *Attorneys for Google Inc.*

    McKOOL SMITH HENNIGAN, P.C.

    By /s Joshua W. Budwin
        Joshua W. Budwin
        *Attorneys for Rockstar Consortium US LP and MobileStar Technologies LLC*

## ATTESTATION

I, Matthew S. Warren, am the ECF User whose userid and password authorized the filing of this document.  Under Civil Local Rule 5-1(i)(3), I attest that Joshua W. Budwin has concurred in this filing.

DATED:  August 4, 2014             /s Matthew S. Warren
                                   Matthew S. Warren

1 **[PROPOSED] ORDER**

2   The Court having considered the stipulation of the parties, the Court orders that the parties'

3 agreement is approved.

4   PURSUANT TO THE PARTIES' STIPULATION, IT IS SO ORDERED.

7 Dated:  August 5, 2014

 _____
 Honorable Claudia Wilken
 United States District Judge

# APPENDIX 1

## PRODUCTION FORMAT AND METADATA

a. **Production Components**. Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (e.g., Concordance).

b. **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

c. **Metadata Fields and Metadata File**. Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:

- Delimiter = ¶ (ASCII:020)
- Text-Qualifier = þ (ASCII:254)
- New Line = ® (ASCII:174)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| SUBJECT | Subject line of email |

| TITLE | Title from properties of document |
|---|---|
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVELINK | Native File Link (Native Files only) |

    d.    **TIFFs**.  Documents that exist only in hard copy format shall be scanned and produced as TIFFs.  Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents.  Each TIFF image shall be named according to a unique corresponding Bates number associated with the document.  Each image shall be branded according to the Bates number and the agreed upon confidentiality designation.  Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).  TIFFs shall show all text and images that would be visible to a user of the hard copy documents.  The parties will accommodate reasonable requests for production of specific images in color.  The requesting party shall bear costs incurred for any such production over 100 pages per producing party.   In scanning hard copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.,* hard

1    copy documents should be logically unitized).  The parties will use reasonable
2    efforts to unitize documents correctly.
3    e. **Text Files**.  A single multi-page text file shall be provided for each document, and
4    the filename should match its respective TIFF filename.  A commercially
5    acceptable technology for optical character recognition "OCR" shall be used for all
6    scanned, hard copy documents.  When possible, the text of native files should be
7    extracted directly from the native file. Text files will not contain the redacted
8    portions of the documents and OCR text files will be substituted instead of
9    extracted text files for redacted documents.
10   f. **Image Load Files / Data Load Files**.  Each TIFF in a production must be
11   referenced in the corresponding image load file.  The total number of documents
12   referenced in a production's data load file should match the total number of
13   designated document breaks in the Image Load file(s) in the production.  The total
14   number of pages referenced in a production's image load file should match the total
15   number of TIFF files in the production.  The total number of documents in a
16   production should match the total number of records in the data load file.
17   g. **Bates Numbering**.  All images must be assigned a unique Bates number that is
18   sequential within a given document and across the production sets.
19   h. **Confidentiality Designation**.  Responsive documents in TIFF format will be
20   stamped with the appropriate confidentiality designations in accordance with the
21   Protective Order in this matter.  Each responsive document produced in native
22   format will have its confidentiality designation identified in the filename of the
23   native file.
24   i. **Redaction Of Information**.  If documents are produced containing redacted
25   information, an electronic copy of the original, unredacted data shall be securely
26   preserved in such a manner so as to preserve without modification, alteration or
27   addition the content of such data including any metadata therein.
28

1    j.   **Spreadsheets**.  TIFF images of spreadsheets (MS Excel, Google Sheets) need not
2         be produced unless redacted, in which instance, spreadsheets shall be produced in
3         TIFF with OCR Text Files.  Native copies of spreadsheets shall be produced with a
4         link in the NativeLink field, along with extracted text and applicable metadata
5         fields set forth in Paragraph 3.  A TIFF placeholder indicating that the document
6         was provided in native format should accompany the database record.  If a
7         spreadsheet has been redacted, TIFF images and OCR text of the redacted
8         document will suffice in lieu of a native file and extracted text.  The parties will
9         make reasonable efforts to ensure that any spreadsheets that are produced only as
10        TIFF images are formatted so as to be readable.
11   k.   **Presentations**.  The parties shall take reasonable efforts to process presentations
12        (MS PowerPoint, Google Presently) with hidden slides and speaker's notes
13        unhidden, and to show both the slide and the speaker's notes on the TIFF image.
14   l.   **Proprietary Files**.  To the extent a response to discovery requires production of
15        ESI accessible only through proprietary software, the parties should continue to
16        preserve each version of such information.  The parties shall meet and confer to
17        finalize the appropriate production format.
18   m.   **Request(s) for Additional Native Files**.  If good cause exists to request production
19        of certain files, other than those specifically set forth above, in native format, the
20        party may request such production and provide an explanation of the need for
21        native file review, which request shall not unreasonably be denied.  Any native files
22        that are produced shall be produced with a link in the NativeLink field, along with
23        extracted text and applicable metadata fields set forth in Paragraph 3.  A TIFF
24        placeholder indicating that the document was provided in native format should
25        accompany the database record.  If a file has been redacted, TIFF images and OCR
26        text of the redacted document will suffice in lieu of a native file and extracted text.
27   n.   **Production Media**.  Documents shall be produced on external hard drives, readily
28        accessible computer(s) or other electronic media ("Production Media").  Each piece

of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; (4) the set(s) of requests for production for which the documents are being produced and (5) whether the media contains Protected Material under the Protective Order in this case. An inadvertent failure to identify whether the media contains Protected Material will not waive or otherwise change the protected status or confidentiality of the material.

o. **Production Correspondence**. When productions are made by FTP or email, the production cover letter shall include the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). The production cover letter shall also include (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained in the production; and (4) whether the production contains Protected Material under the Protective Order in this case. An inadvertent failure to include in the cover letter whether the production contains Protected Material will not waive or otherwise change the protected status or confidentiality of the material.